David G. Leonard
CDCR No. AC-9689
CIM II, West-CH, 144-L
P.O. Box 368
Chino, CA 91708
  In Pro Per



**FILED**

SEP 2 5 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID GERALD LEONARD,           )    Case No. 2:12-cv-00915-TLN-AC
                                )
                Plaintiff,      )    PRISONER CIVIL RIGHTS COMPLAINT
                                )    42 U.S.C. §1983 CLAIM FORM
          v.                    )    (EASTERN DISTRICT OF CALIFORNIA)
                                )    ATTACHMENTS (STATEMENT OF FACTS,
JIM DENNEY, Sheriff             )    CLAIMS FOR RELIEF, PRAYER FOR
(County of Sutter), et al.,)    )    RELIEF)
                                )
_____)


PRISONER CIVIL RIGHTS COMPLAINT 42 U.S.C. §1983 CLAIM FORM

(EASTERN DISTRICT OF CALIFORNIA) ATTACHMENTS (STATEMENT OF

FACTS, CLAIMS FOR RELIEF, PRAYER FOR RELIEF)

i

1

**INDEX**

2

3        STATEMENT OF FACTS   .................................   1-23

4        CLAIMS FOR RELIEF   ..................................   23-43

5        PRAYER FOR RELIEF   ..................................   43-45

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**STATEMENT OF FACTS**

3    1.   Defendants (PARKER, BIDWELL, JOHN DOE No. 1, SAUNDERS, BROWN, SUTTER

4  COUNTY SHERIFF'S DEPARATMENT, SUTTER COUNTY JAIL, COUNTY OF SUTTER)

5  hereinafter referred to as Policymakers" collectively, were aware of a

6  continuing pattern of culpable failures of staff pertaining to timely

7  referrals to specialty care when needed, and inadequate medical care, through

8  notice and complaints by the Plaintiff and other prisoners, and the obvious

9  nature of the presenting symptoms, whereby "Policymakers" failed to take

10  necessary actions to correct the failures, or ensure Plaintiff received

11  adequate or timely care.

12    2.   "Policymakers" together with Defendant DENNEY, were official policy

13  makers for the Jail and the County, whereby they created, implemented, or

14  allowed policies, procedures, practices, and customs, which delayed or denied

15  treatment including necessary referrals for medical conditions that could be

16  and were urgent in nature, and may cause and did cause further harm (injury)

17  including permanent, serious injury.

18    3. "Policymakers" knew of, and failed to take steps to correct,  medical

19  care system deficiencies, resulting in further harm to the Plaintiff.

20    4.   "Policymakers" together with Defendant DENNEY, created a custom and

21  policy to delay or deny medical treatment and specialty care for monetary

22  reasons, to avoid payment for such treatment and services, so that inmates

23  (Plaintiff) would be transferred to State custody, whereby the State

24  (California Department of Corrections and Rehabilitation, "CDCR") would have

25  to pay for the necessary medical care (treatment).

26    5.   "Policymakers" delayed Plaintiff's (necessary) medical care,

27  specialist care, and necessary diagnostics, for almost eight (8) months, even

28  though Plaintiff's condition could cause permanent disability (injury)

resulting in further harm, unnecessary severe pain, deliberately failing to

1

1  schedule necessary and appropriate specialist referrals, and necessary
2  diagnostics in a timely manner.

3      6.  "Policymakers" knew that the Plaintiff suffered from: (1) a serious
4  and extremely painful low back condition, (2) a serious viral infection in
5  his right eye, (3) a serious and potentially life-threatening allergy to
6  mold, and history of severe allergies (multiple reactants), and (4) a history
7  of asthma and respiratory conditions.

8      7.  Plaintiff requested "Policymakers" to obtain necessary patient
9  history (medical records and diagnostics) to properly treat Plaintiff's
10 medical needs, which they did not obtain or request; nor did "Policymakers"
11 order new diagnostics in a timely manner to assess and treat such
12 condition(s).

13     8.  "Policymakers" admitted to Plaintiff that they had not reviewed all
14 of the medical records that Plaintiff had provided to them and their
15 intention(s) not to do so, including X-ray films provided by Plaintiff's
16 outside medical provider.

17     9.  "Policymakers" delayed in making referrals to an Orthopedic
18 Specialist or Neurologist, and delayed in ordering an MRI pertaining to
19 Plaintiff's low back condition (spinal injury) for about eight (8) months
20 thereby functionally denying Plaintiff access to necessary Specialist care,
21 for a serious medical condition, when they knew that Plaintiff's condition
22 was causing severe pain, and the condition was worsening, increasing in
23 intensity, duration and frequency of pain and disability, causing Plaintiff
24 to be bedridden in extreme pain, and limiting (affecting) Plaintiff's ability
25 to walk, stand, sleep exercise, and access Jail programs and services.

26    10. "Policymakers" failed to order a necessary MRI (diagnostic) even
27 after they learned of outside medical provider (Specialist) care received and
28 corresponding medical records that detailed multiple spinal issues resulting
   from a vehicle accident, even when the symptoms indicated that the condition

was not stable, caused physical limitations, severe plain, and affected Plaintiff's ability to urinate, walk, stand, sleep or exercise.

11. Plaintiff personally advised medical staff verbally of his low back condition (injury) and the resulting severe pain and limitations, that the resulting pain and limitations were increasing in intensity, duration and frequency (worsening), including the Nurse visiting the cell area, the medical office nursing personnel, Nurse Practitioner, DORIS BROWN, and Medical Doctor, J. SAUNDERS, on several occasions.

12. Plaintiff advised medical staff of his low back condition (injury) and the resulting limitations, severity and on-going worsening status, and the corresponding severe pain utilizing "sick call" procedure repeatedly throughout the period of time that he was incarcerated at the Jail Facility.

13. Plaintiff advised "intake staff" (Booking Officer) of his medical conditions including his low back condition (injury), his right eye viral infection, recovering knee injury, and his allergy/asthma condition(s) including a severe (life-threatening) allergy to mold.

14. Medical Staff and "POLICYMAKERS" were aware that the Plaintiff was in severe pain and continued to remain in severe pain, that any care or treatment provided was inadequate and not working, through multiple complaints; however, knowing such they failed to take reasonable or necessary actions to ensure adequate care or make necessary or sufficient changes to the care provided to the Plaintiff.

15. Plaintiff was incarcerated and housed in Sutter County Jail on or about June 18, 2009, through date of transfer to State custody (Calif. Dept. of Corrections and Rehabilitation ("CDCR") on or about April 5, 2010. The necessary MRI was not ordered until on or about March 12, 2010.

16. "Policymakers' failed to order or request medical records available to them pertaining to Plaintiff's medical condition(s), medical history, and treatment history, even when made aware of such medical records.

3

17. "Policymakers" failed to request a referral to specialist care until on or about March, 2010, for Plaintiff's low back condition, then they transferred the Plaintiff prior to the appointment, thereby depriving him of necessary specialist care for the entire period that he was housed at the Jail facility (approximately ten (10) months.

18. Medical Staff and "Policymakers" did not take or schedule any X-ray images, or conduct any other diagnostics (i.e. Nerve Conductive Study "NCS," Electromyography "FMG," Scan, etc.) related to Plaintiff's low back condition (injury) during the time he was housed at the County Jail.

19. "Policymakers" delayed sending Plaintiff to a specialist for his right eye viral infection knowing that Plaintiff's vision was deteriorating, that the infection may be active, and if active could result in permanent injury, even when the Plaintiff could not see a doorway about four (4) feet away or read with his right eye.

20. Once seen by a local specialist believed to be Dr. Amen, "Policymakers" failed to follow recommendations of the specialist, failed to send the Plaintiff back to the University of California Davis Medical Center in Sacramento, California, as indicated and recommended by the specialist, then continued to prescribe medicated drops prescribed as a temporary measure, and did not seek any follow-up with any specialist contrary to the specialist's recommendation, failing to follow the treatment recommendations of the specialist, and interfered with treatment once prescribed.

21. Upon transfer to "CDCR," the Plaintiff's right eye condition required an immediate referral to the eye doctor, and ongoing multiple weekly visits to treat and monitor Plaintiff's condition.

22. Plaintiff was informed by qualified medical staff, and believes such information and upon such information and belief, alleges and states: (1) delayed treatment of the Plaintiff's right eye viral infection (by a specialist) resulted in additional and permanent scar tissue in Plaintiff's

4

right eye related to an active viral infection; (2) the scar tissue will result in permanent distortion and vision loss; (3) the scar tissue will cause difficulty with depth perception, and create "cloudy' and blurry vision; (4) the scar tissue will contribute to, or cause headaches, and reading difficulty; (5) the continued (extended) use of medicated eye drops without proper monitoring and adjustment (titration) resulted in complications (injury); and (6) the Plaintiff developed a secondary condition, whereby the proximate cause was the continued use of medicated eye drops without proper adjustment for an excessive period of time.

23. The Plaintiff transferred to State custody ("CDCR") on or about April 15, 2010, being continuously incarcerated (in custody) since June 18, 2009.

24. "Policymakers," including Defendant DENNEY created, approved, adopted, or perpetuated a policy and custom pertaining to review and scheduling referrals for specialist care and services, which as a goal and in practice, was to limit care as much as possible.

25. "Policymakers' failed to adequately organize, maintain, and control the administration of the health care services resulting in inadequate medical care, and unnecessary delays, resulting in further harm to Plaintiff.

26. "Policymakers" denied medical care services (to Plaintiff) for budgetary reasons although (Plaintiff's) medical conditions were extremely painful and disabling.

27. "Policymakers" were dismissive to Plaintiff's medical needs making statements such as "it is what it is," and "it's not the Hilton," treating the Plaintiff as a "nuisance" rather than a patient, and were so insufficiently interested in the Plaintiff's health to take minimal steps to guard against potential injury, even returning "sick call" request for medical service forms, directing the Plaintiff not to fill out or submit any more, that they were tired of getting them (without ever resolving or addressing the medical issue).

