**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
C.M. Brandon Gnekow, SBN 306669
350 University Avenue, Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants JIM DENNEY (erroneously sued as JIM DENNY), Sheriff J. PAUL PARKER, Correctional Lieutenant NORMAN BIDWELL, Doctor SAMUEL SANDERS (erroneously sued as J. SAUNDERS), Nurse DORIS BROWN (erroneously sued as DORRIS BROWN), and COUNTY OF SUTTER (also sued as SUTTER COUNTY SHERIFF'S DEPARTMENT and SUTTER COUNTY JAIL)

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID G. LEONARD, and EDUARDO MARQUEZ (a minor child), | Case No: 2:12-cv-00915 TLN AC P |
| Plaintiff, | **MOTION FOR SUMMARY JUDGMENT BY DEFENDANT JIM DENNEY, PAUL PARKER, NORMAN BIDWELL, DR. SAMUEL SANDERS, DORIS BROWN AND COUNTY OF SUTTER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JIM DENNEY, Sheriff, (County of Sutter); J. PAUL PARKER, Sheriff (County of Sutter); Officer BIDWELL (Sutter County Jail Commander); John Doe (No. 1), Custody Officer (Sutter County Jail); S. SAUNDERS, Medical Doctor (Sutter County Jail); DORIS BROWN, Nurse Practitioner (Sutter County Jail); SUTTER COUNTY SHERIFF'S DEPARTMENT; SUTTER COUNTY JAIL; and COUNTY OF SUTTER, | **No hearing pursuant Local Rule 230(l)** |
| | Second Complaint filed: 09/25/14 |
| Defendants. | |
| _____ / | |

MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND
AUTHORITIES
{01747198.DOC}

## **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................................1

II.    FACTUAL BACKGROUND ...................................................................................2

       A.     Sutter County Jail's Medical Services Policies .............................................2

       B.     Plaintiff's Medical Treatment at Sutter County Jail ....................................3

              i.      June-July 2009……………………………………………………3

              ii.     August 2009…………………………………………………...…..3

              iii.    September 2009-December 2009……………………………………4

              iv.     January 2010-April 2010……………………………………………4

       C.     Plaintiff's Request Forms…………………………………………………5

       D.     Plaintiff's Letters to Lieutenant Bidwell ....................................................6

       E.     Inspection and Identification of mold at SCJ................................................6

       F.     Plaintiff's Access to Medical, Law Library, and Recreation Yard .............7

III.   SUMMARY JUDGMENT STANDARD……...........................................................7

IV.    PLAINTIFF CANNOT ESTABLISH CLAIMS AGAINST DEFENDANTS
       SAMUEL SANDERS AND DORIS BROWN..........................................................8

       A.     Fourteenth Amended Deliberate Indifference Claims for Failure to Treat
              Plaintiff's Lower Back Pain, Respiratory Conditions and Eye Infection......8

              i.      Treatment of Plaintiff's Herpes Simplex Keratitis………………………12

              ii.     Treatment of Plaintiff's Lower Back…………………………………14

              iii.    Treatement of Allergies……………………………………15

       B.     Defendants Dr. Sanders and Nurse Brown are Entitled Qualified Immunity…………16

       C.     Defendants Sanders and Brown are entitled to Summary Judgment as to Plaintiff's
              Medical Malpractice Claim…………………………………………………...19

              i.      Plaintiff's failed to properly notice Defendants pursuant to California
                      Government Code §915(a)……………………………………………19

i

ii.    Plaintiff has filed to present a triable issue of material facts regarding Plaintiff's medical treatment by Defendants Sanders and Brown…………………………….....21

V.    SUTTER COUNTY SHERIFF'S DEPARTMENT, JAIL AND SUTTER COUNTY……...23

A.    Denney, Parker, Sutter County Sheriff's Department, Sutter County Jail and Sutter County are Entitled to Summary Judgment on Plaintiff's Fourteenth Amendment Deliberate Indifference Claims for their Alleged Policy of Delaying or Denying Medical Care ...............................................................................................................24

i.    No underlying constitutional violation……………………………….....25

ii.    No evidence of a policy or custom of delaying or denying medical care…….25

iii.    No evidence that a policymaker refused to treat plaintiff or interfered with treatment……………………………………………………………………27

B.    Defendants Parker, Bidwell, Sutter County Sheriff's Department, Sutter County Jail and Sutter County are entitled to Summary Judgment for Their Alleged Violation of Plaintiff's Fourteenth Amended Due Process for Failure to Protect.......................28

C.    County Defendants and Defendants Denney, Parker and Bidwell are Entitled Qualified Immunity ...................................................................................................31

D.    Plaintiff's ADA and RA Claims Against County Defendants....................................31

i.    Elements of a title II ADA and RA claims………………………………...32

ii.    Plaintiff is not a qualified individual with a disability under the ADA and RA……………………………………………………………………33

iii.    Plaintiff was not denied access to SCJ Programs……………………………34

VI.    DEFENDANTS PARKER AND BIDWELL STATE TORT CLAIMS................................34

A.    Plaintiff's failed to Properly notice Defendants Pursuant to California Government Code § 915(a) ...........................................................................................................35

B.    Parker and Bidwell are Entitled to Summary Judgment on General Negligence Claims for Failing to Maintain the Ventilation System ...............................................35

i.    No dangerous condition existed at SCJ……………………………………37

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**
{01747198.DOC}

    ii.    The dangerous condition was not the proximate cause of the injury..............38

    iii.    Plaintiff has failed to provide evidence sufficient to support his claim that Parker or Bidwell were negligent or failed to act................................38

    iv.    SCJ had a policy in place to monitor environmental health of the facility....39

  A.    Defendants Parker is Entitled to Summary Judgment on Negligence for Their Policy of Denying or Delaying Medical Care ......................................................................40

VII.    CONCLUSION…..………………………………………………………………..41

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

{01747198.DOC}

1

2

<h1 style="text-align:center"><u>TABLE OF CONTENTS</u></h1>

3

**Supreme Court Case**

4

<u>Anderson v. Creighton</u>, 483 U.S. 635 (1987) ........................................................................ 17

5

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)................................................................... 8, 9

6

<u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986)............................................................ 26

7

<u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) ............................................................................. 9, 10

8

<u>Farmer v. Brennan</u>, 511 U.S. 825 (1994)..................................................................... passim

9

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982) ........................................................................ 16

10

<u>McMillian v. Monroe</u>, 520 U.S. 781 (1997) ........................................................................ 28

11

<u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978)................................. 25, 26, 29

12

<u>Pearson v. Callahan</u>, 555 U.S. 223 (2009) ......................................................................... 16

13

See <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985) .................................................................. 25

14

<u>St. Louis v. Praprotnik</u>, 485 U.S. 112 (1988)..................................................................... 26

15

16

**Federal Court**

17

42 U.S.C. § 12132 ............................................................................................................... 33

18

<u>Bonner v. Lewis</u>, 857 F.2d 559 (9th Cir. 1988) .................................................................. 34

19

<u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458 (9th Cir. 1980) ......................................... 10

20

<u>Castro v. Cty. of Los Angeles</u>, 833 F.3d 1060 (9th Cir. 2016)...................................... passim

21

<u>Clouthier v. County of Contra Costa</u>, 591 F.3d 1232 (9th Cir. 2010) ................................... 11

22

<u>Ctr. for Bio–Ethical Reform v. L.A. Cty. Sheriff Dep't</u>, 533 F.3d 780 (9th Cir. 2008)......................... 25

23

<u>Delia v. City of Rialto</u>, 621 F.3d 1069 (9th Cir. 2010) ........................................................ 26

24

<u>Does 1-5 v. Chandler</u>, 83 F.3d 1150 (9th Cir. 1996) ........................................................... 33

25

<u>Doherty v. Southern College of Optometry</u>, 862 F.2d 570 (6th Cir. 1988) ........................... 34

26

<u>Doty v. Cnty. of Lassen</u>, 37 F.3d 540 (9th Cir. 1994) ........................................................... 9

27

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

28

{01747198.DOC}

1    Dougherty v. City of Covina, 654 F.3d 892 (9th Cir. 2011)................................................ 26

2    Duvall v. Cty. of Kitsap, 260 F.3d 1124 (9th Cir. 2001) .................................................... 34

3    EEOC v. United Parcel Service, Inc., 306 F.3d (9th Cir.2002) ......................................... 35

4    Filarsky v. Delia, 132 S. Ct. 1657, 182 L. Ed. 2d 662 (2012) .......................................... 27

5    Fogel v. Collins, 531 F.3d 824 (9th Cir. 2008) ................................................................. 26

6    Gillette v. Delmore, 979 F.2d 1342 (9th Cir. 1992)..................................................... 26, 27

7    Hernandez v. Orange Cty., No. 1362132, at *8 (M.D. Fla. Mar. 20, 2017) ....................... 12

8    Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996)............................................................. 10

9    Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015) ................................................... 10, 11, 12

10    Lolli v. Cnty. of Orange, 351 F.3d 410 (9th Cir. 2003)........................................................ 9

11    Los Angeles Cty., Cal. v. Castro, 137 S. Ct. 831, 197 L. Ed. 2d 69 (2017) ......................... 9

12    Los Angeles Police Protective League v. Gates, 907 F.2d 879 (9th Cir. 1990) ................... 26

13    McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1992)............................................................ 10

14    Mullenix v. Luna, 136 S.Ct. 305 (2015) ........................................................................... 17

15    Ove v. Gwinn, 264 F.3d 817 (9th Cir. 2001) ..................................................................... 30

16    Pierce v. Cty. of Orange, 526 F.3d 1190 (9th Cir. 2008)................................................... 33

17    Plumeau v. School Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432 (9th Cir. 1997)................. 26

18    Rowe v. Montoya WL 703033 at 8 (E.D. Cal 2010) ..................................................... 19, 20

19    S.B. v. Cty. of San Diego, 864 F.3d 1010 (9th Cir. 2017)................................................... 16

20    Sandison v. Michigan High School Athletic Ass'n, Inc., 64 F.3d 1026 (6th Cir. 1995) ....... 33

21    Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959 (9th Cir. 1990).................................. 8, 30

22    Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987) ............................................................ 27

23    Steinle v. City & Cty. of San Francisco, 230 F. Supp. 3d 994 (N.D. Cal. 2017) ................. 41

24    Sweaney v. Ada County, Idaho, 119 F.3d 1385 (9th Cir.1997)........................................... 31

25    T.W. Electrical Serv., Inc. v. Pac. Electrical Contractors Asso., 809 F.2d 626 (9th Cir. 1987)............. 10

26    Toguchi v. Chung, 391 F.3d 1051 (9th Cir. 2004)............................................................. 10

27
28    {01747198.DOC}

v

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

Trevino v. Gates, 99 F.3d 911 (9th Cir. 1996)................................................................ 27, 28

Weinreich v. L.A. Cty. Metro. Transp. Auth., 114 F. 3d 976 (9th Cir. 1997)...................... 33

West v. Nye Cty. Det., 690 F. App'x 938 (9th Cir. 2017)............................................... passim

White v. Pauly, 137 S. Ct. 548 (2017) .................................................................................. 17

Wilhelm v. Rotman, 680 F.3d 1113 (9th Cir. 2012) ............................................................. 10

Williams v. Calderon, 2008 WL at 5 (E.D. Cal. Nov. 17, 2008).......................................... 18

WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)...................................... 10

Wong v. Regents of Univ. of California, 410 F.3d 1052 (9th Cir. 2005) .............................. 34

Wood v. Housewright, 900 F.2d 1332 (9th Cir. 1990). ........................................................ 10

Wood v. Idaho Dep't of Corr., 391 F. Supp. 2d 852 (D. Idaho 2005)............................. 18, 19

**Superior Court Case**

Bucquet v. Livingston 57 Cal. App.3d 914 (1976) ............................................................... 22

Dee v. PCS Prop. Mgmt., Inc., 174 Cal. App. 4th 390 (2009) ............................................. 39

DiCampli-Mintz v. Cty. of Santa Clara, 55 Cal. 4th 983 (2012) ......................................... 21

Flores v. Natividad Medical Center 192 Cal.App.3d 1106 (1987) ....................................... 22

Frazier, Dame, Doherty, Parrish, & Hanawalt v. Boccado, Blum, Lull, Niland, Teerlink &Bell 70 Cal.
   App.3d 331 (1977) ............................................................................................................ 22