5

28.   Medical staff (Defendants SAUNDERS and BROWN) did not inquire into and treat Plaintiff's chronic and severe pain in a timely manner, and Plaintiff encountered repeated delays in seeing a doctor, and substantial delay in seeing a specialist for his eye (never seeing the Orthopedic Specialist or Neurologist), which exacerbated Plaintiff's conditions, causing further harm and unnecessary pain.

29. The treatment and medical care provided to Plaintiff by Defendants SAUNDERS' and BROWN (hereinafter referred to as "Medical Providers") deviated from Professional Standards of Care, and fell below levels of care reasonably commensurate with modern medical science, and quality acceptable to prudent professionals, in light of Plaintiff's particular needs.

30. Each of Plaintiff's medical conditions raised or referred to in this Complaint were "serious medical needs" or conditions previously diagnosed by medical professionals as requiring treatment, and were obvious in nature requiring immediate medical care and were urgent in nature (i.e. Respiratory Conditions, Asthma, Allergies, Viral Infection, and Low back Injury).

31. "Medical Providers" did not attempt to mitigate Plaintiff's severe Low Back pain with physical therapy **or any** associated therapies, including but not limited to the use of traction, hot/cold therapy, the use of Electro Muscle Stimulation "EMS," the use of a T.F.N.s Unit (trans-cutaneous Electrical Nerve Stimulation), Ultrasound treatments, or other therapies.

32. "Medical Providers" did not provide formal or informal physical therapy programs to stabilize Plaintiff's Low Back condition, or make available any supports or braces, and did not develop, prescribe, or attempt to create or implement a HEP (Home Exercise Program) or provide Plaintiff with education pertaining to a stability program, HEP, or proper mechanics.

33. "Medical Providers" never referred Plaintiff for evaluation of surgical corrective procedures with a specialist or obtain or evaluate a surgical (epidural) steroid injection or other procedure(s).

1    34. "Medical Providers" provided nothing more to Plaintiff than low dose
2  over-the-counter medication(s), which had practically no effect on
3  Plaintiff's pain and symptoms; whereby they failed to change any care or
4  medication(s) when they knew they were not working (and knew Plaintiff's
5  condition(s) were worsening).

6    35. Plaintiff's medical conditions were obvious even to a layperson,
7  especially in light of the length of time he was presenting with both chronic
8  and acute conditions.

9    36. Plaintiff's referrals to specialist care took several months and were
10  not made within a reasonable period of time.

11    37. Plaintiff is informed and believes, and upon such information and
12  belief, alleges and states that topical therapy (use of medicated drops
13  topically in the eye) should be tapered rapidly after initial response and
14  discontinued after complete healing generally within ten (10) to fourteen
15  (14) days, and epithelial toxicity is a frequent known adverse effect with
16  prolonged treatment or high concentrated (non-tapered) use, and the response
17  to topical therapy usually occurs in two (2) to five (5) days.

18    38. Plaintiff is informed and believes, and upon such information and
19  belief, alleges and states that failure to heal from a HSK (HSV) infection
20  (epithelial healing) after two (2) to three (3) weeks of antiviral therapy
21  suggests epithelial toxicity, neurotropic keratopathy, or drug-resistant
22  strains of HSV, requiring specialist care and change in treatment.

23    39. "Medical Providers" failed to taper Plaintiff's topical therapy
24  (medicated eye drops) or discontinue topical therapy, and failed to return
25  Plaintiff to an eye specialist (Ophthalmologist) for follow-up care,
26  monitoring or tapering of topical therapy.

27    40. Plaintiff is informed and believes, and upon such information and
28  belief, alleges and states that "Medical Providers" had readily available to
   them the prescribing information and warnings pertaining to the medications

7

1   (topical therapy drops) and failed to exercise reasonable care to research
2   such issues and "blindly prescribed" such medications, knowing as health care
3   professionals, the medications could result in further harm to the Plaintiff.

4       41. Plaintiff is informed and believes, and upon such information and
5   belief alleges and states that prescribing information was immediately
6   available to "Medical Providers" in the Physician's Desk Reference (PDR), via
7   the drug manufacturer, and the internet, the Food and Drug Administration
8   (FDA) database, multiple third party sources, or by consulting with the
9   pharmacy (Pharmacist) or Ophthalmologist; and thus "Medical Providers'"
10   failure to properly monitor, treat, prescribe, and take reasonable steps to
11   do so, resulted in further serious and permanent harm to the Plaintiff.

12       42. Plaintiff is informed and believes, and upon such information and
13   belief, alleges and states that Plaintiff's low back condition (injury)
14   consisted of "Modic Type 1" changes in his lumbar spine; whereby "Modic Type
15   1" changes are associated with acute changes to vertebral bodies; and surgery
16   to repair "Modic Type 1" changes are less risky and have a higher likelihood
17   of success than surgery to repair Modic Type 2 and 3 changes.

18       43. Plaintiff is informed and believes, and upon such information and
19   belief, alleges and states that the failure to consult an Orthopedic Surgeon
20   or Neurosurgeon, failure to order necessary diagnostics (i.e. EMG, X-rays,
21   MRI, CT) in a timely manner, resulted in a failure to monitor and treat
22   Plaintiff's condition allowing the condition to worsen, causing further harm,
23   reduced the likely success of surgical corrective actions; reduced or
24   eliminated less invasive treatments, and increased the risk to Plaintiff
25   pertaining to available procedures, resulting in unnecessary pain and
26   suffering (Irreversible Changes).

27       44. Plaintiff's presenting symptoms included severe low back pain, leg
28   pain, burning sensations and numbness in his buttocks, legs and feet;
    difficulty walking, standing and sitting, difficulty bending, twisting, and

stooping; difficulty with overhead action, lifting with exacerbation on extension or flexiation; bladder symptoms; sharp shooting pains and weakness (Lumbar radiculopathy symptoms).

45. Defendants made no attempt to conduct a "differential diagnosis," or an objective diagnosis by diagnostics and clinical correlation pertaining to Plaintiff's presenting symptoms, or rule out Motor Neuropathies, including immune-mediated neuropathies.

46. Defendants did not provide Plaintiff any assistance, or assistive devices (aids) to mediate any of his limitations (i.e. walking difficulty).

47. Plaintiff informed medical staff including Defendants BROWN and SAUNDERS of his medical history and positive results from lumbar epidural injections (which were wearing off) followed with physical therapy, and identified medical providers, medical records (available to them) as well as an "on-going' or current "treatment plans".

48. Defendant BROWN advised Plaintiff that a lumbar epidural steroid injection was warranted, and would be consistent with Plaintiff's medical history as appropriate, and she indicated (on or about June 27, 2009) that they would get Plaintiff to the 'Surgery Center' as soon as they could for a lumbar epidural injection; however, none was ever provided.

49. After several (repeated) inquiries by Plaintiff, Defendant BROWN advised the Plaintiff that the lumbar epidural steroid injection was being considered; however, there was an issue of cost, and that she was not sure if the County would provide the injection because of the cost.

50. Upon transfer from the County Jail to "CDCR," the documentation reflects that Defendants were "considering" an epidural steroid injection.

51. Defendants' ultimate, but extremely untimely referrals, revealed the Defendants' knowledge of the seriousness of Plaintiff's condition(s) and the need for diagnostics and specialty care.

1    52. Defendants did not allow Plaintiff to use his back brace, although it
2    had been previously prescribed by an outside provider, nor did they provide
3    Plaintiff with an alternate, although at least one (1) inmate in the cell
4    area was allowed to wear a similar brace.

5    53. Plaintiff was unaware of the MRI results pertaining to his low back
6    condition until he was at Mule Creek State Prison, on or about the time
7    Plaintiff served "notice of Claim" of the Defendants.

8    54. Plaintiff is informed and believes, and upon such information and
9    belief, alleges and states that one (1) of the medicated eye drops (topical
10   treatment) prescribed by the Defendants, and continued without titration
11   (adjustment) for an excessive period of time without proper monitoring or
12   supervision of a specialist, was a steroid drop well known to cause damage to
13   the eye with extended use (i.e. Prednisolone 4 times daily).

14   55. One (1) of the Sutter County Jail nursing staff indicated to the
15   Plaintiff that he should stop filling out the 'sick call" slips (Request for
16   Medical Attention Forms) and save his three dollars ($3.00) "You know they
17   aren't going to help you, and you are just wasting your money. Just buy the
18   medication from canteen.   They cut off the medication anyway so you have to
19   pay again."   The nurse went on to say it was only Tylenol and Ibuprofen,
20   "They know it doesn't help you," telling Plaintiff it was up to him, but she
21   wouldn't waste her money.

22   56. Plaintiff is informed and believes, and upon such information and
23   belief alleges and states that each of the named Defendants together with all
24   employees of the SUTTER COUNTY JAIL, the SUTTER COUNTY SHERIFF'S DEPARTMENT,
25   and all departments or subdivisions, are/were required to have mandatory
26   training in CPR (Cardiopulmonary Resuscitation), whereby they had training in
27   airway management, and breathing emergencies, the effects of allergic
28   reactions, poisons, toxins, environmental hazards, and scene safety, which
     are subjects covered in required or mandatory First Aid training curricula;

1    therefore, the Defendants had knowledge of such hazards, symptoms and
2    potential threat of harm.

3        57. Plaintiff is informed and believes and upon such information and
4    belief alleges and states that Defendants J. SAUNDERS, and DORIS BRROWN, as
5    medical professionals received training in airway management, respiratory
6    distress/arrest, allergic conditions and reactions, asthma, environmental
7    hazards, toxins, poisoning, respiratory conditions, hypoxia, shock, and
8    general medical conditions, whereby they had knowledge of the substantial
9    risk of harm pertaining to Plaintiff's medical conditions including his
10   allergy to mold, his asthma/allergy condition, his viral infection, his low
11   back injury/condition, the risk of exposure to mold, the symptoms related to
12   each of the Plaintiff's conditions, and the risk of harm if those conditions
13   were untreated, or care was delayed.

14       58. Defendants J. SAUNDERS and DORIS BROWN failed to use the knowledge,
15   skill, and care ordinarily possessed and employed by members of the
16   profession in good standing.

17       59. The harmful effects related to exposure to harmful mold or toxins are
18   common knowledge of laypersons, and the standard of care associated to a
19   layperson.