Jones v. Ortho Pharmaceutical Corp. 163 Cal.App.3d 396 (1985)...................................... 24

Kelly v. Trunk 66 Cal.App.4th 519 (1998)........................................................................... 22

Morgenroth v. Pacific Medical Center, Inc. 54 Cal.App.3d 521 (1976)............................... 24

Munro v. Regents of the University of California 215 Cal.App.3d 977 (1989) ..................... 22

Odello Bros. v. Cty. of Monterey, 63 Cal. App. 4th 778 (1998) .......................................... 37

Osborn v. Irwin Mem. Blood Bank 5 Cal.App.4th 234 (1992) ............................................. 22

San Mateo Union High Sch. Dist. v. Cty. of San Mateo, 213 Cal. App. 4th 418 (2013) ...... 42

MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES

{01747198.DOC}

**Statutes**

29 U.S.C. § 794 ................................................................................................. 33

42 U.S.C. § 12131 ............................................................................................... 1

42 U.S.C. § 12134 ............................................................................................... 1

42 U.S.C. § 1983 ....................................................................................... passim

42 U.S.C.A. § 12102 ......................................................................................... 34

CA Gov Code § 815 ........................................................................................... 37

CA Gov Code § 820.2 ........................................................................... 41, 42, 43

CA Gov Code § 840.2 ................................................................................... 38, 40

CA Gov Code § 840.2(b) .................................................................................... 38

CA Gov Code § 840.4(a) .................................................................................... 38

CA Gov Code § 915(a) .................................................................................. 21, 36

CA Gov Code § 915(e)(1) ................................................................................... 21

CA Gov Code § 945.4 ........................................................................................ 20

CA Gov. Code § 840.2(a) ................................................................................... 40

CA Gov. Code §840.4(b) .................................................................................... 39

**CA Gov. Code §915(a)** ..................................................................................... 20

Civ. Code, 3333.1(c)(2) ..................................................................................... 22

F.R.Civ.P. 56(c) .................................................................................................. 8

F.R.Civ.P. 56(e) .................................................................................................. 8

F.R.Civ.P. Rule 56 .......................................................................................... 1, 8

**Regulations**

California Code of Regulations Title 15 § 1280 .................................. 29, 30, 37, 40

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

{01747198.DOC}

Defendants COUNTY OF SUTTER (also sued as "SUTTER COUNTY SHERIFF DEPARTMENT" and "SUTTER COUNTY JAIL"), JIM DENNEY (erroneously sued as "DENNY"), SAMUEL SANDERS (erroneously sued as "J. SAUNDERS"), PAUL PARKER, NORMAN BIDWELL and Nurse DORIS BROWN (erroneously sued as DORRIS BROWN), hereby move for summary judgment pursuant to Federal Rule of Civil Procedure ("F.R.Civ.P.") Rule 56 and submit the following memorandum of points and authorities in support thereof.

## I.

## INTRODUCTION

Plaintiff DAVID G. LEONARD ("Plaintiff") is a state prisoner, and former Sutter County Jail detainee, proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134; Section 504 of the Rehabilitation Act (RA) of 1973; and state tort claims.

This case arises out of Plaintiff's disagreement with the medical treatment he received at Sutter County Jail as a pretrial detainee from approximately June 18, 2009 to April 5, 2010. Regarding Plaintiff's medical care, Plaintiff alleges that Defendants SAMUEL SANDERS ("Dr. Sanders"), DORIS BROWN ("Nurse Brown"), JIM DENNEY ("Denney"), PAUL PARKER ("Parker"), NORMAN BIDWELL ("Bidwell"), and County Defendants COUNTY OF SUTTER, SUTTER COUNTY SHERIFF'S DEPARTMENT, and SUTTER COUNTY JAIL (Collectively "County") were deliberately indifferent to his medical needs by creating and implementing policies denying or delaying Plaintiff's medical care in violation of the Eight Amendment. Plaintiff also brings state tort claims for medical malpractice against Dr. Sanders and Nurse Brown for his medical treatment while a detainee at Sutter County Jail ("SCJ").

In addition, Plaintiff has alleged that the County, Parker, and Bidwell violated his Eighth Amendment rights by failing to properly maintain the jail ventilation system leading to mold and other hazardous materials accumulating in the vents. Plaintiff has also brought state tort claims against Parker and Bidwell for dangerous condition relating to the operation and administration of the jail and Parker's alleged implementation of policies that delay or deny medical care.

1

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

{01747198.DOC}

Finally, Plaintiff has brought claims against County Defendants for alleged violation of the Americans with Disabilities Act and the Rehabilitation Act for failing to reasonably accommodate Plaintiff's lower back and respiratory ailments, thus denying him access to SCJ programs and activities.

Following the Findings and Recommendations, Plaintiff's claims of inadequate medical care and facilities in violation of the Eighth Amendment, professional and general negligence, and claims arising out of the Americans with Disabilities Act and Rehabilitation Act were allowed to proceed. ECF 76, 26:1-16.

Defendants submit that Plaintiff cannot establish all the elements of his claims against Defendants. In addition, the undisputed material facts submitted in support of this motion by Defendants demonstrate that Plaintiff cannot establish his claims.  Defendants submit that there were written policies in place expressly providing guidelines for medical treatment of the inmate population and the maintenance and cleaning of the ventilation system at SCJ.  Moreover, the undisputed facts demonstrate that Dr. Sanders and Nurse Brown indeed evaluated and monitored Plaintiff's conditions, referred him to outside physicians, and made recommendations for treatment.  Therefore, Defendants submit that Plaintiff cannot establish his claims for deliberate indifference or negligence, both professional and general, and Defendants are entitled to summary judgment as a matter of law.

## II.

## FACTUAL BACKGROUND

### A.    Sutter County Jail's Jail Medical Services Policies

At the time of Plaintiff's incarceration, SCJ had an express written policy that defined treatment protocols for patients in the facilities. UMF 1-3. Sutter County Jail Medical Services ("JMS") are governed by Sutter County Public Health Division. UMF 1. Upon being booked, each inmate is advised of medical services and consent to a physical examination. Id. JMS also provides that inmates in custody in Sutter County Jail are provided timely access to healthcare to meet their serious medical, dental, and mental health needs as medically necessary and prescribed by law. UMF 2.

Pursuant to JMS Policy #16-519, JMS will provide outpatient clinical services to inmate that are medically required and appropriate to the health condition. UMF 3. All treatment and medication

2

recommended by private physician will be subject to review by the healthcare provider at JMS for medical necessity and appropriateness in the Jail setting. Id.

**B.     Plaintiff's Medical Treatment at Sutter County Jail**

    **i.     June-July 2009**

Plaintiff arrived at Sutter County Jail on or about June 18, 2009.  UMF 4.  Upon intake, the medical staff noted that Plaintiff suffered from the following conditions: diabetes, lower back pain (LBP), "bad" right shoulder.  During intake, Plaintiff singed a classification contract agreement stating he agreed to the classification designated by the Classification Unit. UMF 5.

Plaintiff was seen by JMS staff four times during this time period:  on 6/21/2009, 6/22/2009, 6/24/2009, and 7/15/2009. UMF 6. Plaintiff informed Nurse Brown that he had had a history of chronic LBP, asthma, and a viral infection in his right eye that begin in 2003. Id. Nurse Brown provided the appropriate course of treatment by starting Plaintiff with a prescription for Tylenol and muscle rub and then increasing to Ibuprofen when Plaintiff's LBP continued. Id. While Plaintiff requested a thicker mattress, Nurse Brown agreed to pass the request along so long as allowed by Custody.  Id.

    **ii.     August 2009**

Plaintiff was seen by JMS staff four times during this time period: on 8/12/2009, 8/13/2009, 8/14/2009, and 8/17/2009. UMF 7. On August 12, 2009 Plaintiff visited JMS complaining of blurred vision he allegedly noticed four weeks earlier. He informed Nurse Brown that he had been previously diagnosed with Herpes Simplex Keratitis ("HSK") in 2003 following a Lasik surgery and the time he experienced an outbreak was in 2005. That same day Plaintiff discussed the outbreak with Dr. Sanders and was referred to an eye specialist the next day.  Id.

On August 13, 2009, Plaintiff was seen by an outside provider, Dr. Pranav Amin, an ophthalmologist at Sutter North Medical Group. UMF 8. Plaintiff was diagnosed with stromal keratitis of the right eye and Dr. Amin discovered an "old" corneal scar. Id. Dr. Amin prescribed Plaintiff prescribed Viroptic, Pred Forte, and Xibrom topical eye drops to treat his HSK. Plaintiff's eye infection resolved within a week or two. Id. On August 17, 2009 JMS staff followed up with Dr. Amin. UMF 7. JMS was informed by Dr. Amin's office that Plaintiff should continue to use eyes drops until the

3

infection is gone, and not refill prescription. <u>Id</u>.

### iii. September 2009-December 2009

Plaintiff was seen by JMS nine times during this time frame: on 9/2/2009, 10/28/2009, 11/4/2009, 11/8/2009, 11/10/2009, 11/17/2009, 11/18/2009, 12/5/2009, and 12/18/2009 during which time Nurse Brown and Dr. Sanders prescribed and approved ever stronger medications to properly control Plaintiff's LBP. UMF 9. Plaintiff continued to complain of LBP and was subsequently removed from work duties. <u>Id</u>. Nurse Brown recommended Plaintiff move to a bottom cell, provided one was available. <u>Id</u>. In addition, Nurse Brown requested and received Plaintiff's 2007 MRI, which they reviewed with Plaintiff. <u>Id</u>. Plaintiff LBP continued, Nurse Brown prescribed stronger medications Baclofen and Ibuprofen. <u>Id</u>. Plaintiff specifically requested that JMS not prescribe him medication that might sedate him. <u>Id</u>. However, Plaintiff informed Nurse Brown that he had experienced relief in his neck, shoulder, and back pain following the Baclofen prescription, which Plaintiff continued to refill. Plaintiff also requested a MRI. <u>Id</u>.

Nurse Brown continued to monitor Plaintiff's eye infection, discussing Plaintiff's concerns and reviewing Dr. Amin's report with Plaintiff. In addition, while Plaintiff complained of dizziness, he informed Nurse Brown that Benadryl had provided some relief. <u>Id</u>.

### iv. January 2010-April 2010

Plaintiff was seem by JMS nine times during this time frame: on 1/1/2010, 1/7/2010, 1/8/2010, 1/13/2010, 1/21/2010, 2/18/2010, 3/3/2010, 3/4/2010, 3/8/2010. UMF 10. JMS continued to treat properly treat Plaintiff for his LBP with increasing the strength of pain medication to determine appropriate prescription. <u>Id</u>. However, Plaintiff requested a reduction in his Baclofen prescription from 20mg to 10mg. <u>Id</u>. Nurse Brown attempted to contact orthopedic surgeon Dr. Aisle, but had difficulty getting in touch with their office. Nurse Brown noted that Plaintiff was required to walk up and down stairs to get to medical, but Plaintiff did not appear to be in any discomfort. Plaintiff made an additional request for a MRI, which was granted. <u>Id</u>.

In March, Plaintiff experienced another HSK outbreak. UMF 11. Nurse Brown prescribed Plaintiff Viroptic, Pred Forte, and Xibrom topical eye drops and Valtrex in order to suppress the

4

1  symptoms. <u>Id</u>. The above prescription cured Plaintiff's eye infection, with Plaintiff reportedly feeling

2  "much better." Plaintiff's last visit to Nurse Brown prior to transferring Plaintiff had 20/50 vision in his

3  right eye, the same vision when he entered SCJ.

4       To better diagnose Plaintiff's LBP, Plaintiff was provided a MRI on March 12, 2010. UMF 12.

5  Dr. Tejpal Singh found that Plaintiff had a mild degenerative disk disease, no significant spinal canal or

6  neural foraminal stenosis, Grade 1 anterolistesis of L5 on S1 with bilateral pars intra-articularis defect,

7  and moderately sever bilateral neural forminal stenosis. <u>Id</u>. Dr. Singh's findings were reviewed by Dr.