20       60. The curriculum and training pertaining to CPR and first aid would
21   provide Defendants knowledge of the risk of additional or further harm, if
22   the medical conditions are left untreated, or if necessary care is delayed.

23       61. Defendants' actions and conduct violated "clearly established"
24   Federal Constitutional Rights, and "clearly established" State and Federal
25   Statutory Rights of which a reasonable person would have known.

26       62. Plaintiff is informed and believes, and upon such information and
27   belief alleges and states that subject to Senate Bill 732, California Health
28   and Safety Code Section 26120 et seq. required a report by July 1, 2003,
     pertaining to mold hazards (danger), and California Health and Safety Code

                                        11

1  Section 26146 required notice of such to Public Entities (within the State),
2  correspondingly, Enforcement Standards were established by California Health
3  and Safety Code Section 26154.

4      63. Plaintiff is informed and believes Assembly Bill 284, California
5  Health and Safety Code Section 26200 et seq. required a study on Fungal
6  Contamination to be completed by January 1, 2003.

7      64. Based upon the studies and reports required under the California
8  Health and Safety Code, together with published studies, reports, notices,
9  memorandums, and directives of the California State Health Services, it is
10 inconceivable that the County, its Agencies, Departments, Subdivisions
11 (Defendants Collectively) did not know or were unaware of the hazards and
12 dangers pertaining to mold and fungus, especially those responsible for
13 enforcing the standards set forth in, or by California Health and Safety
14 Code, or those responsible for conducting inspections.

15     65. Plaintiff is informed and believes, and upon such information and
16 belief alleges and states that the hazards or dangers related to mold,
17 especially "Toxic Mold" (i.e. Stachybotry Chartarum or stachybotry atra, and
18 stachybotry chlorohalonata) commonly called "Black Mold" or "Toxic Black
19 Mold<" are widely and commonly known of which a reasonable person would have
20 known and whereby the Defendants (Jail Administrators and Staff) knew or
21 should have known.

22     66. Based upon the imposed requirement to comply with California Health
23 and Safety Code as set forth in California Code of Regulations, Title 15,
24 together with the mandated training required for Jail Administrators, which
25 puts them on notice of their duties and obligations, it is inconceivable that
26 Jail Administration (Defendants) did not know of their duties and obligations
27 to comply with the California Health and Safety Code, that they were unaware
28 of their obligation and duty to inspect for hazards, or correct such hazards,
   or that they lacked knowledge of hazards posed by mold and fungus.

12

1    67. Upon arrival (booking) at the Jail, Plaintiff maintained his own
2    Health Insurance Coverage, which could have covered the cost of necessary
3    specialty care, if such care had been provided in a timely manner; however,
4    repeated and unnecessary delays allowed Plaintiff's coverage to expire.

5    68. Plaintiff's medical condition above (low back condition/injury)
6    resulted in severe pain, pain radiating (shooting) down his legs, numbness
7    and burning sensations in his legs, stabbing back pain, instability of lower
8    extremities (i.e. legs gave out), difficulty walking, climbing stairs, or
9    prolonged standing, bending, stooping or twisting; and affected his ability
10   to perform manual tasks, sleep, walk, stand, lift, bend, exercise, stoop, or
11   twist during the time he was incarcerated at the Sutter County Jail.

12   69. Plaintiff's medical conditions during his incarceration at the Sutter
13   County Jail (Viral Infection Right Eye) HSK/HSV Viral Infection required
14   specialist care and treatment.  This condition resulted in visual impairment
15   (severely blurred vision and distortion) affecting his ability to see and
16   read, and a medical condition (Asthma and Allergies) requiring specialist
17   care and treatment, which was present during the time Plaintiff was
18   incarcerated at the Sutter County Jail.

19   70. Plaintiff's physiological disorders, medical and physical conditions
20   or impairments that affected Plaintiff's neurological musculo-skeletal
21   and respiratory "body" systems, including orthopedic, visual, and other
22   conditions, constituted "qualifying" disabilities under the Americans with
23   Disabilities Act (ADA).

24   71. Plaintiff **is not** a medical "Layperson" and completed his first
25   Emergency Medical Technician (EMT) course on or about 1986-1987.
26   Subsequently Plaintiff continued his Medical Training both in and out of the
27   State of California, becoming an Assistant Instructor for the EMT Course, a
28   trained Emergency Response Instructor and Instructor Trainer, and worked in
     that capacity.  Plaintiff served as a Health and Safety Services Coordinator,

13

1  received training and worked with the Air Force Life Support Squadron, and
2  served as a Designated Medical Officer for Search and Rescue for over twelve
3  (12) years.

4       72. Plaintiff has substantial training, experience, and knowledge
5  pertaining to Standards of Care, Medical Protocols, Diagnostic Procedures,
6  Treatment Protocols, and related medical services, triage, emergency care and
7  treatment.

8       73. Plaintiff has been informed and believes that the parties responsible
9  for maintenance (maintaining) the Sutter County Jail Facility(ies)
10  hereinafter "Facilities" including cleaning, equipping, and providing
11  necessary equipment for the facilities, (including ventilation, swamp
12  coolers, cooling and ventilation systems, filtration and related equipment)
13  is/was J. PAUL PARKER, (Sheriff, County of Sutter), OFFICER BIDWELL (Jail
14  Lieutenant/Sergeant), JOHN DOE (NO. 1) The Supervising Custody Officer, the
15  SUTTER COUNTY JAIL, the SUTTER COUNTY SHERIFF'S DEPARTMENT, the COUNTY OF
16  SUTTER, and the Department of Public Works as a Department of the COUNTY OF
17  SUTTER, (hereinafter referred to as "Facility Administrators").

18       74. "Facility Administrators" failed to properly monitor and maintain the
19  cooling and ventilation systems within the "facilities" resulting in mold and
20  other contaminants that were introduced into the housing (living) areas
21  (cells) leaving a visible "black" coating on the wall, ceilings, and vent
22  faces near the vents, (that were easily visible and obvious).

23       75. The mold and contaminants caused Plaintiff to have breathing
24  difficulty, lightheaded(ness), and severe allergic/asthmatic reactions.

25       76. "Facility Administrators" failed to use proper safety protocols to
26  ensure the health and safety of Plaintiff allowing mold, debris, and other
27  contaminants to drop into the cooling and ventilation system(s),
28  contaminating the air ducts, returns, supplies and equipment, thereby
   contaminating the living area.

14

77. Although Custody Staff, Medical Staff, and "Facility Administrators" were made aware of ventilation issues (hazards), including mold and other contaminants, "Facility Administrators" and staff failed to undertake actions to limit, reduce, or mitigate such hazards (exposure) or protect Plaintiff from knows hazards.

78. Since exposure to the mold and/or other contaminates (introduced through the facility cooling and ventilation system), Plaintiff has experienced ongoing and substantial allergies/asthma reactions/conditions requiring medications.

79. Plaintiff's exposure related symptoms caused breathing difficulties, dizziness, lightheaded(ness)/disorientation, (room spinning), resulting in several falls to the floor, bunk, desk, and toilet. Plaintiff's symptoms included severe headaches, eye irritation, burning eyes, blurring vision, and aggravation of Plaintiff's Viral Infection (HSK/HSV) in his right eye. These combined effects altered Plaintiff's ability to perform manual tasks, walk, sleep, see, read, concentrate, and other related daily life functions.

80. Plaintiff's associated breathing difficulties (Respiratory Condition) are a "qualifying" disability under Americans with Disabilities Act (ADA)).

81. Exposure to ventilation system mold and other contaminants has created ongoing and potentially long-term/lifelong side effects.

82. Plaintiff was housed in an upper tier cell during the time he was incarcerated at the Sutter County Jail, requiring him to negotiate (climb) stairs, and navigate (walk) a significant distance along an upstairs walkway to and from his cell in order to participate in, or access programs and activities available to other inmates. While suffering from mobility impairments and medical conditions including difficulty walking, instability and numbness (inability to support weight), substantial pain, dizziness, lightheaded or disorientation, **he had to endure a risk of incurring serious injuries each time he attempted to take advantage of or utilize programs and**

15

1  **services**, including the medical sick call process, receive medications
2  (downstairs), processing legal mail (downstairs) accessing the law library,
3  accessing the recreation yard, utilizing the dayroom, obtaining or accessing
4  library materials (book Cart) obtaining forms, receive canteen, access or
5  attend visits, and other related programs and services.

6   83. Plaintiff's **upper tier housing created a risk of serious injury in**
7  **order to access programs and services**, as well as an architectural barrier to
8  participation, which created (posed) a hazard and risk to Plaintiff, **reducing**
9  **and eliminating his access and participation in programs and services.**

10   84. Sutter County Jail Staff (medical and custody), "Defendants knew
11  Plaintiff's upper tier housing posed a hazard and risk of serious injury;
12  whereby "Defendants" were on "notice" of potential hazards and risk of
13  serious injury by Medical Care Records, Requests to Move Plaintiff to a lower
14  tier (ground floor) cell by medical staff, Plaintiff's own statements,
15  reports, and request, as well as the need and safety issue, was obvious.

16   85. Although Medical Staff requested a cell move to a lower tier (ground
17  floor) cell, Custody Staff failed to do so even when the hazards and risks
18  were apparent.

19   86. Plaintiff was not precluded from being moved to a lower tier (ground
20  floor) cell, nor would such a move pose any safety or security concern and
21  there was no legitimate reason to deny a lower tier (ground floor) cell move
22  for the Plaintiff.

23   87. Although Custody Staff failed to move Plaintiff to a lower tier
24  (ground floor) cell, they moved other inmates regularly including "courtesy"
25  moves (moves requested by inmates).

26   88. Custody Staff failed to make reasonable accommodations or any
27  accommodations at all for Plaintiff to mitigate his impairments and housing
28  barriers (hazards or risks).

16

1    89. Plaintiff was not moved to a ground floor cell, even after becoming
2  visually impaired increasing the risk of injury related to upper tier housing
3  (Potential fall, visual perception impairment, inability to navigate).