8  Sanders on March 16, 2010, and Dr. Sanders discussed the findings with Plaintiff and the possibility of

9  surgical injections. <u>Id</u>. To further assist with Plaintiff's pain control, Plaintiff was referred to the

10  Feather River Surgery & Pain Management Center on March 17, 2010. <u>Id</u>.

11       On April 2, 2010 Plaintiff was seen a final time by Nurse Brown prior to transferring. UMF 11.

12  Plaintiff was prescribed Naproxen a final time by Nurse Brown for lower back pain prior to transfer. <u>Id</u>.

13  **C.    Plaintiff's Request Forms**

14       During Plaintiff's intake on June 18, 2009, Plaintiff was assigned to housing A-10. UMF 13. A

15  strip search was authorized due to violence. <u>Id</u>. Plaintiff was informed of his classification and signed a

16  contract attesting to his housing assignment. <u>Id.</u>

17       On 6/28/2009, 7/10/2009, 7/21/2009 Plaintiff requested to be moved to a different cell block.

18  UMF 14. Plaintiff made these requested these to have easier access to medical, as he would not have to

19  be shackled, wanted more space, easier access to shower, all day access to the recreation room, and

20  because there was an identity breach.  The submitted requests did not state any difficulty navigating the

21  stairs. <u>Id</u>. Plaintiff was informed that there were no rooms available and he was house appropriately for

22  his charges and classification. <u>Id</u>.

23       On July 21, 2009 Plaintiff reminded officers that he has allergies, especially to a specific type of

24  mold, but did not identify any mold in the facility. UMF 15. In addition, Plaintiff claimed that he was

25  had a doctor's recommendation, which allowed for a mattress exchange, but Plaintiff was not provided

26  a second mattress. Id. Responding the same day, officers made note of the mold allergies on Plaintiff's

27  medical chart and informed Custody of the mattress accommodation request.  <u>Id</u>

28

On August 21, 2009 Plaintiff requested a copy of Dr. Amin's notes for Plaintiff's August 13, 2009 visit to Sutter North Medical to evaluate his right eye infection. UMF 16. The same day Plaintiff was informed that Dr. Amin had not provided notes and Plaintiff was reminded that recommendation was to follow up with University California Davis Ophthalmology Department when released. Id.

**D.   Plaintiff's Letters to Lieutenant Bidwell**

On August 11, 2009 Plaintiff wrote a letter to Defendant Bidwell. UMF 17. In the letter, Plaintiff thanks Bidwell for his prompt follow-up regarding the law library repairs. Plaintiff's primary concern is his HSK infection that had become active in his right eye, causing a distortion in his vision and increased eye "pressure." Id. Plaintiff believed that if his HSK was left untreated it would result in irreversible damage and "searing" to his eye. Id. While Plaintiff did not want to file a grievance unless necessary, he claimed to have sent med slips on 7/15/2009[1], 7/30/2009, and 8/5/2009. Id. Plaintiff claimed that as of August 11, 2009, he had received no assessment or appointment regarding this medical condition, obtain his medical records, or start precautionary medications. Id.

Plaintiff also discusses his LBP. Id. Plaintiff stated that he understood that his access to medical care while an inmate is limited, such as restriction on his Hot/Cold therapy, back support, T.E.N.'s unit, and/or more aggressive medications. Id. Plaintiff believed that the only way to manage his LBP would be to arrange surgical injection of cortisone or surgical corrective procedure. Id. Plaintiff states that medical staff had previously ordered him a second mattress, but that request was denied by the custody officer. Id.

**E.   Inspection and Identification of Mold at SCJ**

On 12/29/2008, 12/23/2009, and 12/7/2010 SCJ underwent an environmental health inspection

---

[1] Progress and Doctors orders indicate that Plaintiff was seen by Doris Brown on 7/15/2009, however, there is no notation of an eye infection. UMF 6.

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

{01747198.DOC}

conducted by the Sutter County Community Services Department. UMF 18. For each inspection, inspectors found that SCJ was clean and in good repair. Id. In addition, the inspection found that policies and procedures were in place for an acceptable level of cleanliness, repair and safety throughout the facility. Id.

During intake, Plaintiff was provided a copy of the SCJ's Inmate Handbook. UMF 19. The handbook states that is the responsibility of the inmate to clean the area surrounding their bunk. Id. Plaintiff claims he observed what he believed to be black mold surrounding the ventilation duct in his cell during the last few months of his detainment at SCJ. UMF 20. Plaintiff never informed jail staff that he had identified what he believed to be "black mold." Id.

On November 23, 2010, Sutter County Jail received from the Department of Industrial Relations Division of Occupational Safety and Health regarding alleged water leaks in the jail that had caused mold growth. UMF 21. On December 2, 2010, SCJ personnel commenced a complete building inspection to idea any substance that might be identified as mold. Id. While evidence of past water intrusion was discovered, there was no mold present. Id. The inspection included use of a building plan to identify past areas of water intrusion, and visual inspection of the roof, parapet walls and flashing for any openings. Id.

**F.     Plaintiff's Access to Medical, Law Library and Recreation Yard**

Plaintiff was required to navigate stairs to access the medical cell, law library, recreation yard, the canteen, and the visitor area. UMF 22. Plaintiff estimates that he accessed the medical cell over twenty times. Id. Plaintiff estimates that he accessed the law library over ten times. Id. Plaintiff estimates that he accessed the recreation yard over fifty times. Id. Plaintiff estimates he visited the canteen once a week during his detainment at Sutter County Jail. Id. Plaintiff accessed the visitor area on a weekly basis. Id.

## III.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment must be granted where "there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment

7

as a matter of law." F.R.Civ.P. 56(c). Where the nonmoving party will bear the burden of proof regarding a particular issue at trial, the moving party can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See F.R.Civ.P. 56(e). "To show the existence of a genuine issue… [a plaintiff] must produce at least some significant probative evidence tending to support the complaint." Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990) (internal quotation and citations omitted). If the nonmoving party fails to show there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## IV.

## PLAINTIFF CANNOT ESTABLISH HIS CLAIMS AGAINST DEFENDANTS SAMUEL SANDERS AND DORIS BROWN

Plaintiff has alleged claims for violation of his Eighth Amendment in violation of 42 U.S.C. 1983 and for state tort medical malpractice against Dr. Sanders and Nurse Brown in their capacity as caregivers. In addition, Plaintiff has brought claims against Dr. Sanders and Nurse Brown for state law negligence claims for medical malpractice. Defendants submit Plaintiff cannot establish a genuine issue of material fact to support elements of his claims against Dr. Sanders or Doris Brown, and as such, summary judgment is proper.

### A.   Fourteenth Amendment Deliberate Indifference Claims for Failure to Treat Plaintiff's Lower Back Pain, Respiratory Conditions and Eye Infection

Plaintiff asserts a claim for relief pursuant to the Eighth Amendment of the United States Constitution based on allegations that Dr. Sanders and Nurse Brown were deliberately indifferent to his serious medical need. Pl.'s Second Amended Complaint ("SAC"), ECF No. 66-2, 3-25. Plaintiff alleges that Dr. Sanders and Nurse Brown were medical providers at SCJ and saw him for his various health conditions and that they failed to provide appropriate treatment for his lower back pain, asthma, and

8

{01747198.DOC}

eye infection. Id. at 8-13, 29, 33, 35-37, ¶¶ 28-34, 39-41, 45-48, 52, 57, 134, 150, 160-169.

Specifically, Plaintiff alleges that Dr. Sanders and Nurse Brown failed to obtain or review his previous medical records prior to treating him, failed to refer him to appropriate specialists, provided deficient and incompetent treatment by refusing to prescribe proper pain medication, prescribing medication without providing proper instructions for use, refused to allow plaintiff to use his medical appliances, and failed to properly examine and diagnose him. Id.

Additionally, plaintiff's alleges that Dr. Sanders and Nurse Brown were deliberately indifference to his medical needs by failing to provide a proper examination to determine what was causing or aggravating his respiratory problems and failed to provide proper treatment for his respiratory problems, including ordering appropriate housing accommodations. Id. at 33, 37, 43, ¶¶ 150, 169, 193.

As a pretrial detainee, Plaintiff's claims are more properly analyzed under the Fourteenth Amendment's deliberate indifference. Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067–68 (9th Cir. 2016), cert. denied sub nom. Los Angeles Cty., Cal. v. Castro, 137 S. Ct. 831, 197 L. Ed. 2d 69 (2017). Under a Fourteenth Amendment, the mere lack of due care by a state official" does not "'deprive' an individual of life, liberty, or property. Id. at 1071. Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer v. Brennan, 511 U.S. 825, 835 (1994). Under the deliberate indifference standard, a person may be found liable for denying adequate medical care if he "knows of and disregards an excessive risk to inmate health and safety." Id. at 837; see also Estelle v. Gamble, 429 U.S. 97, 106 (1976); Lolli v. Cnty. of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Doty v. Cnty. of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference.'" McGuckin v. Smith, 974 F.2d 1050, 1057 (9th Cir. 1992) (quoting Farmer, 511 U.S. at 837) overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

In order to defeat the motion for summary judgment, Plaintiff must "produce at least some

9

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

{01747198.DOC}

significant probable evidence tending to [show]," <u>T.W. Electrical Serv., Inc. v. Pac. Electrical Contractors Asso.</u>, 809 F.2d 626, 630 (9th Cir. 1987), that defendants' actions, or failures to act, were "in conscious disregard of an excessive risk to plaintiff's health," <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (citing <u>Farmer</u>, 511 U.S. at 837).

In applying the deliberate indifference standard to medical personnel, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105-06.)  A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of deliberate indifference to serious medical needs.  See <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990). A mere difference of opinion between medical professionals does not amount to deliberate indifference.  See <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th Cir. 2004).  If a prisoner seeks to establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health."  See <u>Jackson</u>, 90 F.3d at 332; see also <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1123 (9th Cir. 2012).

In recent years, the United States Supreme Court has replaced the traditionally subjective standard with an objective standard in evaluating excessive force claims.  <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2473 (2015). However, the United States Supreme Court's has repeatedly and expressly rejected adding an objective test be used for deliberate indifference.  <u>Farmer</u> 511 U.S. at 837 ("We reject petitioner's invitation to adopt an objective test for deliberate indifference.")  Despite this, the Ninth Circuit extended such an objective standard to failure-to-protect claims.  <u>Castro</u>, 833 F.3d at 1060.

While the court in <u>Castro</u> discussed what deliberate indifference standard might apply, that "standard" ultimately was not necessary or material to its decision.  In <u>Castro</u>, the Ninth Circuit's holding applying an objective standard was not necessary, as both deputies subjectively "understood

10

that placing Castro in a cell with a combative inmate, when the cell had no audio or video surveillance and only occasional monitoring, could lead to serious violence against Castro." Id. 833 F.3d at 1067. In other words, in finding the deputies liable, Castro based that finding on the officers' subjective understanding of danger posed to the plaintiff.

In addition, Castro only narrowly overruled the Ninth Circuit's previous holding in Clouthier v. County of Contra Costa, 591 F.3d 1232, 1242-1243 (9th Cir. 2010), where the Court of Appeals rejected the plaintiffs' contention that pretrial detainees are entitled to greater protection under the Fourteenth Amendment than under the Eighth Amendment. Specifically, in light of the Supreme Court's opinion in Kingsley, Castro stated: "We therefore overrule Clouthier to the extent that it identified a single deliberate indifference standard for all § 1983 claims and to the extent that it required a plaintiff to prove an individual defendant's subjective intent to punish in the context of a pretrial detainee's failure-to-protect claim." 833 F.3d at 1070.  This is because an "intent to punish" is more akin to the higher Eight Amendment Cruel and Unusual Punishment state of mind, as opposed to a lower Fourteenth Amendment "reckless" state of mind.

As stated above, United States Supreme Court has repeatedly and expressly rejected the notion that an objective test be used for deliberate indifference.  Farmer, 511 U.S. at 837.  Instead, courts have required a state of mind more akin to "recklessness." Specifically, jail or prison officials needed to be both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they also had to draw the inference.  Id.  Kingsley did not change the Farmer line of cases.

As noted in Castro, even an "objective" deliberate indifference standard does not eliminate any and all concern for the defendant's subjective knowledge. Otherwise, the indifference could not, by definition, be "deliberate" in terms of assessing a risk.  Specifically, Castro rejected the notion that the Fourteenth Amendment allowed a mere negligence standard to be applied. Id. 833 F.3d at 1071.