4    90. Plaintiff's qualifying condition(s) or disabilities, in combination
5  with the physical or architectural barriers without accommodation(s) was the
6  proximate cause of Plaintiff's inability to access Jail programs and
7  activities, or by which access and participation by Plaintiff was greatly
8  reduced "by reason of disability;" as well as the failure to provide adequate
9  medical care amounted to an exclusion from medical services, in addition that
10  such unmitigated conditions or treatment constituted an accommodation in
11  which the Plaintiff was denied, constituted an ADA violation/claim "by reason
12  of ... disability."

13    91. Plaintiff is informed and believes, and based upon that information
14  and belief alleges that the SUTTER COUNTY SHERIFF' ("Defendants") receive
15  federal funding and thereby are required to comply with ADA, and do not hold
16  any immunity from such compliance.

17    92. Plaintiff is informed and believes, and based upon that information
18  and belief alleges that the hazards pertaining to mold exposure (especially
19  Black Mold) is well known and common knowledge, and it is reasonably
20  predictable that an Administrator would know of such hazards.

21    93. Plaintiff is informed and believes, and based upon that information
22  and belief, alleges that California State Regulations and Codes require Jail
23  Administrators to conduct inspections for hazards including environmental
24  hazards (i.e. Mold), whereby such Administrators failed to conduct such
25  inspections knowing such failure could allow hazardous conditions to
26  continue, or upon awareness of such condition(s) or hazards, they failed to
27  act to limit, reduce, or correct the hazard.

28    94. Defendants had no rational basis upon which to deny Plaintiff
reasonable accommodations, whereby such failures or decisions were arbitrary,

17

1  capricious, not based upon any evidence or rational policy, such actions or
2  denials were selective and unequal resulting in failure to provide reasonable
3  accommodations (lower tier housing, adequate medical treatment, double or
4  thicker mattress, appliances, assistance, clean/purified air, mask or
5  filtration, etc.), constituted a violation of Americans with Disabilities Act
6  "ADA" Section 504 of the Rehabilitation Act, discriminatory actions and equal
7  protection violations under both State and Federal law, when they provided
8  accommodations to other similarly situated individuals; and their actions
9  prevented and limited Plaintiff's ability to access programs and services
10 available to other prisoners by way ot his disability, and interfered with
11 treatment once prescribed.

12     95. Medical staff ordered a cell move to a lower tier cell, and the
13 issuance of a double mattress or thicker style mattress (as used in the
14 Jail), as reasonable accommodations for the Plaintiff; however, Defendants
15 (including JOHN DOE No. 1, and "Policymakers") did not provide such
16 accommodations, whereby Plaintiff was not precluded from having the
17 reasonable accommodations ordered by the medical staff, and Plaintiff had no
18 history of disciplinary actions, no misconduct issues, no violence issues,
19 had no safety or security concerns, and no write-ups or warnings.

20     96. As Defendants were aware of Plaintiff's conditions and the resulting
21 limitations and pain, and knew the upper tier housing (cell) resulted in
22 unnecessary limitations, pain, and potential risk of harm, their failure to
23 move Plaintiff to a lower tier cell demonstrated their deliberate
24 indifference to Plaintiff's needs, and displayed (demonstrated) that such
25 actions were intentional and willful.

26     97. Jail Administrators failed to respond in writing to Plaintiff's
27 correspondence advising them of inadequate medical, and the substantial risk
28 of harm.

1    98. Plaintiff had to obtain a grievance form from another inmate, whereby
2    Plaintiff completed and submitted the form.

3    99. After preparing the grievance form, the Plaintiff attempted to submit
4    the form pursuant to procedure by placing it in the cell door, whereby JOHN
5    DOE No. 2 and JOHN DOE No. 3, repeatedly walked by the cell ignoring the
6    grievance form and "sick call" forms, and refused to take the forms upon
7    request, clearly demonstrating a custom and practice, deliberate
8    indifference, and their intentions.

9    100. Plaintiff is informed and believes, and upon such information and
10   belief alleges and states that his symptoms exhibited after exposure to mold
11   and contaminants while housed at the Sutter Couty Jail, including chronic
12   fatigue, headaches, eye irritation, respiratory problems (wheezing,
13   difficulty breathing, chest tightness, and cough), nasal and sinus
14   congestion, "allergic reactions," and a heightened sensitivity
15   ("hypersensitivity") and asthma attaches are related to exposure to mold;
16   whereby Plaintiff's more serious symptoms are consistent with molds in the
17   Stachybotry genus, and mycotoxin exposure related to Stachybotrys Chartorum
18   or Stachbotrys Atra.

19   101. Plaintiff is informed and believes and upon such information and
20   belief, alleges and states that mold is a serious threat for immune-
21   compromised individuals including persons with asthma, and the most common
22   form of hypersensitivity is caused by direct exposure to inhaled mold spores
23   that can be dead or alive hyphal fragments that can cause or lead to allergic
24   asthma and asthma rhinitis.

25   102. Plaintiff is informed and believes, and upon such information and
26   belief alleges and states that temperature, moisture (water activity) and pH
27   levels strongly influence mycotoxin biosynthesis and encourage mold growth,
28   such as the moisture and temperature associated with the use of swamp coolers
     at the Jail, and extended exposure to mycotoxins can lead to neurological

1  problems, life-long medical issues, and in some cases death, and mycotoxins
2  may be ingested (contamination on food), inhaled, or absorbed via the skin.

3      103. Plaintiff is informed and believes, and upon such information and
4  belief alleges and states that adverse respiratory health effects are
5  associated with occupancy in buildings with moisture and mold issues, whereby
6  it can aggravate or even induce asthma with exposure to certain fungal
7  species, and sometimes generate an odor consistent with smells present in the
8  Jail when the Plaintiff was present and housed there; and that exposure to
9  mold and/or mycotoxins result in a chronic activation of the immune system
10  and lead to chronic inflammation, with varying immune system responses.

11      104. Plaintiff was prescribed three (3) topical treatments, (medicated
12  eye drops): (1) Xibrom (B.I.D.) two times daily; (2) Triflulridine, every two
13  hours; (3) Prednisolone, four times daily; which were started on August 15,
14  2009, whereby Plaintiff was directed to continue using untitrated
15  (unadjusted) until he was transferred on or about April 5, 2010.

16      105. Plaintiff began notifying Defendants on or before July 5, 2009 of
17  his right eye condition's status as "being an active viral infection" and the
18  immediate need for specialist care (emergency issue), and did not see a
19  specialist until August 13, 2009, over five (5) weeks later, and was not
20  started on any treatment until August 15, 2009 (at 1600 hours).

21      106. As set forth in this Complaint a policy and custom existed with the
22  Sutter County Jail, whereby referrals for specialist care, necessary
23  diagnostics, and specialized services (Medical Care and Treatment) was
24  delayed in order to shift the cost burden to the State ("CDCR"), and whereby
25  the Sheriff (Defendant PARKER) was the Official responsible for overseeing
26  the delivery of healthy care services, and failed to oversee (supervise) the
27  delivery of such services, or exercise reasonable care in doing so; and when
28  made aware of deficiencies pertaining to the delivery of the health care
   services, and the resulting inadequate medical care, he failed to take

20

1  necessary or reasonable actions to correct the deficiencies or failures of
2  which he was aware.

3      107. "Policymakers" (including PARKER) failed to establish adequate
4  policies and procedures to ensure the delivery of the health care services
5  within the Jail, and failed to oversee the maintenance, inspection, repair,
6  and cleaning of the ventilation and cooling system, or exercise reasonable
7  care in doing so, whereby after being aware of potential hazards, failed to
8  take necessary and reasonable actions to correct the hazards.

9      108. Defendants (including PARKER) failed to establish adequate policies,
10 procedures, and practices to ensure proper maintenance, inspection, repair,
11 cleaning and monitoring of ventilation and cooling system(s) within the Jail.

12     109. The Risk of Harm and dangers of failure to provide adequate medical
13 care or to ensure the delivery of health care series is obvious and
14 foreseeable, and the Defendants' (PARKER's) failure to develop or implement
15 adequate policies and procedures to ensure such created a foreseeable risk,
16 and was unreasonable.

17     110. The Risk of Harm and dangers of failing to provide proper
18 maintenance, inspection, repair, cleaning, and monitoring of the Jail
19 ventilation and cooling system(s) is and was obvious and foreseeable, and the
20 Defendants' (PARKER's) failure to develop or implement adequate policies and
21 procedures to ensure such created a foreseeable risk, and was unreasonable.

22     111. Plaintiff is informed and believes, and upon such information and
23 belief alleges and states that sheriffs are "Policymakers" within the county
24 they serve and represent, and therefore their policies, procedures, and
25 established customs are by default "Official" policies, or "Edicts" of the
26 "County" itself, whereby the Medical Staff operated under or in accordance
27 with such a "County" policy when they delayed or denied care (referrals) for
28 monetary (budgetary) reasons.

21

1    112. Plaintiff is informed and believes, and upon such information and
2    belief alleges and states that the "County's" failure to establish adequate
3    policies and procedures to ensure adequate medical care to prisoners,
4    adequate hazard-free (safe) facilities to house prisoners, and to ensure
5    compliance with regulations, codes and laws, when as here the risk of not
6    providing such policies and procedures (failure to provide adequate medical
7    care; failure to provide adequate "safe" housing; and a failure to provide
8    reasonable accommodations) was reasonable foreseeable raising a claim under
9    Monell.

10    113. Defendant J. PAUL PARKER's intentions or state of mind pertaining to
11    prisoners and/or their needs can be at least in part inferred from the way he
12    addressed inmates in the exercise yard are near "A" Pod, whereby he stated "I
13    am one bad mother [expletive omitted] and you don't want to mess with me..."
14    in response to an inmate's (prisoner's) question.

15    114. Plaintiff's back brace and T.E.N.S. unit were previously prescribed
16    by a physician, and were "medical appliances" and as such should have been
17    provided to Plaintiff, or Defendants should have allowed him to use or retain
18    them in accordance with American's with Disabilities Act (ADA).

19    115. Plaintiff is informed and believes, and upon such information and
20    belief alleges and states that Defendants' failure to provide medical care or
21    the medical deprivation caused the Plaintiff to be excluded from other
22    services and programs (activities) and constituted discrimination based upon
23    Plaintiff's disability (i.e. failure to provide medical care or treat
24    Plaintiff's medical conditions that were the basis of his disabilities,
25    precluded him from participation due to the resulting limitations or by
26    reason of such disability).