Therefore, to be liable under § 1983, the conduct by defendants would have to amount to at least "reckless disregard." Id.  Indeed, Castro specifically noted that the officers "knew" Castro was "too intoxicated to care for himself," and "knew" that the "felony arrestee was enraged and combative." Id. 833 F.3d at 1073. Indeed, the jury in Castro "found that the officers knew of the substantial risk of

11

serious harm to Castro, which necessarily implies that the jury found that a reasonable officer would have appreciated the risk." Id. at 1072. Moreover, the jury expressly "found that the risk was so obvious" that it awarded punitive damages against the officers. Id. Such is not the situation here.

Courts post-Kingsley, including the Eleventh Circuit Court of Appeals, have continued to utilize the deliberate indifference standard in deciding claims of pretrial detainees challenging medical treatment and other conditions and that even if the objective standard was applicable, it would not apply to events that arose before the Supreme Counts' holding. Hernandez v. Orange Cty., No. 616CV1017ORL28TBS, 2017 WL 1362132, at *8 (M.D. Fla. Mar. 20, 2017). Recently, the Ninth Circuit has espoused just such an interpretation of Castro by affirming a summary judgment motion of a medical indifference claim. West v. Nye Cty. Det., 690 F. App'x 938, 940 (9th Cir. 2017). The Ninth Circuit relied on their holding in Farmer and found that the plaintiff failed to raise a genuine dispute of material fact as to whether defendants "knew of and disregarded an excessive risk to" plaintiff's health and safety. Ibid.

In this case, Plaintiff cannot establish genuine disputes of material fact as to whether Defendants Dr. Sanders and Nurse Brown knew of and disregarded an excessive risk to Plaintiff's health and safety. As more fully argued below, the undisputed facts show that Plaintiff's complained-of conditions, LBP, HSK, and allergies were evaluated and monitored while as SCJ. See UMF 4-12. Plaintiff was regularly examined by medical staff, including Defendants Dr. Sanders and Nurse Brown. In addition, Dr. Sanders relied on his medical judgment to determine that Plaintiff's care was appropriate. Nothing in the record suggests that Defendants fell below the standard of care in treatment, much less a substantial indifference to his medical needs. At best, Plaintiff has only proffered a difference of medical opinion regarding his suggested treatment options of his eye infection, lower back pain, and allergies.

### i.   Treatment of Plaintiff's Herpes Simplex Keratitis

Here, Plaintiff has failed to provide any evidence of how Defendants Dr. Sanders and Nurse Brown knew of and disregarded an excessive risk to the inmate's health and safety in regards to his HSK. Instead, the evidence is clear that they treated inmate per the recommendations of the

12

{01747198.DOC}

1  Ophthalmologist Dr. Amin.

2          By Plaintiff's own admission, he was taken to a specialist for his eye care and treated for his

3  HSK. While Plaintiff informed Nurse Brown of his history of HSK, it had not been active at the time he

4  was detained in SCJ. Instead, Dr. Sanders and Nurse Brown were not informed that Plaintiff was

5  experiencing issues with his eyes until August 12, 2009. When Plaintiff finally visited the cell,

6  Defendants Dr. Sanders and Nurse Brown responded immediately by sending Plaintiff to

7  Ophthalmologist Dr. Amin the next day. This response cannot reasonably be characterized as a delay in

8  medical care or treatment of his eye.

9          As discussed above, Dr. Amin noted Plaintiff's vision in his right eye was 100/20 and that he

10  had an "old" corneal scar. Dr. Amin then prescribed Plaintiff medicated eye drops. In following Dr.

11  Amin's recommendations, Defendants Dr. Sanders and Nurse Brown followed properly continued to

12  provide Plaintiff the medicated drops until complete. JMS medical staff followed up with Dr. Amin's

13  office several days later, and were instructed by Dr. Amin's office to continue eye drops until infection

14  was gone and not refill the prescription. When Plaintiff again complained of an activated virus,

15  Defendants properly provided him antiviral medication in line with his previous treatment immediately.

16          Dr. Kersten, a professor of Ophthalmology at University of California San Francisco reviewed

17  SCJ's treatment of Plaintiff's HSK. Declaration of Robert Kersten ("Kersten Dec."), ¶¶1-3.  It is his

18  opinion that the treatment of Plaintiff's herpes simplex keratitis by Dr. Sanders and Nurse Brown met

19  the applicable standard of care during his detainment at Sutter County Jail.  Id at ¶20. Further, he

20  opined that Herpes Simplex Keratitis is a lifelong problem and treatment is based on the frequency of

21  episodes a patient experiences. Id. Based on the information Plaintiff provided to Dr. Sanders and

22  Nurse Brown, their decision to rely on the prescription of Dr. Amin and treat the second outbreak met

23  the applicable standard of care.  Id.  In addition, even if there had been a four week period from the

24  time when Plaintiff first believed he was experiencing a eye infection to being seen by Dr. Amin, it was

25  inconsequential. Id. at ¶18.

26          Nothing in the record and evidence supports Plaintiff's contention that the course of treatment

27  was medically unacceptable. Both Dr. Sanders and Nurse Brown followed the recommendations of an

13

28

outside specialist for their treatment. That he received a different treatment before or after is simply a difference of opinion and does not support his claim.

In addition, Plaintiff's fears that there existed a substantial risk to his of serious harm to his eye are baseless. The "corneal scar" identified by Dr. Amin was old. This scar had not relation to his outbreak during his time at SCJ. Even then, Dr. Sanders and Nurse Brown responded near immediately by referring Plaintiff to outside care.

Therefore, having neither provided that the treatment was medically unacceptable nor that there existed a substantial risk of serious harm, there exists no evidence to support Plaintiff's Fourteenth Amendment claim of deliberate indifference for the treatment of his HSK by Dr. Sanders and Nurse Brown. As such Plaintiff has failed to produce any evidence tending to show that Dr. Sanders or Nurse Brown failure to act was in a conscious disregard of an excessive risk to Plaintiff's health.

### ii.       Treatment of Plaintiff's Lower Back Pain

Likewise, Plaintiff has failed to present any evidence to support his contention that Dr. Sanders or Nurse Brown were deliberately indifferent as to his medical care for his lower back pain. Dr. Sanders regularly reviewed and monitored Plaintiff's medical record, approving pain medication to alleviate Plaintiff's lower back pain. UMF 4-12. Plaintiff was prescribed a litany of lower back pain medication, with Plaintiff informing medical personnel that he received some relief, especially with the Baclofen. UMF 9. The undisputed material facts show that Nurse Brown also obtained copies of Plaintiff's 2007 MRI, despite Plaintiff's allegations to the contrary.  Id. In addition, Plaintiff even requested reducing the number of Baclofen. UMF 10. Plaintiff also requested on to be provided certain medications to assist in his with his lower back pain. Id. During Plaintiff's final medical examination by Dr. Sanders before he was transferred, Dr. Sanders recommended further examination by an orthopedic surgeon or a neural surgeon. In addition, Plaintiff was provided a MRI and sent to a pain management center during his detainment at SCJ. UMF 12.

Plaintiff has only provided a statement that he preferred treatment involving cortisone injections and his T.E.N.S unit.  Plaintiff does not qualify as a medical expert, and his opinion that those preferred courses of treatment is unsupported by any evidence.  Plaintiff has failed to provide any evidence

14

outside his complaint that his treatment was medically unacceptable under the circumstances. In addition, there was no substantial risk to Plaintiff's health as he reported receiving some relief from the treatment. Even then, Plaintiff was recommended to receive a MRI and possible cortisone injections before his transfer to the state facility.  As such, Plaintiff has failed to state a claim that that Defendants Dr. Sanders' and Nurse Brown's actions, or failures to act, were in conscious disregard of an excessive risk to Plaintiff's health.   Therefore, summary judgment on this claim is proper.

   **iii**  **Treatment of Allergies**

  In similar fashion, Plaintiff's allergies, asthma, and vertigo were treated by Defendant's Dr. Sanders and Nurse Brown regularly. UMF 4-12. In addition, Plaintiff never complained of or informed JMS that there was mold in SCJ or that mold may be the cause of his symptoms. When Plaintiff was seen for asthma, he was provided an inhaler. When Plaintiff was seen for allergies, he was provided allergy medication. Specifically regarding Plaintiff's vertigo, Plaintiff's complaints were isolated to under one month during his entire stay at SCJ. Plaintiff again makes the lay determination that his vertigo was related to his allergies. Again, Plaintiff has failed to state a claim that that Defendants Dr. Sanders' and Nurse Brown's actions, or failures to act, were in conscious disregard of an excessive risk to Plaintiff's health.

  Even in Plaintiff had identified mold, his symptomology, which he already claims were caused by his mold allergies, would have required the same treatment. Mold would not have been a factor, as Plaintiff experienced dizziness, vertigo, asthma, and allergies, and was properly treated for dizziness, vertigo, asthma, and allergies.

  Given the above, Plaintiff has failed to produce any significant probative evidence tending to show that Dr. Sanders' and Nurse Brown's actions, or failures to act, were in conscious disregard of an excessive risk to the Plaintiff's health. It is apparent that neither Dr. Sanders nor Nurse Brown had subjective knowledge of a serious risk to Plaintiff health, as Plaintiff never informed them of alleged mold at any time during his detainment nor his active eye infection until August 12, 2009. When they learned of his LBP, HSK, or allergies, they appropriately treated those conditions. Under any standard, Castro included, the motion for summary judgment as to Plaintiff's claim of deliberate indifference of

15

his medical care as to Dr. Sanders or Nurse Brown should be granted.

**B.      Defendants Dr. Sanders and Nurse Brown are Entitled Qualified Immunity**

Even Plaintiff's treatment of his HSK, LBP, and allergies could be found to be deliberately indifferent, summary judgment is still proper as Defendants are entitled to qualified immunity. The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

To determine whether qualified immunity applies in a given case, the court analyzes: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation.  See S.B. v. Cty. of San Diego, 864 F.3d 1010, 1013–17 (9th Cir. 2017).  These two prongs of the analysis need not be considered in any particular order and both prongs must be satisfied for a plaintiff to overcome a qualified immunity defense.  See S.B., 864 F.3d at 1013–17.

The Supreme Court has held that to determine whether a particular right that the official has violated was clearly established at the time of the violation, it is not required that a case be directly "on point," however, "existing precedent must have placed the statutory or constitutional question beyond debate."   White v. Pauly, 137 S. Ct. 548, 551 (2017) (citing Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)). Further, immunity protects all but the plainly incompetent or those who knowingly violate the law and that clearly established law should not be defined at a high level of generality.  Id. at 551-552. "[T]he clearly established law must be 'particularized' to the facts of the case."   Id. at 552 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

As was previously discussed, Dr. Sanders and Nurse Brown did not violate Plaintiff's Fourteenth Amendment rights. §IV.A., supra. Even assuming that Dr. Sanders and Nurse Brown's treatment of Plaintiff's HSK, LBP, and allergies constituted a violation of Plaintiff's rights, those rights were not clearly established at the time of the Plaintiff's detainment as SCJ. First, Dr. Sanders and Nurse Brown should be afforded qualified immunity to the extent that ruling by this court takes in to

16

account the Ninth Circuit's ruling in <u>Castro</u>. That standard did not exist at the time of Plaintiff detainment at SCJ, and thus impossible for them to be on notice their conduct would violate said standard thereunder. Second, as discussed below, there was no case law that would have put them put Dr. Sanders and Nurse Brown on notice that their actions violated Plaintiff's constitutional rights. Instead, the case law below would have provided a measure of confidence in Dr. Sanders and Nurse Brown's performance of the medical care provided to Plaintiff.

Specifically as to Plaintiff's LBP, there is no existing precedent that placed the statutory or constitutional question beyond debate at the time of Plaintiff's detainment at SCJ and found that a defendant was deliberately indifferent to the medical needs of a prisoner where a doctor or nurse practitioner progressively increased pain control medication for lower back pain, assessed the pain control measures after discussion with the patient, and denied Plaintiff surgical injections or a T.E.N.S. unit.

In a case before the Eastern District a year before Plaintiff's detainment at SCJ, the court found that under similar facts to this case that at prison doctor had not been deliberate indifferent to a prisoners medical needs in the treatment of his lower back pain. <u>Williams v. Calderon</u>, No. 1:03CV5389LJODLBPC, 2008 WL 4937004, at *5 (E.D. Cal. Nov. 17, 2008). In that case, the inmate was seen by the doctor for lower back pain. The doctor had diagnosed lower back strain/pain and ordered Tylenol. The inmate did not complaint of any difficulty urinated or exhibit sign of atrophy and that there was no signs of a herniated disc. The doctor further claim that there was indication for further diagnostic testing or stronger medication.