27    116. Plaintiff is informed and believes, and upon such information and
28    belief alleges and states that Defendants' failure to provide mitigating
measures or reasonable accommodations (i.e. mask, respirator, filtration,

22

1  clean air, and/or a double mattress/thicker mattress) constituted a failure
2  to provide medical care or treat Plaintiff's medical conditions that were the
3  basis of his disabilities; in addition the failure to do so aggravated his
4  medical conditions that were the basis of his disabilities, whereby such
5  disabilities precluded him from participation in programs, services, and
6  activities by reason of his disability.

8  **CLAIMS FOR RELIEF**

10  **A.   Deliberate Indifference to Serious Medical Needs**
11  **(Deliberate Indifference, Cruel and Unusual Punishment, Respondent Superior,**
12  **and Monell Claims)**

13      117. The actions of Defendants complained of herein are brought pursuant
14  to 42 U.S.C.§1983 and constitute a violation of the Eighth Amendment to the
15  United States Constitution as incorporated through the Fourteenth Amendment
16  (Violations of the Eighth and Fourteenth Amendments). Defendants' policy,
17  practices, acts, and omissions demonstrate their deliberate indifference to
18  Plaintiff's serious medical needs and he was harmed thereby, in violation of
19  his Eighth Amendment right to be free from cruel and unusual punishment.

20      118, Defendants knew that Plaintiff faced a substantial risk of serious
21  harm if he was not provided adequate medical care for his serious medical
22  conditions (needs), and knew when they developed, implemented, and maintained
23  policies and procedures to limit, delay, or deny medical care and treatment,
24  that such policies, procedures, or customs (practices) could or would create
25  a substantial risk of harm.

26      119. Defendants disregarded the serious risk of harm by failing to take
27  reasonable measures to address serious medical needs, by failing to develop
28  adequate and necessary policies and procedures to ensure adequate medical
care, and by implementing, maintaining, developing, or failing to modify

1  policies and procedures designed to, or in practice delayed or denied
2  adequate medical care (treatment) for serious medical needs.

3       120. In doing each and all of the acts alleged herein Defendants were
4  acting under the color of State law, and at all relevant times that the
5  Defendants' actions were unconstitutional, whereby the Defendants were aware
6  (knew) or should have known their actions were unconstitutional.

7       121. The refusal or failure to schedule referrals for specialty care for
8  months, and denying other medical care services by Defendants J. PAUL PARKER,
9  Officer BIDWELL, JOHN DOE (No. 1), J. SAUNDERS, DORIS BROWN, SUTTER COUNTY
10  JAIL, SUTTER COUNTY SHERIFF'S DEPARTMENT, and the COUNTY OF SUTTER
11  (Hereinafter "Administrators"), constituted deliberate indifference to
12  Plaintiff's serious medical needs in violation of the Eighth Amendment.

13       122. Defendant, JIM DENNEY, created, implemented, and developed
14  policy(ies) and procedures, established a custom and practice to delay or
15  deny necessary medical care for budgetary reasons, and facilitated continued
16  use of such policies and procedures, or transferred such policies and
17  procedures to Successors in Interest, knowing such policies and practices
18  would create a substantial risk of harm; and whereby such policies, practices
19  and customs did create substantial harm and injury, violating Plaintiff's
20  Eighth Amendment Constitutional rights.    Defendant DENNY, together with
21  "Administrators," shall hereinafter be referred to as "Officials."

22       123. Failure of "Officials" to provide necessary care for budgetary
23  reasons, as it was too expensive, or to delay such care to minimize cost, was
24  deliberate indifference to Plaintiff's serious medical needs in violation of
25  the Eighth Amendment.

26       124. Failure to provide Plaintiff with needed medical treatment by
27  "Administrators" resulted in further harm to Plaintiff, and unnecessary
28  (wanton) physical and emotional pain, suffering, and physical injury.

24

1     125. Policies, procedures and practices developed, implemented,
2   established, and maintained by "Officials" resulted in a failure to provide
3   Plaintiff with needed medical treatment, resulting in Plaintiff suffering
4   further injury, and both physical and emotional pain.

5     126. Defendants' failure to follow the local specialist recommendation to
6   provide follow-up care by Plaintiff's specialist (UC Davis Medical Center,
7   Sacramento) for his eye condition (viral infection), or provide follow-up
8   care by an alternate competent specialist, was deliberate indifference to
9   Plaintiff's serious medical needs in violation of the Eighth Amendment.

10    127. The failure of "Administrators" to take reasonable steps to ensure
11  that Plaintiff received necessary (needed) treatment, despite their knowledge
12  of Plaintiff's serious medical needs, constituted deliberate indifference to
13  Plaintiff's serious medical needs.

14    128. The failure of "Officials" to take steps to correct a continuing
15  pattern of culpable failures of staff pertaining to referrals to specialist
16  care when necessary, and inadequate medical care after multiple complaints by
17  Plaintiff (and other prisoners), and when symptoms were presenting which
18  indicated such medical needs, was deliberate indifference to Plaintiff's
19  serious medical needs.

20    129. "Officials" were deliberately indifferent to Plaintiff's serious
21  medical needs when as "Policy Makers" they created, implemented, or allowed
22  policies, procedures, practices, and customs, which delayed or denied
23  treatment for medical conditions, which could be and were urgent, conditions
24  that could and did cause further injury (harm); or conditions that could and
25  did cause unnecessary and a wanton infliction of pain (suffering) in
26  violation of the Eighth Amendment.

27    130. "Administrators" were deliberately indifferent to Plaintiff's
28  serious medical needs when they delayed necessary care and treatment, so that
    Plaintiff would be transferred to State Custody (CDCR), whereby they would

1  not pay for necessary care (even when Plaintiff was not transferred for
2  several months), in violation of the Eighth Amendment.

3      131. "Administrator's" failure to make a referral for an orthopedic
4  specialist or a neurologist, the failure to order a timely MRI, and their
5  failure to order diagnostics necessary to diagnose Plaintiff's conditions or
6  to determine the severity (stability), when the Plaintiff's condition caused
7  severe pain and was continually worsening, and whereby "Administrators" knew
8  that the Plaintiff was in severe pain, and such pain and symptoms were
9  worsening, was deliberate indifference to Plaintiff's serious medical needs
10  in violation of the Eighth Amendment.

11     132. "Administrators" were deliberately indifferent to Plaintiff's
12  medical needs by failing to adequately organize, monitor, and control the
13  administration of Health Care Services in violation of the Eighth Amendment
14  resulting in unconstitutional delays and denial of needed medical care.

15     133. "Administrators" were deliberately indifferent to Plaintiff's
16  serious medical needs by failing to request (obtain) Plaintiff's medical
17  records from outside providers (physicians, specialists, imaging diagnostics,
18  labs and tests, medical and physical therapy records, etc.), and by failing
19  to order necessary diagnostic tests/imaging in a timely manner (which were
20  necessary to properly diagnose, treat, and monitor Plaintiff's medical
21  conditions), or to seek necessary specialist care when such specialty
22  training was required, when "Administrators" knew they lacked the necessary
23  (specialty) training, knowledge, and experience to render necessary care, and
24  knowing such delay or denial of care could or would result in further harm.
25  Even when the need for treatment was obvious even to a layperson,
26  "Administrators" were dismissive and ignored Plaintiff's needs, intentionally
27  delaying or depriving Plaintiff of necessary medical care in violation of the
28  Eighth Amendment.

26

1    134. When Defendants SAUNDERS and BROWN failed to make any changes when
2    they knew any treatment provided Plaintiff was inadequate and not working,
3    and Plaintiff's condition was worsening, and whereby Defendants SAUNDERS and
4    BROWN failed to treat Plaintiff's chronic and severe pain in a timely manner,
5    delaying specialist care for months, was deliberate indifference to
6    Plaintiff's serious medical needs in violation of the Eighth Amendment.

7    135. "Administrators" treated the Plaintiff as a "nuisance" and failed to
8    take even minimal steps to guard against potential injury or harm, knowing
9    that such may result in serious or permanent injury, was deliberate
10   indifference to Plaintiff's serious medical needs.

11   136. Defendant's failure to provide treatment consistent with
12   Professional Standards of Care and provide medical care which fell below a
13   level of care reasonable commensurate with modern medical science and a
14   quality acceptable with a Prudent Professional Standard within the Community
15   in light of Plaintiff's particular needs was deliberate indifference upon the
16   part of "Administrators" in violation of the Eighth Amendment.

17   137. "Administrators" failed to provide necessary medical care for
18   obvious and clearly identifiable(ied) serious medical needs, which required
19   immediate medical care, and ongoing specialized care for both acute and
20   chronic medical conditions, whereby "Administrators" failed to provide
21   adequate or timely medical care, resulting in unnecessary and wanton
22   infliction of pain, further injury (harm) to Plaintiff, and deliberate
23   indifference to Plaintiff's serious medical needs, in violation of the Eighth
24   Amendment.

25   138. "Officials" were deliberately indifferent to Plaintiff's serious
26   medical needs by adopting a policy and practice of delaying and denying
27   referrals to specialist care, and utilizing a review and referral process for
28   specialist consultation (care) that as a goal, in practice, was to limit care

27

1  as much as possible thereby delaying and denying necessary medical care and
2  services to the Plaintiff in violation of the Eighth Amendment.

3      139. After being advised of severe and debilitating low back pain
4  (injury), "Administrators" failed to provide timely medical care, or
5  reasonably necessary medical care, which would have been available to the
6  Plaintiff if not incarcerated, which was deliberate indifference, creating
7  unnecessary and wanton infliction of pain by delaying necessary care, and not
8  addressing Plaintiff's low back injury, in violation of the Eighth Amendment.