However, despite the diagnosis, the inmate was transported to the hospital forty-five days later and was diagnosed with a L5 disc protrusion with nerve entrapment. <u>Id</u>. The inmate complained that the doctor's failure to treat his condition resulted in further injury and prolonged pain. The Eastern District found that the inmate had only provided his own lay opinion and had not submitted admissible evidence that the doctor's course of treatment caused the inmate further injury or was medically unacceptable. <u>Id</u>. Instead, it was undisputed that the doctor treated the inmate, and that a mere difference of opinion between prison-patient and prison medical authority regarding treatment does not

17

{01747198.DOC}

give rise to a 1983 claim. Id. While the court noted that the case had not been "optimal," there was nothing to demonstrate that the doctor ignored recommendations of other health care providers or failed to respond to the inmate's condition, and the doctor was entitle dot summary adjudication.

Similarly, there was no existing precedent that placed the statutory or constitutional question beyond debate at the time of Plaintiff's detainment at SCJ that the treatment of an eye infection coupled with the referral to an ophthalmologist was considered deliberately indifferent. Prior to Plaintiff's detainment at SCJ, the District Court of Idaho did not find that a doctor was not deliberate indifference where the doctor treated an inmates Iritis with different eye drops and referred him to an ophthalmologist. Wood v. Idaho Dep't of Corr., 391 F. Supp. 2d 852, 863 (D. Idaho 2005). In that case, the inmate claimed that his Iritis required prescription sunglasses. However the doctor, after a review of the medical records, did not believe that the inmate need sunglasses and instead prescribed different eye drops and referred the inmate to an ophthalmologist. The court found that this amounted to a difference of opinion and that the doctor provided treatment he deemed appropriate which could not be regarded as deliberate indifference. Id. The court did not find persuasive that the doctor did not provide a full eye examination, because as a prisoner, the inmate was entitled to only one exam every two years, and he had already had that the exam, and the doctor did not observe anything in his examination that the doctor believed that a full eye examination was medically necessary at the time. Id. at 864. The court did find persuasive that the inmate was receiving treatment for his iritis and that he was referred to an ophthalmologist. Even though there was a time period between when the inmate complained of severe eye pain and when he was scheduled to visit and it the care during provided by medical staff was not the care the inmate desired, the court found that this did not constitute deliberate indifference or that the delay caused any harm as the inmate failed to provide evidence to a causal link to the harm. Id. Therefore, the inmate failed to show that the doctor was deliberately indifferent to the inmate's eye condition and grated the motion for summary judgment. Id.

Finally, there was no existing precedent that placed the statutory or constitutional question beyond debate at the time of Plaintiff's detainment at SCJ that the treatment of Plaintiff's allergy symptoms with Benadryl would constitute deliberate indifference or that the symptoms constituted a

18

{01747198.DOC}

serious medical need.  In <u>Rowe v. Montoya</u> the Eastern District of California found that inmate that had watery eyes, breaking out, itching, runny nose, sneezing, and stuffy nose and difficulty breezing failed to produce evidence that these symptoms were not routine and required medical treatment. No. 1:07-CV-272-CKJ, 2010 WL 703033, at *8 (E.D. Cal. Feb. 25, 2010).  In addition, the court found that the inmate failed to provide evidence that the doctor knew of any particular medical issues that would cause the inmates allergies to be any different than those regularly experienced by the average person. <u>Id</u>. Finally, the court found that the inmate failed to establish that he suffered any injury as a result of Montoya's actions as opposed to the normal symptoms he experienced as a result of his allergies.  <u>Id.</u>

Therefore, the particular rights that Dr. Sanders and Nurse Brown allegedly violated were not clearly established at the time of Plaintiff's detainment at SCJ. Instead, these courts' decisions only reaffirm that similar medical treatment to the medical treatment provided Plaintiff would not be considered deliberately indifferent.  Having no precedent that placed the statutory or constitutional question beyond debate, Dr. Sanders and Nurse Brown should be afforded qualified immunity as to Plaintiff's deliberate indifference claims, and therefore, should be entitled to summary judgment or in the alternative, summary adjudication.

**C.    Defendants Sanders and Brown are entitled to Summary Judgment as to Plaintiff's State Medical Malpractice Claims**

Plaintiff also asserts claims for medical malpractice against Dr. Sander and Nurse Brown. ECF No. 66-2 at 34-38, ¶¶ 156-176. He alleges that they did not properly treat his lower back pain, eye infection, and respiratory conditions when they failed to evaluate his condition, obtain his medical history, make appropriate referrals to specialists, conduct diagnostic testing, and properly prescribe medications. <u>Id</u>. at 8-13, 34-38, ¶¶ 28-58, 156-176.  Plaintiff alleges that the deficient treatment he received resulted in aggravation of his conditions and long-term injury.  However, Plaintiff has failed properly comply with the a Government Claim Act and to provide evidence that Dr. Sanders and Nurse Brown's medical care for Plaintiff fell below the applicable standard of care.

**i.    Plaintiff's failed to properly notice Defendants pursuant to California Government Code §915(a)**

On  August  26,  2016,  Defendants  counsel  received  Plaintiff's  supplemental  requested

19

{01747198.DOC}

information, "Notice of Claim Letters." Whitefleet Dec., ¶3.  Plaintiff claims he sent a series of letters on September 1, 2010 and again on December 26, 2011. The letters are independently addressed to "J.Suanders," "Dorris Brown," and "Sutter County Sheriff" and "Sutter Counsel."  Id. However, these letters fail to comply with the California Claims Act and do not properly put the Defendants on notice.

California Government Code section 945.4 states in part that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is requires to be presented… until a written claim therefor has been presented to the public entity and has been acted upon… or has been rejected."  In addition section 915(a) provides that a claim shall be presented to a local public entity by either of the following means "(1) Delivering it to the clerk, secretary or auditor thereof" or "(2) Mailing it to the clerk, secretary, auditor, or to the governing body at its principal office." DiCampli-Mintz v. Cty. of Santa Clara, 55 Cal. 4th 983, 990 (2012).  The California Supreme Court in DiCampli-Mintz found that section 915(e)(1) clearly and narrowly set forth how the actual receipt may meet the presentation requirement if the claim was "actually received by the clerk, secretary, auditor or board of the local public entity."   Id. Failure to timely present a claim that comports section 915 to a public entity bars a plaintiff from filing a lawsuit against that entity.  Id. at 990.

In DiCampli-Mintz, a patient's attorney prepared a letter notifying the defendants of their intent to sue them for negligence. The attorney personally delivered the letter to an employee of the medical staffing office in the hospital's administration building, but did not deliver a copy to the county clerk or auditor or the clerk of the county board of supervisors. On appeal before the California Supreme Court, the court affirmed the trials granting of a motion for summary judgment because the patients claim was never presented to or received by a statutorily designated recipient as required by section 915. The Supreme Court found that the plain language of section 915 required delivery of the claim to one of the persons designated in the statute and rejected "substantial compliance" doctrine. Id. at 992.

Similar to the notice presented in DiCampli-Mintz, Plaintiff did not deliver or mail the letters to the clerk, secretary or auditor, as required by 915(a).  Plaintiff has failed to present evidence that the clerk, secretary, auditor or board actually received the claim.  Therefore, Plaintiff has failed to comply

20

with the specific requires set forth in section 915(a) and section 915(e)(1) and is barred from filing a lawsuit against Defendants for state law tort claims.

    **ii.**    **Plaintiff has failed to present a triable issue of material facts regarding Plaintiff's medical treatment by Defendants Sanders and Brown**

    Plaintiff failed to raise a triable issue of material fact as to whether Defendants Dr. Sanders and Nurse Brown committed medical malpractice in the medical care they provided to Plaintiff during his stay at SCJ.  Professional negligence of a health care provider is "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."  Civ. Code, 3333.1(c)(2). The conduct underlying a professional medical negligence action must have involved the health care provider acting as a health care provider. Flores v. Natividad Medical Center 192 Cal.App.3d 1106, 1117 (1987).  In a motion for summary judgment in a professional negligence action, the element of standard of care must be proven by expert medical testimony unless the question is within the common experience of a lay juror.  Kelly v. Trunk 66 Cal.App.4th 519, 523 (1998).  "When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting evidence." Munro v. Regents of the University of California 215 Cal.App.3d 977, 984 85 (1989).

    In addition, an expert declaration may not be contradicted by the testimony of non-expert witnesses.  Osborn v. Irwin Mem. Blood Bank 5 Cal.App.4th 234, 273 (1992).  The plaintiff must establish duty, standard of care, breach of that standard, as well as causation and damages.  Bucquet v. Livingston 57 Cal. App.3d 914, 920-921 (1976).  Therefore, in actions based on medical malpractice, expert testimony is required to prove the elements of the claim.

    If a defendant's declaration in support of a motion for summary judgment conclusively demonstrates an absence of an essential element of a plaintiff's case and the plaintiff's expert declarations fail to raise a triable issue of fact as to the existence of that element, defendant is entitled to

21

1  summary judgment, and no amount of factual conflicts upon other aspects of the case will affect this

2  result.  Frazier, Dame, Doherty, Parrish, & Hanawalt v. Boccado, Blum, Lull, Niland, Teerlink &Bell

3  70 Cal. App.3d 331, 338-339 (1977).

4       As the declaration of Robert Kersten, M.D. attests, the care and treatment provided by SCJ

5  Medical Staff for plaintiffs Herpes Simplex Keratitis at all times was in accord with the applicable

6  standard of care. Kersten Dec., ¶20. Dr. Kersten is qualified to provide an opinion as to the applicable

7  standard of care for treatment of HSK.  Kersten Dec., ¶1-2. Dr. Kersten is a licensed Ophthalmologist

8  with forty years of substantial experience in the practice of ophthalmology, including providing care

9  and treatment to patients with Herpes Simplex Keratitis. Id. Id. As such, Dr. Kersten is familiar with

10  the applicable standard of care for the provision of care and treatment to patients experiencing Herpes

11  Simplex Keratitis, and is able to render an opinion as to Defendants Dr. Sanders, Nurse Browns, and

12  JMS staff provision of care to Plaintiff. Kersten Dec., ¶ 1-2, 18-20.

13       Dr. Kersten has reviewed Plaintiff's medical records and his review of these records provided

14  him with a sufficient factual basis to determine whether SCJ's medical staff complied with the

15  applicable standard of care with regard to the care and treatment of Plaintiff's Herpes Simplex

16  Keratitis.  Id.; Kersten Dec., ¶18-20.

17       Likewise, SCJ's medical staff's treatment of Plaintiff's LBP and allergies was within the

18  applicable standard of care. Sanders Dec., ¶ 40. Dr. Sanders is qualified to provide an opinion as to the

19  applicable standard of care for treatment of Plaintiff's LBP and allergies. Dr. Sanders is a physician

20  with over forty years of substantial experience in the practice of general medicine including providing

21  care and treatment to patients with lower back pain and allergies.  Id. at ¶1. Dr. Sanders is also familiar

22  with working in jail medical facilities and with medical staff in providing care and treatment of

23  detainees and inmates with lower back pain and allergies, and is able to render an opinion as to the

24  provision of care Plaintiff received during his detainment at SCJ.  Id. at ¶2.

25       Dr. Sanders has reviewed Plaintiff's medical records and his review of these records provided

26  him with sufficient factual basis to determine whether JMS complied with the applicable standard of

27  care with regard to the care and treatment of Plaintiff's lower back pain and allergies.  Id. at ¶¶38, 40.

28

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

Nurse Brown, after reviewing the Plaintiffs medical record, also found that, as a Nurse Practitioner, that the nursing staff and treatment that Plaintiff received during his detainment at SCJ, met the applicable standard of care with regard to the care and treatment of Plaintiff's lower back pain and allergies. Id. at ¶¶1-3, 31.

Next, Plaintiff must show that defendants conduct was the cause of the injury listed in the Complaint. California Civil Jury Instructions (CACI) 430. The standard of proof of proximate cause in a medical malpractice action requires that plaintiffs prove that the defendant's negligence, in probability, proximately caused the injury. Jones v. Ortho Pharmaceutical Corp. 163 Cal.App.3d 396 (1985); Morgenroth v. Pacific Medical Center, Inc. 54 Cal.App.3d 521 (1976).