9      140. "Administrators" were deliberately indifferent to Plaintiff's
10 serious medical needs, after being advised (given notice) of such needs, when
11 they failed to act to remedy the problem and ensure that Plaintiff's needs
12 were met, and demonstrated their intentions (deliberate indifference) by
13 failing to comply with their own grievance procedures and process, by
14 delaying access to the process, failing to make necessary forms available,
15 and by failing to respond to the grievance according to their own policies
16 and procedures (written response, and time constraints), and their failure to
17 correct systemic failures of their medical services delivery once aware of
18 such failures (problems) resulting in a continuation of unconstitutional
19 medical care, violating Plaintiff's Eight Amendment right against cruel and
20 unusual punishment.

21     141. Each of the Defendants had a duty to ensure that all possible steps
22 were taken to protect the Plaintiff from the objectively and sufficiently
23 serious risk as described herein.

24     142. As a direct, proximate and foreseeable result of Defendant's conduct
25 the Plaintiff was harmed (damaged), and the Plaintiff will require medical
26 monitoring, testing and treatment for his medical condition.

27     143. As alleged herein, Defendants knew that the Plaintiff was at more
28 risk, and more likely to suffer (contract) an "active" viral infection in his
   right eye, and to suffer from exposure to mold (respiratory conditions) and

                                    28

1   contaminants, as well as suffer disability, limitation, and severe pain
2   pertaining to his low back condition (injury), and despite such knowledge
3   these Defendants engaged in maliciously, willfully, oppressive conduct with
4   the intent to harm the Plaintiff, with a conscious disregard to the
5   Plaintiff's rights and with the intent to injure Plaintiff, engaged in
6   conduct that constituted deliberate indifference, oppression, fraud, or
7   malice; thereby entitling Plaintiff to punitive and/or exemplary damages in
8   an amount sufficient to punish and make an example of the Defendants.

9       144. Plaintiff is informed and believes and upon such information and
10  belief, alleges and states that the Defendants' actions constituted an
11  unconstitutional policy under Monell.

12      145. Plaintiff is informed and believes, and upon such information and
13  belief, alleges and states that Defendant PARKER, instituted and/or
14  implemented an 'unconstitutional" policy resulting in "unconstitutionally"
15  inadequate medical care, and delays in referrals for specialty care to shift
16  the burden of cost to the State, and when made aware of inadequate care he
17  ignored such or turned a blind eye to the resulting abuse or actions
18  constituting a failure to oversee the delivery of the health care services,
19  and establishing a claim of Supervisory Liability.

20      146. Plaintiff is informed and believes, and upon such information and
21  beliefs, alleges and states that Defendant PARKER, failed to oversee the
22  maintenance of the ventilation and cooling system(s), and when he had
23  reasonable notice or knowledge of potential hazards, failed to take
24  reasonable or necessary actions to correct the hazard(s), and rather turned a
25  blind eye to the unconstitutional conditions, establishing a claim of
26  Supervisory Liability.

27      147. Plaintiff is informed and believes, and upon such information and
28  belief, alleges and states that Defendant DENNEY instituted, developed, or
    implemented; or participated in the development, implementation of an

29

1  "unconstitutional" policy, then promoted, transferred, or caused a continuing
2  use of such policy under his "Successor in Interest" (Defendant PARKER), and
3  continued such policies and procedures during interim periods, whereby he was
4  acting in a supervisory position, or in a limited capacity, and whereby his
5  actions pertaining to the development, implementation or continued use of
6  such "unconstitutional" policies to limit, deny, or delay necessary medical
7  care established a Supervisory Liability claim.

8
9  **B. Failure to Protect from Harm (Deliberate Indifference, respondent**
10 **superior, and Monell Claims)**

11     148.  Plaintiff's  Eighth  Amendment  rights  were  violated  when  the
12 Defendants  (PARKER,  BIDWELL,  JOHN  DOE  NO.  1,  SUTTER  COUNTY  SHERIFF'S
13 DEPARTMENT, SUTTER COUNTY JAIL, COUNTY OF SUTTER), and the subdivisions,
14 departments, or agencies of the Defendants (i.e. Department of Public Works,
15 Health Department, etc.) including their employees, representatives, agents,
16 contractors, or subcontractors under their control, supervision, or guidance
17 (hereinafter referred to as "Responsible Parties" collectively), by failing
18 to properly maintain, inspect, repair, clean, and operate Jail ventilation
19 and cooling systems, causing exposure to hazardous contaminates including
20 mold, and failing to take actions to eliminate or to mitigate such hazards
21 and exposure after being advised (given notice) of such hazards, whereby
22 Plaintiff suffered further harm (injury) pertaining to his known medical
23 conditions,  requiring  ongoing  medications,  resulting  in  long-term
24 (potentially life-long) health conditions (respiratory related); whereby such
25 hazards exacerbated the Plaintiff's other medical conditions unnecessarily,
26 resulting in an unnecessary and wanton infliction of pain and suffering.

27     149. The actions and inactions of the "Responsible Parties" created an
28 unsafe and hazardous condition within the property under their control, and
   belonging to the Defendants, whereby they allowed such unsafe and hazardous

                                    30

1   conditions to continue, even upon knowledge of such conditions, whereby the
2   hazard was obvious and visible, resulting in a failure to protect the
3   Plaintiff from harm and deliberate indifference to Plaintiff's known medical
4   condition (severe allergy to mold and asthma triggers) and known hazards in
5   violation of the Eighth Amendment.

6       150. Defendants SAUNDERS and BROWN, together with the "Responsible
7   Parties" failed to take necessary actions to protect Plaintiff from harm when
8   they were advised that (were aware) Plaintiff was suffering respiratory
9   conditions related to the exposure to mold and other contaminants, and where
10  Defendants knew of the substantial risk of harm to the Plaintiff pertaining
11  to such exposure by Plaintiff's medical history, especially in light of his
12  presenting signs and symptoms, consistent with exposure (to mold and
13  contaminants or allergic reactions to such), especially when    Defendants'
14  training, knowledge, and experience would have made such obvious (when such
15  would have been obvious to a "layperson" or persons with only standard first
16  aid training), violating Plaintiff's Eighth Amendment rights and state law.

17      151. The "Responsible Parties" together with Defendants SAUNDERS and
18  BROWN owed a duty to exercise reasonable care to protect the Plaintiff from
19  harm, whereby the Defendants breached their duty and obligation to protect
20  the Plaintiff, and failed to exercise reasonable care to prevent the hazard,
21  or to reasonably respond to the hazard once they were advised of such,
22  resulting in serious harm, complications, physical and emotional injury,
23  whereas the Defendants' breach of duty (obligation) and the corresponding
24  hazard was the proximate cause of the injuries, in violation of the Eighth
25  Amendment and California Law.

26      152. As a result of the "Responsible Parties'" failure to act
27  (inactions), Plaintiff was exposed to environmental hazards (mold and other
28  contaminants) that resulted in serious medical conditions, exacerbation of

31

1  existing   medical   conditions,   physical   harm   and   unnecessary   (wanton)
2  infliction of pain and suffering.

3      153.  As   set   forth   in   this   Compliant,   the   "Responsible   Parties,"
4  individually and collectively, had a duty to ensure that all possible steps
5  were taken to protect Plaintiff from harm, guard against the substantial risk
6  of injury, and reasonably foreseeable hazards.

7      154. As a direct, proximate, and foreseeable result of the Defendants'
8  (Responsible Parties") conduct, the Plaintiff was harmed (injured), and the
9  Plaintiff will require medical treatment, monitoring, and testing (ongoing)
10 for his medical conditions.

11     155. As alleged herein, Defendants knew the Plaintiff was more at risk to
12 suffer harm from the exposure to mold (contaminants) as Plaintiff had known
13 allergies to such, as well as known medical conditions including asthma,
14 allergies, and respiratory conditions, and despite such knowledge, exposed
15 Plaintiff   to   the   hazardous   condition   (continued   exposure),   which   was
16 malicious,   willful,   intentional,   and   oppressive,   exercising   a   conscious
17 disregard for Plaintiff's rights, with the intent to injure Plaintiff,
18 engaging in conduct that constituted oppression, fraud, or malice, thereby
19 entitling  Plaintiff  to  punitive  and/or  exemplary  damages  in  an  amount
20 sufficient to punish or make an example of Defendants.

21

22 **C.  Medical Malpractice, Professional Negligence, Statutory Liability, and**
23 **Personal Injury (State Claims)**

24     156. Plaintiff is informed and believes, and upon such information and
25 belief alleges and states that a failure to establish adequate policy(ies)
26 states a Monell claim.

27     157. Whereas Defendants BROWN and SAUNDERS are medical professionals,
28 they have a duty to act upon their knowledge of substantial risk of harm, and
   to provide medical care and treatment consistent with Professional Standards

32

of Care, and to provide medical care and treatment at a level reasonably commensurate with Prudent Professional Standards in the Community, to properly diagnose and treat Plaintiff's medical conditions to order necessary diagnostics in a timely manner, recognize and act upon common signs and symptoms, rely upon and use acceptable (accepted) and effective medical treatments, exercise adequate professional judgment and knowledge, provide timely referrals to specialist care, acquire or obtain a thorough patient history, and whereby Defendants SAUNDERS' and BROWN's medical care and treatment fell below the appropriate Standard of Care referenced above, their care and treatment constituted professional negligence and malpractice.

158. Whereas Defendants SAUNDERS and BROWN had a duty to provide Plaintiff with reasonably necessary medical care and protect Plaintiff from further harm (injury) and properly administer, control, and monitor the delivery of the health care services, together with their duties to create and implement policies and procedures to ensure that Plaintiff received adequate timely, and effective medical services; and where Defendants had a responsibility to train, manage, and supervise subordinate staff (employees), Defendants failed to do so resulting in professional negligence and malpractice, and willfully and intentionally caused further harm (injury) to Plaintiff, while subjecting him to unnecessary pain, suffering (physical and emotional injury) and a loss in quality of life.

159. Defendants SAUNDERS and BROWN failed to use the knowledge, skill, and care ordinarily possessed and employed by members of their professions in good standing, or exercise a level of care consistent with Prudent Professionals of equal training, knowledge and experience.

160. Defendants SAUNDERS and BROWN failed to order timely and necessary diagnostics to assess, monitor, and treat Plaintiff's medical conditions, whereby they had no rational basis in which to base medical decisions, treatment plans, or determine the Status of Plaintiff's medical conditions.