Based upon Dr. Kersten's, Dr. Sanders', and Nurse Brown's review of the Plaintiff's medical records, and their education, training, qualifications, and experience, and in light of the relevant facts known to them, it is their opinion that Plaintiff's treatment he received while detained at SCJ did not cause or contribute to any alleged injuries, if any, the Plaintiff has claimed.

Defendants Dr. Sanders and Nurse Brown met the applicable standard of care. Plaintiff had numerous preexisting conditions when he was detained as SCJ. During his detainment, Plaintiff was provided appropriate care and treatment. Plaintiff's condition did not improve due to her underlying chronic lower back pain, incurable HSK, and allergies. As such, Defendants did not cause Plaintiff's alleged injuries. Thus, this Motion for Summary Judgment must be granted.

In addition, based on the foregoing, there exists no genuine issue as to any material fact that Dr. Sanders and Nurse Brown were negligent in their treatment of Plaintiff. Plaintiff's action for medical negligence must fail because Defendants Dr. Sanders and Nurse Brown met the applicable standard of care in their treatment of Plaintiff. Therefore, summary judgment is also proper as to Plaintiff's medical malpractice claims against Dr. Sanders and Nurse Brown.

## V.

## SUTTER COUNTY SHERIFF'S DEPARTMENT, JAIL AND SUTTER COUNTY

In addition to Defendants Dr. Sanders and Nurse Brown, Plaintiff has alleged Eighth Amendment violations against County Defendants and Defendants Denney, Parker and Bidwell. As

23

stated above, Plaintiff's claims, as a pre-trail detainee, are more appropriately analyzed under the Fourteenth Amendment due process clause. As such, Plaintiff has failed to provide a triable issue of material fact as to any claims involving alleged violations of his Fourteenth Amendment by County Defendants and Defendants Denney, Parker, or Bidwell.

**A.      Denney, Parker, Sutter County Sheriff's department, Sutter County Jail and Sutter County are Entitled to Summary Judgment on Plaintiff's Fourteenth Amendment Deliberate Indifference Claims for their Alleged Policy of Delaying or Denying Medical Care**

Plaintiff alleges his complaint that Defendants Denney and Parker, as the former and current sheriffs of Sutter County, liable as supervisors for the creation and perpetuation of a policy or practice that encouraged delaying and denying necessary medical care until an inmate was transferred to the custody of the California Department of Corrections and Rehabilitation in order to cut costs associated with medical care. ECF No. 66-2 at 26, 31-32, ¶¶ 122, 145, 147. Plaintiff claimed that these policies resulted in the denial of necessary medical care, such as diagnostic testing and referrals to specialists, and increased pain and his medical conditions worsening. Id. at 3-7, 10-11, ¶¶ 5, 9-10, 17-19, 22, 26, 43, 49. In addition, due to Defendant's Denney and Parker's positions as decision makers, plaintiff's allegations also brought claims against the County Defendants for deliberate indifference to his serious medical needs under Monell.

As an introductory matter, Defendant's Denney and Parker are only sued in their official capacities as policy makers. Therefore claims against them are claims against the County Defendants. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); Ctr. for Bio–Ethical Reform v. L.A. Cty. Sheriff Dep't, 533 F.3d 780, 786 (9th Cir. 2008) (holding that sheriff was a "redundant defendant" in lawsuit against county and county sheriff in his official capacity).

Regardless, Plaintiff has failed to raise a triable dispute as to whether Denney, Parker, and County Defendants had in place policies or customs delaying or denying medical treatment to pretrial detainees.  West v. Nye Cty. Det., 690 F. App'x 938, 940 (9th Cir. 2017); See Monell v. Department of

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

{01747198.DOC}

Social Services, 436 U.S. 658 (1978).

Municipalities and other local government units are "persons" subject to liability under § 1983. Monell, 436 U.S. at 690. A municipality, however, cannot be held liable solely because it employs a tortfeasor under a theory of respondent superior. Id. at 691. Instead, the municipality itself must cause the constitutional deprivation. Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992). Thus, to prevail against a municipality under § 1983, a plaintiff must establish that: (1) he was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate in difference to his constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. See Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quoting Plumeau v. School Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)).

### i. No underlying constitutional violation

First, Defendants are entitled to summary judgment on the Monell claim because Plaintiff cannot establish an underlying constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam) (requiring a plaintiff to plead and prove that an actual constitutional injury exists as a prerequisite to engaging in a Monell analysis against a public entity); see also discussion §IV.A., supra. As discussed above, Plaintiff has failed to raise a genuine issue of material fact that Defendants were deliberate indifferent in Plaintiff's medical care.

### ii. No evidence of a policy or custom of delaying or denying medical care

Assuming arguendo Plaintiff could establish an underlying constitutional violation, to impose liability on officials or the municipality, the claimed constitutional violation must be the result of a municipal policy or custom. Monell, 436 U.S. at 694. A "policy" is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990).

25

A policy or custom may be shown in one of three ways: (1) an express policy; (2) a longstanding practice or custom; or (3) action by an official with final policymaking authority. <u>Delia v. City of Rialto</u>, 621 F.3d 1069, 1081-82 (9th Cir. 2010), reversed on other grounds by <u>Filarsky v. Delia</u>, 132 S. Ct. 1657, 182 L. Ed. 2d 662 (2012); see also <u>Gillette</u>, 979 F.2d at 1346-47.

First, any claim by Plaintiff that his requests to be treated for his eye infection, lower back pain, or respiratory ailments were denied based on the alleged blanket policy at Sutter County Jail is belied by the undisputed fact that SCJ and JMS has an express, written policy allowing for inmates to see private physicians. UMF 1-3. JMS #16-519 specifically allows access to private physicians. <u>Id</u>. The policy states that "inmates have the right to request to see a private physician or dentist" and that such arrangement "are subject to financial and security concerns." <u>Id</u>. It is further undisputed that Plaintiff was considered and treated according to this policy when he was referred to Dr. Amin pursuant to this policy. UMF 7-8. By Plaintiff's own admission, he was referred to outside care, and the recommended care continued. Id. Plaintiff was also referred out for a MRI which was read by Dr. Tejpal Singh. UMF 12. Both these occurred during his stay at SCJ. Plaintiff has failed to provide any evidence that there exists a policy that delays medical care until transfer to California Department of Corrections and Rehabilitation.

Second, there is no evidence that Plaintiff was denied access to a private physician based on some unwritten, longstanding policy of custom. A longstanding practice or custom is one that is so "persistent and widespread" that it constitutes a "permanent and well settled" governmental policy. <u>Trevino v. Gates</u>, 99 F.3d 911, 919 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." <u>Id</u>. (emphasis added); see <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1387 (4th Cir. 1987) ("Custom and usage, in the sense of persistent and widespread…practices by municipal agents and employees, may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the [municipality]…that the practices have become customary among its employees.") (internal quotation marks omitted).

26

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

Here, Plaintiff has failed to provide any evidence that there is a longstanding policy or custom. The only evidence proffered by Plaintiff is that he claimed that an unnamed nurse informed him that such a policy existed. Dec. of Whitefleet, Ex. 1, 81:13-16. Plaintiff explicitly admits that no party to this case ever informed him of such a practice. Id. Plaintiff has failed to provide evidence of any similar incidents where an inmate was denied referral for private treatment to another detainee-patient similar to Plaintiff.  As such, Plaintiff cannot establish a practice that is so "persistent and widespread" that it constitutes a "permanent and well established" County policy.  Trevino, 99 F.3d at 919; see, e.g., Gorman v. City of San Diego, Case No. 08-cv-02345 IEG (RBB), 2012 U.S. Dist. LEXIS 70580 (S.D. Cal. May 21, 2012) (denying motion for a new trial because three incidents of excessive force against a single person in one day are insufficient to show a longstanding practice or custom).

Third, there is no evidence that a policymaker had any decision making authority as to Plaintiff's medical treatment.  The decisions regarding Plaintiff's medical treatment were made by Dr. Sanders and Nurse Brown.  Neither had any policymaking authority.  Plaintiff only alleges that a policy existed that delayed the treatment until he was transferred in order to save costs, despite the evidence counter to such an argument. There is no policy that recommends expensive or any procedure be delayed until a detainee transfers to CDCR. The only policy reasonable takes costs into account when treating an inmate or detainee. In addition, Plaintiff was treated for his HSK and lower back pain, even receiving a MRI, under the policy that supposedly would have him wait till transfer to CDCR. Therefore, Plaintiff has failed to provide any evidence that would support his allegation that a policy existed to delay or deny his medical treatment until he was transferred to CDCR for budgetary reasons.

### iii.   No evidence that a policymaker refused to treat plaintiff or interfered with treatment

Finally, Plaintiff cannot identify an official with final policymaking authority whose actions deprived him of or interfered with lower back pain, eye infection, or allergy treatment.  There is absolute no indication that County Defendants and Defendants Denney and Parker had control over Plaintiff's medical care. Likewise, there is no indication that Defendants Dr. Sanders and Nurse Brown had authority to set policy regarding Plaintiff's medical care.  See McMillian v. Monroe, 520 U.S. 781,

27

{01747198.DOC}

784-85 (1997) (an official who has the power to act in an "all or nothing manner" and whose edicts represent official government policy on a particular issue has final policymaking authority).

Furthermore, the undisputed facts demonstrate that Dr. Sanders considered and evaluated Plaintiff's lower back pain, eye infection, and allergies and determined that treatment of Plaintiff was appropriate. See UMFs 4-12.  As discussed above, nothing in the record could support Plaintiff allegations that Dr. Sanders and Doris Brown's treatment of Plaintiff amounted to deliberate indifference.  See discussion at § IV.A, supra.

Based on the foregoing, County Defendants, and Defendants Denney and Parker respectfully request summary judgment also be granted with respect to Plaintiff's deliberate indifference claims against County Defendants and Defendants Denney and Parker.

**B.**   **Defendants Parker, Bidwell, Sutter County Sheriff's Department, Sutter County Jail and Sutter County are entitled to Summary Judgment for Their Alleged Violation of Plaintiff's Fourteenth Amendment Due Process for Failure to Protect**

Plaintiff has also alleged that Defendants Parker and Bidwell, as the Sheriff and Jail Commander, were responsible for the administration and operation of the jail, and as such failed to develop written policies and procedures for the maintenance of an acceptable level of cleanliness, repair and safety throughout the facility in violation of California Code of Regulations Title 15 § 1280.

Plaintiff claims that Defendant Parker failed to either create an appropriate policy or ensure it was implemented and that this caused mold and other contaminants in the ventilation system, as evidenced by a visible black coating on the wall, ceilings, and vent faces near the vents. ECF No. 66-2 at 16, ¶ 74. If Parker failed to implement such a policy, Plaintiff claims that Bidwell, as the jail commander, failed to carry out the policies as part of his duties in operating the jail. Plaintiff claims that this health hazard caused him to suffer complications. In addition, Plaintiff claims that Parker's position as a decision maker subjects County Defendants to liability for failure to protect under Monell.

Again, as a pretrial detainee, the appropriate standard to analyze Plaintiff failure-to-protect claim is under the Fourteenth Amendment's due process.  Castro, 833 F.3d 1060, 1067–68 (9th Cir. 2016). In addition, a pretrial detainee who asserts a due process claim for failure to protect to prove

28

more than negligence but less than subjective intent, something akin to reckless disregard. Id. at 1071.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). As discussed at length in the discussion of the applicability of Castro to failure to protect claims, much of the Ninth Circuit's reasoning was and holding was dicta. See discussion §IV.A., supra. Regardless, the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer espoused by the Ninth Circuit are:

(1) "The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those condition put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measure to abate that risk, even though a reasonable officer in the circumstance would have appreciated the high degree of risk involved-making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries."

Castro, 833 F.3d 1060, 1071 (9th Cir. 2016). However, summary judgment is proper in condition of confinement case against defendants in their individual capacity where a plaintiff failed to raise a triable dispute as to whether defendants knew of and disregarded an excessive risk to a plaintiff's health or safety. West, 690 F. App'x at 940 (quoting Farmer, 511 U.S. at 837) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). To raise such a triable issue a plaintiff must produce at least some significant probative evidence tending to support the complaint. Smolen, 921 F.2d at 963.