33

161. Defendants SAUNDERS and BROWN failed to obtain necessary medical records (Patient History) from outside providers including diagnostics, treatment plans, physicians' notes, and other medical records, knowingly (as Medical Professionals) depriving themselves of critical information, whereby "Patient History" or "Medical History" is considered the "gold" standard or fist step in providing adequate, appropriate and necessary care breaking the "golden rule" of health care, and intentionally depriving themselves of the rational basis in which to base medical decisions.

162. Defendants SAUNDERS and BROWN as "medical professionals" knew of the substantial risk of harm created by failing to obtain Patient Medical Records (history) and order timely necessary diagnostics, and knowing such risks, failed to do so.

163. Defendants SAUNDERS and BROWN failed to obtain medical records from Plaintiff's outside specialists (i.e. Neurologist, Orthopedic Surgeon, etc.) to ensure adequate medical care, when they themselves were not specialists.

164. Defendants SAUNDERS and BROWN failed to make a timely referral to a specialist for Plaintiff's low back condition (injury) to assess the Plaintiff's condition and ensure necessary and appropriate medical care, when they themselves were not specialists.

165. Defendants SAUNDERS' and BROWN's failure to obtain necessary records, consult specialists, etc. not only resulted in inadequate medical care, it resulted in interference with "treatment once prescribed," and a failure to follow specialist recommendations.

166. Defendants SAUNDERS and BROWN failed to make any referrals to physical therapy or provide any alternative in-house therapy, HEP, and Plaintiff was not provided a means to continue on-going and current therapy(ies) in existence at the time of incarceration.

167. Defendants SAUNDERS and BROWN not only delayed referring Plaintiff to an eye specialist for an urgent and serious condition resulting in further

34

1  harm, they failed to follow the very recommendations of the specialist they
2  sought, when they themselves were not specialists resulting in further harm.

3      168. Defendants SAUNDERS and BROWN failed to consult and/or follow the
4  medication guidelines for topical treatments (Prescribing Data, Information
5  and Protocols), and blindly prescribed or intentionally prescribed
6  medications 'blindly' and inconsistent with (contrary to) such guidelines,
7  whereby as Medical Professionals they knew or should have known the risk of
8  harm in doing so, and whereby such actions resulted in further harm.

9      169. Defendants SAUNDERS and BROWN failed to properly treat Plaintiff's
10 respiratory condition(s) or take minimal steps to guard against the cause
11 (identify and mitigate) including exercising reasonable judgment and provide
12 notice (based upon their professional knowledge) to necessary superiors.

13     170. By virtue of training, knowledge, and experience as "Medical
14 Professionals" Defendants SAUNDERS' and BROWN's conduct (actions) were
15 intentional and willful, and were done so with the knowledge that such
16 conduct could, would, and did result in further harm, injury and pain.

17     171. Defendants SAUNDERS' and BROWN's conduct and actions constituted
18 deliberate indifference to Plaintiff's serious medical needs, whereby
19 Plaintiff's medical conditions raised in this Complaint were all "serious
20 medical needs," and Defendants SAUNDERS' and Brown's conduct and actions,
21 resulted in an 'unnecessary and wanton infliction" of pain.

22     172. Plaintiff is informed and believes, and upon such information and
23 belief, alleges and states that if Defendants are found to not possess the
24 knowledge, skill, and care expected of their professions, they are negligent
25 or commit malpractice when they perform the duties of such professions.

26     173. Plaintiff's mere attendance in the medical office as a "medical
27 visit" or "sick call" when he received inadequate or no reasonable care,
28 constituted no care, whether or not seen by appropriate medical staff; and
   merely "seeing" the Plaintiff, does not constitute medical care, even if

1 │ vitals were taken or notations made, and in fact such actions are evidence of

2 │ Defendants' unconstitutional motives or intent as they were on notice.

3 │     174. As a direct, proximate, and foreseeable result of Defendants'

4 │ (SAUNDERS and BROWN) conduct and actions the Plaintiff was harmed (injured),

5 │ and the Plaintiff will require ongoing medical monitoring, testing, and

6 │ treatment for his medical conditions.

7 │     175. As alleged herein, Defendants (BROWN and SAUNDERS) knew the

8 │ Plaintiff was at substantial risk of harm pertaining to his known medical

9 │ conditions, and knowing such risk, failed to provide adequate and timely

10 │ medical care, timely referrals to specialist care, timely diagnostics

11 │ (necessary diagnostics), or follow specialist recommendations, and despite

12 │ such knowledge, Defendants (SAUNDERS and BROWN) engaged in such conduct,

13 │ which was malicious, willful, intentional, and an oppressive act, while

14 │ exercising a conscious disregard to the Plaintiff's rights, with the intent

15 │ to injure Plaintiff, and resulting in an intentional and wanton infliction of

16 │ pain (by failing to treat), and engaged in conduct that constituted

17 │ deliberate indifference, oppression, fraud, or malice thereby, entitling the

18 │ Plaintiff to punitive and/or exemplary damages in an amount sufficient to

19 │ punish the Defendants (SAUNDERS and BROWN) and sufficient to make an example

20 │ of the Defendants (SAUNDES and BROWN).

21 │     176. As set forth in this Complaint, Defendants (SAUNDERS and BROWN)

22 │ individually and collectively, had a duty to ensure Plaintiff received

23 │ adequate medical care and protect him from further harm, and failed to do so.

24 │

25 │ **D.  General Negligence, Statutory Liability, and Personal Injury (State**

26 │ **Claims)**

27 │     177. Defendants (PARKER, BIDWELL, JOHN DOE NO. 1, SUTTER COUNTY SHERIFF'S

28 │ DEPARTMENT, SUTTER COUNTY JAIL, COUNTY OF SUTTER) together with their

subdivisions, departments, or agencies (i.e. Department of Public Works,

36

1   Health Department, etc.) including their employees, representatives, agents,
2   contractors, or sub-contractors under their control, supervision, or guidance
3   (hereinafter referred to as "Parties In Charge" collectively) failed to
4   oversee the delivery of the health care service; failed to provide "safe"
5   housing free of known hazards; operated a facility or property owned by the
6   County with foreseeable or known hazardous conditions; created, developed,
7   implemented, or maintained unconstitutional policies; failed to maintain,
8   inspect, repair, clean, and monitor the Jail ventilation and cooling
9   system(s), or oversee such system(s); failed to create and implement adequate
10  policies and procedures to ensure adequate medical care (health care)
11  services; failed to create and implement adequate policies and procedures to
12  ensure safe facilities; failed to properly train, monitor, and supervise
13  staff; failed to create, develop, and implement adequate policies and
14  procedures, monitor, and supervise to ensure compliance with all State and
15  Federal laws, codes, regulations and directives including ADA, section 504 of
16  the Rehabilitation Act, Health and Safety Code, etc.; failed to monitor and
17  oversee the functioning of the Jail "sick call" procedure, and the Jail
18  "grievance" process to ensure its adequacy and compliance; and failed to
19  exercise reasonable care, which resulted in harm to the Plaintiff.

20      178. Defendants ("Parties In Charge") failed to take reasonable or
21  necessary actions to correct deficiencies or hazards, of which they were
22  aware or should have known, whereby there was a foreseeable risk of harm, and
23  therefore allowed hazards to remain uncorrected, continuing exposure to such
24  hazards, and allowed unconstitutional customs and practices to continue
25  denying Plaintiff adequate and necessary medical care, literally turning a
26  blind eye to such abuses and violations, which resulted in harm to the
27  Plaintiff.

28      179. Defendants' (Parties In Charge") not only constituted deliberate
    indifference, they constituted negligence and personal injury claims under

                                        37

1   State law, and breach of their duties and obligations under State law
2   (Statutory liability under State law).

3       180. Plaintiff is informed and believes and upon such information and
4   belief, alleges and states that each action, inaction, failure alleged herein
5   is independently and collectively (cumulatively) actionable under State law.

6       181. As set forth in this Complaint, the Defendants ("Parties In Charge")
7   individually and collectively had a duty and obligation to ensure that
8   Plaintiff received adequate medical care and "safe" housing, whereby such
9   Defendants had a duty to protect Plaintiff from harm, guard against the
10  substantial risk of injury and reasonably foreseeable hazards, and exercise
11  reasonable care, which they failed to do.

12      182. As a direct, proximate, and foreseeable result of the Defendants'
13  ("Parties In Charge") conduct, the Plaintiff was harmed (injured), and the
14  Plaintiff will require ongoing medical care, treatment, monitoring, and
15  testing for his medical conditions.

16      183. As alleged herein, the Defendants ("Parties In Charge") knew of the
17  Plaintiff's increased risk of substantial harm created by his known medical
18  conditions (allergies, asthma, specific allergy to mold, history of viral
19  infection, and low back condition), and the Defendants ("Parties In Charge")
20  knew or should have known of the reasonably foreseeable risk of harm
21  pertaining to the failure to provide adequate medical care, exposure to mold,
22  and failure to provide adequate "safe" housing; and despite such knowledge
23  failed to ensure adequate medical care, exposed Plaintiff to mold and
24  contaminants, continuing such conduct even after they knew or should have
25  known of the resulting harm to Plaintiff, whereby such conduct was malicious,
26  willful, intentional, and oppressive, exercising a conscious disregard to
27  Plaintiff's rights, with the intent to injure Plaintiff, whereby such conduct
28  constituted oppression, fraud, or malice thereby entitling Plaintiff to

1  punitive and/or exemplary damages in an amount sufficient to punish and make
2  an example of them.

3

4      **E.   Americans With Disabilities Act, Rehabilitation Act, Equal**
5                    **Protection, and Monell Claims**

6      184.  The  actions  of  the  Defendants,  as  set  forth  in  this  Complaint,
7  constitute a violation of Plaintiff's rights under the ADA and Section 504 of
8  the Rehabilitation Act.

9      185.  Plaintiff  is  a  qualified  individual  with  a  disability(ies)  as
10  defined in the ADA and qualified as an individual with a disability(ies) as
11  defined in Section 504.