As a preliminary matter, Plaintiff has only alleged that Parker and Bidwell failed to develop written policies and procedures for the maintenance of an acceptable level of cleanliness, repair and safety throughout the facility in violation of California Code of Regulations Title 15 § 1280. A violation of a regulation, without more, does not support a §1983 claim. Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983

29

offers no redress") (quoting <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir.1997)). Here Plaintiff has not alleged anything more than the violation of a California regulation, and therefore does not create a constitutional violation.

Regardless, there is ample evidence that such a policy not only existed, but was fully carried out under the watchful eye of the outside inspectors. As discussed above, SCJ had an express written policy regarding bi-annual, annual, and periodic inspections conducted by the jail that adhere with California Law. SCJ has passed their environmental health inspections in the years prior, during, and after Plaintiff was detained as SCJ. Bidwell fully participated in these inspections, which inspected the jail for any mold or other environmental health violations.

In addition, Plaintiff has failed to provide evidence that Parker and Bidwell knew of and disregarded an excessive risk to Plaintiff's safety. Per policy, Plaintiff was required to clean his own cell. Plaintiff failed to inform any one of the conditions of his cell. Even if such a substance exited in Plaintiff's cell, Plaintiff never informed anyone of the "black substance" in his cell until after he transferred to a CDCR facility and filed this lawsuit.

By Plaintiff keeping this alleged mold secret until the filing of this lawsuit, he made it impossible to also determine is such a substance was even mold. Plaintiff has no mold identification or remediation training other than his work in construction. While this alone would make him wholly unqualified to identified mold from sight, even seasoned mold experts trained in identification and remediation cannot identify mold from sight alone. Mold must be tested in a laboratory to determine if it could be harmful, if it even existed. By failure to inform anyone of the alleged mold, much less Parker and Bidwell, Plaintiff guaranteed it would never be tested.

As discussed above, Plaintiff has failed to allege a constitutional violation by merely stating that these is a violation of §1280. Even then, Plaintiff has failed to raise a triable issue that Parker and Bidwell knew of the mold, by not being able to see it or that it was even mold to begin with. Even if Parker and Bidwell knew of the mold, between the policy and yearly inspections, Plaintiff has failed to could produce evidence that Parker and Bidwell disregarded an excessive risk to Plaintiff's safety.  As such, summary judgment as to Plaintiff's failure to protect claim should be granted.

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**
{01747198.DOC}

**C.    County Defendants and Defendants Denney, Parker and Bidwell are entitled Qualified Immunity**

As discussed <u>supra</u>, IV.B., Defendants are entitled to qualified immunity if the particular right that the official has violated was clearly established at the time of the violation. Similar medical treatments that were afforded to Plaintiff were found to not be deliberate indifference. The same treatments and their policies would have provided a measure of confidence to the County Defendants and Defendants Denney, Parker and Bidwell that SCJ's medical policies did not violate Plaintiff's rights.  As these rights were not clearly established, then County Defendants and Defendants Denney, Parker and Bidwell are entitled to qualified immunity as well.

In addition, there is no existing precedent that placed the statutory or constitutional question beyond debate regarding Plaintiff's failure to protect. Specifically, there is no case law that provided that defendants failed to protect an inmate from exposure to mold where they conducted annual and bi-annual inspections and the inmate failed to notify any personnel of the mold during his detainment. As such, Defendants were no put on notice that their actions in conducting regular inspections and were never put on notice that mold existed in the building constituted a failure to protected, and therefore, should be afforded qualified immunity.

**D.    Plaintiff's ADA and RA Claims Against County Defendants**

Plaintiff claims that County Defendants violated Title II of the Americans with Disabilities Act ("ADA") and §504 of the Rehabilitation Act ("RA") by denying him access to jail programs and services as a result of the refusal to accommodate his disability. Plaintiff claims that his has he has respiratory and lower back conditions that qualifies as a disability under Title II of the Americans with Disabilities Act (ADA) and the §504 of the Rehabilitation Act. ECF No. 66-2 at 17, ¶ 80; 31, ¶ 143. He further alleges that the refusal to provide him with reasonable accommodations for his disabilities prevented him from being able to take advantage of a number of programs and services offered at the jail because, among other things, his upper tier cell required him to navigate stairs, which presented a significant risk of physical harm because of his disabilities. Id. at 42-43, ¶¶ 189, 191, 193, 195. Plaintiff has claimed compensatory damages pertaining to the above alleged ADA violations in the amount of

31

$56,400.00. However, Plaintiff has failed to raise a triable issue as to whether Plaintiff was prevented access to the above mentioned programs or that he properly put County Defendants on notice that he required such an accommodation.

>    i.      Elements of a title II ADA and RA claims

Title II of the Americans with Disabilities Act ("ADA") provides that: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. To show that a public program or service violates this provision of the ADA, plaintiffs must show: (1) that plaintiff is a "qualified  individual with a disability"; (2) plaintiff was excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefit, or discrimination was by reason of his disability.  Weinreich v. L.A. Cty. Metro. Transp. Auth., 114 F. 3d 976, 978 (9th Cir. 1997) citing 42 U.S.C. § 12132 and Does 1-5 v. Chandler, 83 F.3d 1150, 1154-1155 (9th Cir. 1996). Plaintiff must "prove that the exclusion from participation in the program was 'solely by reason of disability.'"  Weinreich, 114 F.3d at 978-979 quoting Does, 83 F.3d at 1155 and Sandison v. Michigan High School Athletic Ass'n, Inc., 64 F.3d 1026, 1036-1037 (6th Cir. 1995). In addition, while regulations contained in Title II provides a general framework for analyzing ADA claims, "inmates' rights must be analyzed "in light of effective prison administration." Pierce v. Cty. of Orange, 526 F.3d 1190, 1216 (9th Cir. 2008).

Similarly, under Section 504 of the Rehabilitation Act, plaintiff must show: "(1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Weinreich, 114 F.3d at 978, citing 29 U.S.C. § 794; Bonner v. Lewis, 857 F.2d 559, 562-63 (9th Cir. 1988); Doherty v. Southern College of Optometry, 862 F.2d 570, 573 (6th Cir. 1988).

In addition, for a plaintiff to recover monetary damages under Title II of the ADA or RA, a plaintiff must prove intentional discrimination on the part of the defendant.  Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).  The Ninth Circuit

32

{01747198.DOC}

follows the deliberate indifference standard as the appropriate test for intentional discrimination under Title II of the ADA and RA. Id.   Further, the Ninth Circuit found that deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood. Id. Therefore, a plaintiff is required to identify specific reasonable and necessary accommodations that the defendant failed to provide. Id. Specifically, when the plaintiff alerted the public entity to his need for accommodation, or where the need for the accommodation is obvious, or required by statute or regulation, the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test. Id.

If a plaintiff meets the above requirement of providing notice to, then the public entity is required to undertake a "fact-specific" investigation to determine what constitutes a reasonable accommodation.  Id. This includes gathering sufficient information from the individual and qualified experts as needed to determine what accommodations are necessary Id.  Even then, a failure to act on the part of the public entity must be a result of conduct that is more than negligent, and involves an element of deliberateness. Id.

### ii.        Plaintiff is not a qualified individual with a disability under the ADA and RA

Disability is defined as an individual with a "physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C.A. § 12102.  The Ninth Circuit has found that in order to be considered a qualified individual, a plaintiff must present sufficient evidence to demonstrate that they were substantially limited in the specified major life activity for purposes of daily living or as compared to what is import in the daily life of most people.  Wong v. Regents of Univ. of California, 410 F.3d 1052, 1065 (9th Cir. 2005).  Some impairment does not necessarily mean that the individual is substantially limited.  Ibid. (quoting EEOC v. United Parcel Service, Inc., 306 F.3d 794 (9th Cir.2002)).

Plaintiff has failed to present the sufficient evidence to demonstrate that he is a qualified individual under the ADA or RA. While Plaintiff's condition of lower back pain and allergies were documented, nothing in the documentation would suggest that these were substantially limited a major

33

life activity. Plaintiff claims that only twenty times during his stay at SCJ was he could not negotiate the stairs access the above programs due to back pain out of the hundreds of times he navigated the stairs. Whitefleet Dec. ¶1, 99:25-100:10. Even then, Plaintiff mobility was not limited until later during his detainment at SCJ. Id.

### iii.    Plaintiff was not denied access to SCJ Programs

As a stated above, ADA and RA both require that Plaintiff provide evidence that he was either excluded from or denied the benefits of SCJ's services, programs, or activities. Here, Plaintiff has failed to provide evidence that he was excluded from any program or service during his detainment at SCJ.  Plaintiff admits that he accessed various programs hundreds of times during his less than one year detainment at SCJ. UMF 22. This included medical cell, law library, recreation yard, the canteen, and the visitor area. Id.

### iv.    Plaintiff failed to provide evidence that he was denied a reasonable accommodation

Plaintiff also failed to present sufficient evidence to demonstrate that he was denied a reasonable accommodation. By Plaintiff's own admission, he never requested accommodations move to the lower cell or in any way related to his lower back pain or respiratory ailments. UMF 14. Plaintiff only requested that he be moved for the general comfort of the max units, and the move was not directly related to his lower back pain or respiratory condition. Id. While Plaintiff claims that he made the claim through medical to be moved to a downstairs unit, this was only after he was denied the move for convenience purposes. Whitefleet Dec. ¶1, 105:22-106:12.

Plaintiff also requested to be moved to the bottom floor due to a identify breach Id. However, there was not rooms available at that time. While Plaintiff informed SCJ officials of his mold allergy, he did not identify any mold in the facility or ask for accommodation for such mold Id.

Plaintiff's failure to provide sufficient evidence that he was either a qualified individual, denied access to SCJ programs, or denied a reasonable accommodation. As such, County Defendants request that their motion for summary judgment be granted.

### VI.

### DEFENDANTS PARKER AND BIDWELL STATE TORT CLAIMS

34

{01747198.DOC}

Plaintiff has brought state tort claims for general negligence against Defendants Parker and Bidwell. Plaintiff claims that both defendants were negligent for dangerous condition created by the failure to create or implement a policy to provide for the cleanliness and maintenance of the ventilation system. In addition, Plaintiff claims that Parker was negligent in his creation of a policy denying medical care.

First, Plaintiffs failed to properly notice defendants pursuant to California Government Code §915(a).  Plaintiff improperly sent notice of claims to Dr. Sanders, Nurse Brown, Sutter County Jail, Sutter County Sheriff, and "Sutter Counsel."  In addition, there exists no genuine issue of material fact that such policy existed for the maintenance and cleaning of the ventilation system, and that such a policy was fully implemented. In addition, Plaintiff has failed to provide evidence to support his claim that Parker created a policy that denied or delayed Plaintiff's medical care due to financial concerns, or if such a policy existed, Parker is immune from liability.

A.    **Plaintiff's failed to Properly notice Defendants pursuant to California Government Code §915(a)**

As discussed <u>supra</u>, IV.C.i., Plaintiff has failed to comply with the Government Claim Act. As such he is barred from bringing state tort claims against Defendants. This includes the state law tort claims against Defendants Parker and Bidwell.

B.    **Parker and Bidwell are Entitled to Summary Judgment on General Negligence Claims for Failing to Maintain the Ventilation System**

Plaintiff brings a negligence claim against Defendants Parker and Bidwell for their alleged failure to create or carry out maintenance policies for the ventilation system. Plaintiff alleges that this failure caused mold and other contaminants in the ventilation system to aggravate his respiratory condition causing dizziness, severe headaches, difficulty breathing and inability to perform daily tasks. ECF No. 66-2 at 17, ¶¶ 78-79. This Court articulated two theories for Plaintiff's negligence claim against Parker and Bidwell. ECF 76, 14:16-18;15:3-8. The first theory is that Parker allegedly failed to create an appropriate policy pursuant to Cal. Code of Reg. Title 15, section 1280, and this failure arguably caused the dangerous condition that injured Plaintiff and Parker had the authority and ability

35

{01747198.DOC}

to take action that would have prevented the dangerous condition or would have had the ability to correct the dangerous condition. California Code of Regulations Article 15, §1280 provides that, "The facility administrator shall develop written policies and procedures for the maintenance of an acceptable level of cleanliness, repair and safety throughout the facility." In addition, "such a plan shall provide for a regular schedule of housekeeping tasks and inspections to identify and correct unsanitary or unsafe conditions or work practices which may be found." Id.