12     186. As a result of Defendants' policies, procedures, and practices that
13  resulted  in  inadequate  medical  care,  failure  to  provide  reasonable
14  accommodations,  and  failure  to  mitigate  or  remove  barriers;  together  with
15  Defendants' failure to develop adequate and necessary policies, procedures,
16  and practices to ensure adequate medical care, reasonable accommodations, and
17  compliance with the ADA and Rehabilitation Act, Plaintiff was excluded from
18  programs  and  services  available  to  inmates  that  Plaintiff  was  otherwise
19  qualified  to  receive,  provided  by  Defendants  to  individuals  under  their
20  custody  and  control  (who  were  similarly  situated),  thereby  subjecting
21  Plaintiff to discrimination in violation of the ADA and Section 504, whereby
22  Plaintiff's  disability(ies)  were  the  proximate  cause  (reason)  of  his
23  exclusion.

24     187.  Defendants  made  Plaintiff's  access  to  programs  and  services
25  unusually difficult, painful, and dangerous, and failed to provide reasonable
26  accommodations for him.

27     188.  Plaintiff is informed and believes, and upon such information and
28  belief, alleges and states that the claims stated and raised herein, further

constitute violations of Equal Protection, Deliberate Indifference, and other causes of action under State Law Claims and Monell.

189. Defendants failed to treat the Plaintiff the same as other equally situated prisoners with respect to his disabilities whereby Defendants provided reasonable accommodations to some prisoners who were equally situated to Plaintiff, and at the same time denied Plaintiff similar accommodations without any rational basis to do so, violating the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, while demonstrating deliberate indifference to Plaintiff's medical needs, interfering with treatment once prescribed and violating Plaintiff's right to Equal Protection under the law.

190. Plaintiff's upper-tier housing required him to negotiate (climb) stairs and walk a significant distance along an upstairs walkway (catwalk) going to and from his cell in order to access or participate in programs, activities, and services while he suffered from mobility impairments and medical conditions, including conditions that limited or affected his ability to walk, stand, or climb stairs, and which caused instability and numbness (inability to support weight and leg giving-out) increasing Plaintiff's chance of falling, together with dizziness, light-headedness, and disorientation creating a substantial risk of injury, whereby such conditions had resulted in reported falls, whereas Plaintiff had to endure substantial pain, difficulty, and risk of incurring serious injury each time he attempted to take advantage of or utilize programs, activities and services including the medical "sick call" process (Nursing Office Visits) receiving medications (downstairs), processing legal mail (downstairs), accessing the law library, accessing the recreational yard, utilizing the Day Room Recreational Area, obtaining or accessing reading materials, obtaining forms, receiving canteen, attending visits, attending legal visits, utilizing telephones and other related programs and services, and whereby moreover the risk of incurring

40

serious injury and having to negotiate hazards created a barrier, whereby Plaintiff was precluded from or suffered reduced or limited access to programs and services by way of his disability.

191. Defendants failed to provide Plaintiff with assistance or remove such barrier by means of reasonable accommodation (i.e. move to ground-floor cell) resulting in an ADA violation (or to relocate Plaintiff to another area of the Jail, near services on a ground floor).

192. The failure to provide adequate medical care amounted to exclusion from  services, whereby such untreated, unmitigated conditions created a disability/(barrier) leaving Plaintiff unable to participate in programs and services, thus constituting an ADA violation when by reason of his disability, Plaintiff was precluded.

193. By failing to provide Plaintiff a thicker or double mattress, clean air or mitigating accommodation (filters, mask, relocation to another area without mold, etc.) violated ADA when such failure to provide such accommodations negatively affected Plaintiff's medical conditions, which were the basis of his disabilities and such conditions precluded Plaintiff from programs and services available to others, especially when some similarly situated individuals received accommodations.

194. Failure to provide (deprivation of) necessary medical care, caused Plaintiff to be excluded from programs and services due to his disability.

195. Defendants did not allow the Plaintiff to have or use his previously prescribed "medical appliances" (i.e. back brace, and TENS unit), nor provide Plaintiff with any alternatives, whereby such denials were the functional equivalent to withholding a "reasonable accommodation" or necessary "Medical appliances," and whereby not only did the Defendants fail to refer Plaintiff to Physical Therapy (PT) or provide any alternative form of therapy, they prevented Plaintiff from continuing a PT HEP program previously prescribed (Physical Therapy, Home Exercise Program) resulting in further limitations

41

1  and disability, functionally excluding Plaintiff from programs and services
2  by reason of his disability(ies).

3    196. Plaintiff is informed and believes, and upon such information and
4  belief, alleges and states that Disability discrimination is actionable under
5  the ADA, Section 504 of the Rehabilitation Act, and under California Law
6  independent of the Federal Claim.

7    197. As set forth in this Complaint, the Defendants had a duty and
8  obligation to provide reasonable accommodation, remove barriers, and provide
9  treatment for Plaintiff's disabilities and underlying medical conditions, and
10 comply with the ADA, Section 504 of the Rehabilitation Act, and corresponding
11 State laws, whereby they failed to fulfill such duties and obligations
12 depriving Plaintiff's rights under the law.

13   198. As a direct and proximate cause of Defendants' conduct, Plaintiff's
14 ability to access programs and services was limited, unfairly restricted, or
15 precluded.

16   199. As set forth and alleged in this Complaint, the Defendants knew of
17 the Plaintiff's medical conditions and corresponding limitations and
18 disabilities, and knowing of such failed to provide reasonable
19 accommodations, knowing such would preclude Plaintiff from programs and
20 services available to other inmates by reason of his disability, or limit his
21 access to such programs and services. Despite such knowledge Defendants
22 failed to move Plaintiff to a ground floor, maintaining a serious risk of
23 injury each time he attempted to utilize a program or service, failing to
24 provide adequate medical care exacerbating Plaintiff's disability resulting
25 in exclusion by reason of disability; whereby such conduct was malicious,
26 willful, intentional, and oppressive, while exercising a conscious disregard
27 to Plaintiff and his rights, with the intent to deprive, place at risk of
28 harm, or injure; whereby such conduct constituted oppression, fraud, or

42

1   malice and thereby entitling Plaintiff to punitive damages exemplar damages,
2   and/or civil penalties under State and Federal law.

3       200. Defendants' actions were arbitrary and capricious, without any
4   rational basis, and without any evidence or facts to support such decisions
5   or denials, which violated Plaintiff's Equal Protection rights under the law
6   (both State and Federal).

7       201. In doing each and all of the acts alleged herein, Defendants were
8   acting under color of State law, and by their conduct herein alleged,
9   Defendant's intentionally, willfully, and without justification, did deprive
10  the Plaintiff of his rights, privileges, and immunities secured to them by
11  the United States Constitution and the laws of the United States, including
12  but not limited to his right to due process and equal protection as provided
13  by the Fourteenth Amendment, in violation of 42 U.S.C. Section 2983.

14

15                              **PRAYER FOR RELIEF**

16

17      WHEREFORE, Plaintiff, David G. Leonard, prays for judgment against
18  Defendants as follows:

19      1. For DECLARATORY RELIEF, declaring the rights of the parties and
20  declaring Defendants violated Plaintiff's Constitutional Rights, resulting in
21  Cruel and Unusual Punishment and Deliberate Indifference to Plaintiff's
22  Serious Medical Needs, that Defendants violated Plaintiff's rights under the
23  Americans with Disabilities Act (ADA), Rehabilitation Act (RA), the United
24  States Constitution (Eighth Amendment, Fourteenth Amendment), and other
25  Constitutional, Federal, and/or State Rights as determined by the Court;

26      2. For COMPENDATORY DAMAGES, pertaining to pain and suffering, as well
27  as, emotional harm specifically beginning on or  about June 18, 2009, until
28  date of transfer on or about April 5, 2010, in the amount of Two Hundred
    Eighty Two Thousand Dollars ($282,000.00), paid at a rate or One Thousand

                                    43

Dollars ($1,000.00) per day, for approximately Two Hundred Eighty Two (282) days, or another amount to be determined fair and just by a jury;

3. For COMPENSATORY DAMAGES, pertaining to loss of future earnings, future medical, future pain and suffering, loss of quality of life, emotional harm and suffering, future harm and retraining costs, in an amount to be determined as fair and just by a jury;

4. For GENERAL DAMAGES, SPECIAL DAMAGES, CONSEQUENTIAL DAMAGES, SUBSTANTIAL AND PROSPECTIVE DAMAGES, according to proof and to be determined by a jury as fair and just;

5. For PUNITIVE DAMAGES AND EXEMPLARY DAMAGES, in an amount equal to or greater than COMPENSATORY DAMAGES, or an amount to be determined as fair and just by a jury;

6. For THIRD PARTY DAMAGES, pertaining to Plaintiff's business and/or business interests, inability to conduct or carry out normal business, inability to perform necessary work and duties, loss   or decrease in revenue, any associated costs, to be determined by a jury as fair and just;

7. For reasonable attorney fees and costs of the suit, reasonable expenses, witness fees, expert fees, and all other relevant/reasonable expense, pursuant to but not limited to 42 U.S.C. Section 1988, 29 U.S.C. Section 794a(b), 42 U.S.C. 12205, and other relevant statues;

8. For any and all STATUTORY DAMAGES according to statue under State or Federal Law, according to proof;

9. Award Plaintiff COMPENSATORY DAMAGES pertaining to ADA violations/claims in the amount of Two Hundred Dollars ($200.00) per day, for and during the time of incarceration with the Sutter County Jail, approximately Two Hundred Eighty Two (282) days, for a total of Fifty Six Thousand and Four Hundred Dollars ($56,400.00), or an amount to be determined as fair and just by a jury;

44

1        10.    For an "Action at Law" for the Court to send a criminal complaint

2    to the United States Attorney's Office, against Defendants for Knowingly

3    inflicting Cruel and Unusual Punishment (Unlawful Civil Conspiracy);

4        11.    For interest upon any DAMAGES awarded; and

5        12.    For any and all other relief, (further relief), as the Court (or

6    Jury) deems just and proper.

7

8

9                                Respectfully Submitted,

10

                            David G. Leonard

11

12                               David G. Leonard
                            CDCR No. AC-9689
13                               CIM II, West-CH, 144-L
                            P.O. Box 368
14                               Chino, CA 91708

15

16

17

18

19

20

21

22

23

24

25

26

27

28