The second theory discussed by this Court's would provide for liability if Parker created a policy but failed to ensure the policy was implemented and Bidwell failed to carry out the policy, the dangerous condition would be attributable to the negligent acts of both Parker and Bidwell and they had the authority, responsibility, and means to either prevent or correct the dangerous condition. Id. However, under both theories, Plaintiff has failed to present evidence sufficient to support his negligence claims against Parker and Bidwell.

As a preliminary matter, section 1280 of the California Code of Regulations is not an authorizing statute and does not impose government tort liability. California Government Code section 815 provides that a public entity is not liable for an injury arising out of an act or omission except as provided by statute. Section 1280 is not such a statute. The Government Claims Act bars causes of action against the state unless there is an authorizing statute. Odello Bros. v. Cty. of Monterey, 63 Cal. App. 4th 778, 792 (1998). Section 1280 does not provide any such authorization. Even if it does provide such authorization, it is only requires that a policy and procedure be created.

Even then, there was no dangerous condition created at the facility. A dangerous condition is defined as a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used. Gov't Code §830(a). For a public employee to liable for injury caused by a dangerous condition, a plaintiff must show that, (1) the dangerous condition existed at the time of the injury, (2) the condition proximately caused the injury, and (3) the kind of injury incurred was a reasonably foreseeable risk of the dangerous condition. Cal. Gov't Code § 840.2.

36

In addition, the plaintiff must also show that either (a) "[t]he dangerous condition was directly attributable wholly or in substantial part to a negligent or wrongful act of the employee" and the employee had the authority and funds immediately available to take other action that would not have created the dangerous condition; or (b) the employee had the authority and responsibility to take adequate measures to protect against the condition at the public entity's expense, the funds to take such measures were immediately available, and the employee had actual or constructive notice of the condition a sufficient time before the injury that he could have taken measures to protect against the dangerous condition. Id.

As required by section 840.2(b), an employee must have actual or construction notice of the condition. Pursuant to section 840.4(a), a public employee had actual notice of a dangerous condition if he had actual personal knowledge of the existence of the condition and knew or should have known of its dangerous character.

Conversely, a public employee had constructive notice of the dangerous condition if the plaintiff establishes, "that the public employee had the authority and it was his responsibility as a public employee to inspect the property of the public entity or to see that inspections were made to determine whether dangerous conditions existed in the public property, that the funds and other means for making such inspections or for seeing that such inspections were made were immediately available to the public employee, and that the dangerous condition had existed for such a period of time and was of such an obvious nature that the public employee, in the exercise of his authority and responsibility with due care, should have discovered the condition and its dangerous character." Cal. Gov. Code §840.4(b).

Here, there is no significant evidence to support such a construction of a failure to create or implement a policy that "acceptable level of cleanliness, repair and safety throughout the facility." First there is no dangerous condition that existed. Next, the undisputed material facts demonstrate that such a policy was created and that is was subject to yearly review.

### i. No dangerous condition existed at SCJ

As stated above, for such a dangerous condition to exist, it must create a substantial risk of

37

{01747198.DOC}

injury. While mold has been found to create a substantial risk, there must first be mold. The substance that Plaintiff has alleged was mold, was never tested. There is no evidence, other than Plaintiff's lay opinion, that the substance was even mold. Without anyway to determine the nature of the substance, Plaintiff has failed to provide evidence that there was even a dangerous condition on the property.

    **ii.**        **The dangerous condition was not the proximate cause of the injury**

For similar reasons, Plaintiff has failed to provide evidence that the alleged mold was the proximate cause of his respiratory ailment or allergies. Mold exposure is a complicated test that determines the amount of mold mycotoxins and antibodies produced in response to the mycotoxins. Dee v. PCS Prop. Mgmt., Inc., 174 Cal. App. 4th 390, 405 (2009). Plaintiff has failed to produce any evidence to support his causation requirement for a dangerous condition. Without such tests, it is impossible to determine causation of any of Plaintiff's ailments. By Plaintiff's own admission he has a myriad of ailments and allergies. In addition, Plaintiff has is required to take an assortment of medications, that while necessary, may have interactions. Without a mold test, Plaintiff has failed to produce evidence to support that the proximate cause was his alleged injuries was the substance or debris coming from the vents.

    **iii.**      **Plaintiff has failed to provide evidence sufficient to support his claim that Parker or Bidwell were negligent or failed to act**

Next, the Plaintiff has failed to provide sufficient facts support his claim that the alleged dangerous condition was directly attributable wholly or in substantial part to Parker and Bidwell's failure to create a policy for cleanliness and maintenance of the ventilation system. Section 840.2(a) looks to the actual acts of Parker and Bidwell, as opposed to the inaction of section 840.2(b).

However, as discussed at length in §IX.A., supra, SCJ had a long standing policy to maintain and clean the ventilation system. Therefore, there is no evidence to support a claim that the dangerous condition was directly attributable wholly or in substantial part to a negligent or wrongful act of the employee" and the employee had the authority and funds immediately available to take other action that would not have created the dangerous condition, if the negligence act was the failure to create a policy that comports with California Code of Regulations Article 15, §1280.

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

{01747198.DOC}

Not only is it well documented that the policy existed, the implementation of the policy was also well documented through annual and bi-annual inspections as discussed above. In addition, by Plaintiff's own admission, SCJ took steps to clean its cooling system during Plaintiff's detainment at SCJ. Whitefleet Dec. ¶1, 117:22-118:22.   Section 840.2(a) looks to the negligence of Parker and Bidwell as individuals, and Plaintiff has not alleged that they were negligent in hiring the personnel to clean to the ventilation system.

**iv.    SCJ had a policy in place to monitor environmental health of the facility**

While it is clear that SCJ had in place a policy to address the cleanliness and maintenance of the ventilation system, even if they did not have a policy in place or took no action to address the maintenance and cleanliness of the ventilation system, Plaintiff's still has failed to present sufficient evidence to support a finding that Parker and Bidwell had actual or constructive notice of the condition pursuant to section 840.2(b).

First, there is no evidence that Parker or Bidwell saw such a condition. Even then, there is nothing to support the requirement that they would have known or should have known of the dangerous character. The substance Plaintiff alleges was mold was never tested. Plaintiff's allegations of a black film in his complaint and deposition were his first discussion of such a condition. Plaintiff has failed to provide any evidence that this was brought to the attention of either Parker or Bidwell.

Even then, Plaintiff has failed to present evidence that support a finding that Defendants Parker and Bidwell had constructive notice of the condition alleged by Plaintiff. As discussed in §IX.A, supra, there was yearly inspections at SCJ for environmental health hazards for the years prior to, during, and after Plaintiff was detained at SCJ. UMF 18, 21. None of these inspections identified the condition alleged by Plaintiff. Id. SCJ also had maintenance personnel that conducted their own inspections.  Id. There is no evidence that such a condition was discovered through the numerous inspections conducted at SCJ during the years prior, during, and following Plaintiff's detainment.

Therefore, Plaintiff has failed to provide evidence to support his claim that Parker and Bidwell failed to create or implement a policy that provided for the cleanliness and maintenance of the ventilation system and this failure created a dangerous condition.

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**
{01747198.DOC}

**A.      Defendants Parker is Entitled to Summary Judgment on Negligence for Their Policy of Denying or Delaying Medical Care**

Finally, Plaintiff has presented a negligence claim against Defendant Parker for the creation of policies denying or delaying medical care. ECF 76, 19:1-5. Plaintiff claimed that Defendant Parker, as facility administrator, was responsible for ensuring the provision of inmate health care services and, in cooperation with the health authority, creating policies and procedures for the provision of health care. Cal. Code Regs., tit. 15, §§ 1200, 1206. Id. However, there exists no genuine issue of material fact that a policy was created to delay or deny Plaintiff medical treatment until he was transferred to CDCR.

Pursuant to Cal. Gov. Code. Section 820.2, a public employee is "not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion was abused." A discretionary act requires a conscious balancing of risks and advantages when making basic policy decisions. Steinle v. City & Cty. of San Francisco, 230 F. Supp. 3d 994, 1020 (N.D. Cal. 2017).  However, section 820.2 does not protect operational or ministerial decisions that implement policies.  Id. A ministerial act is an act pursuant to an order, or an act where a person had no choice, while an operational act is one in which the person who made the decision, implemented the decision. Id.

Where an employee discretion exercised involved crucial policy decisions, such decisions "bear the hallmarks of discretionary activity which should not be the subject of scrutiny and second-guessing by a coordinate branch of government," and an employee is therefore immune from liability.  San Mateo Union High Sch. Dist. v. Cty. of San Mateo, 213 Cal. App. 4th 418, 434, 152 Cal. Rptr. 3d 530, 543–44 (2013).  Where a policy decision is the result of a conscious balancing of risks and advantages, in how best to implement a regulation, such a decision will immune pursuant to 820.2.  Steinle, 230 F. Supp. 3d 994 at 1020. In addition, Sheriffs are among the public employees subject to immunity under section 820.2. Id.

Cal. Code Regs., tit. 15, section 1200 provides that, the facility administrator shall have the responsibility to ensure provision of emergency and basic health care services to all inmates, taking into account security regulations.  Section 1206 requires that the health authority along with the facility

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**

{01747198.DOC}

administrator will set forth in writing, policies and procedures in conformance with applicable state and federal law. Neither regulation requires taking into consideration the financial considerations.

Here, it is undisputed that there does not exist a policy that delayed or denied medical care of Plaintiff until he was transferred to CDCR. UMF 1-3; §V.A.ii., supra. Regardless, JMS #16-519 specifically allows access to private physicians and that such arrangement "are subject to financial and security concerns." Id. Nothing in section 1200 or 1206 calls for him to take into account financial considerations. Therefore, even if financial constraints somehow delayed Plaintiff's medical care, those policy decisions were discretionary, and Parker is immune from liability pursuant to section 820.2. Further, Parker has no operational act concerning Plaintiff's medical care.  Whitefleet Decl. ¶2, 82:21-83:2.

Therefore, no genuine issue of material fact exists as one, Plaintiff has failed to provide evidence that a policy existed delaying or denying his medical care until he was transferred, or two, the policy implemented by SCJ was a discretionary decision made by Parker and he is immune from liability pursuant to 820.2.

## VI.

### CONCLUSION

Based on the foregoing, Defendants COUNTY OF SUTTER, SUTTER COUNTY SHERIFF DEPARTMENT, SUTTER COUNTY JAIL, JIM DENNEY, SAMUEL SANDERS, PAUL PARKER, NORMAN BIDWELL, DORIS BROWN respectfully request summary judgment be granted for Plaintiff's deliberate indifference, failure to protect, medical malpractice, and negligence claims.

Dated: August 28, 2018                           Respectfully submitted,

                                                 PORTER SCOTT
                                                 A PROFESSIONAL CORPORATION

                                                 By /s/John R. Whitefleet
                                                     C.M. Brandon Gnekow
                                                     Attorneys for Defendants

41

{01747198.DOC}

**Case Name:   Leonard v. Denny, et al.**
**Case No:        2:12-cv-00915 AC**

### DECLARATION OF SERVICE

I am a citizen of the United States and employed in Sacramento County, California; I am over the age of 18 years and not a party to the within action; my business address is 350 University Avenue, Suite 200, Sacramento, California 95825.

On the date below, I caused to be served the attached:

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANT JIM DENNEY, PAUL PARKER, NORMAN BIDWELL, DR. SAMUEL SANDERS, DORIS BROWN AND COUNTY OF SUTTER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

____X____    **BY MAIL:**  I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Sacramento, California.

_____    **BY PERSONAL SERVICE:**  I caused such document to be delivered by hand to the office of the person(s) listed below.

_____    **BY OVERNIGHT DELIVERY:**  I caused such document to be delivered overnight to the office of the person(s) listed below.

_____    **BY FACSIMILE:**  I caused such document to be transmitted by facsimile machine to the office of the person(s) listed below.

Addressed as follows:

David G. Leonard
CDCR No. AC-9689
CIM II, West - CH, 141-L
P.O. Box 368
Chino, CA 91708

I declare under penalty of perjury that the foregoing is true and correct and was executed on August 28, 2018, in Sacramento, California.

/s/ Jessica Walker
Jessica Walker

**MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES**
{01747198.DOC}