1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     DAVID G. LEONARD,                          No.  2:12-cv-00915 TLN AC P

12                    Plaintiff,

13          v.                                     ORDER and FINDINGS &
                                                   RECOMMENDATIONS
14     JIM DENNY, et al.,

15                    Defendants.

16

17          Plaintiff is a former county and current state prisoner proceeding pro se with a civil action

18     pursuant to 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act (ADA), 42 U.S.C.

19     §§ 12131-12134; Section 504 of the Rehabilitation Act (RA) of 1973; and state tort law.

20     Currently before the court is defendants' motion for summary judgment.  ECF No. 164.

21          I.      Procedural History

22          This case proceeds on plaintiff's second amended complaint (ECF No. 66-2), which was

23     screened and found to state claims for relief against defendants Jim Denny, Paul Parker, Samuel

24     Sanders, Norman Bidwell, Dorris Brown, Sutter County Sheriff's Department, Sutter County Jail,

25     and Sutter County, as well as against a Doe defendant (ECF Nos. 76, 78).

26          Plaintiff included in his second amended complaint five separate counts for Eighth

27     Amendment deliberate indifference and failure to protect, a Fourteenth Amendment equal

28     protection claim, state tort claims, and claims under the ADA and RA.  ECF No. 66-2 at 25-45.

1  Following defendants' motion to dismiss (ECF No. 67), the undersigned recommended that

2  Counts I, II, IV, and V be dismissed in part, and further recommended that defendants Denny,

3  Parker, Sanders, Brown, Sutter County Sheriff's Department, Sutter County Jail, and Sutter

4  County be required to respond to Count I; defendants Parker, Bidwell, Sutter County Sheriff's

5  Department, Sutter County Jail, and Sutter County be required to respond to Count II; defendants

6  Saunders and Brown be required to respond to Count III; defendants Parker and Bidwell be

7  required to respond to Count IV; and defendants Sutter County Sheriff's Department, Sutter

8  County Jail, and Sutter County be required to respond to Count V.  ECF No. 76 at 26.  The

9  undersigned's recommendations were adopted (ECF No. 78), and defendants answered the

10  complaint (ECF No. 79).

11      After the close of discovery, defendants filed the instant motion for summary judgment

12  (ECF No. 164), which plaintiff opposes (ECF Nos. 185-87, 194).  Plaintiff has also filed two

13  motions for sanctions (ECF Nos. 188, 191) and a motion to strike a declaration submitted by

14  defendants (ECF No. 190).

15      II.    Doe Defendant

16      On screening the second amended complaint, the undersigned found that plaintiff had

17  stated a claim for relief against a Doe defendant who was not served due to the impossibility of

18  serving an unknown individual.  ECF No. 76 at 6-7.  Plaintiff was warned that failure to identify

19  and serve the Doe defendant prior to the close of discovery would result in a recommendation that

20  the claims against the Doe defendant be dismissed.  Id. at 7.  Since discovery is now closed and

21  plaintiff has not moved to substitute defendant Doe, it will be recommended that defendant Doe

22  be dismissed.

23      III.    Plaintiff's Allegations

24      The second amended complaint alleges that defendants violated plaintiff's rights under the

25  Eighth Amendment, ADA, RA, and state tort law.  ECF No. 66.

26      In Count I, plaintiff alleges that Denny, Parker, Bidwell, Sanders, Brown, the Sheriff's

27  Department, the Jail, and the County violated his Eighth Amendment rights when they created

28  and perpetuated a policy or practice that encouraged delaying and denying necessary medical care

2

1    until an inmate was transferred to the California Department of Corrections and Rehabilitation

2    (CDCR) in order to cut costs associated with medical care.  ECF No. 66-2 at 3, 25-27, 31-32,

3    ¶¶ 1-4, 118-19, 122, 128-29, 145, 147.  These policies allegedly resulted in the denial of

4    necessary medical care to plaintiff, including diagnostic testing and referrals to specialist;

5    increased pain; and the worsening of his medical conditions.  Id. at 3-7, 10-11, ¶¶ 5, 9-10, 17-19,

6    22, 26, 43, 49.  Plaintiff further alleges that Sanders and Brown were medical providers at the Jail

7    who he saw about his various medical conditions and who were both deliberately indifferent

8    when they failed to provide appropriate treatment for his lower back pain, asthma, eye infection,

9    and respiratory problems.  Id. at 8-13, 29, 33, ¶¶ 28-58, 134, 150.

10        Count II alleges that Parker, Bidwell, the Sheriff's Department, the Jail, and Sutter County

11   failed to protect him when they failed to create, implement, or carry out policies for maintenance

12   of the ventilation system, leading to the circulation of mold and other contaminants that

13   exacerbated his respiratory conditions.  Id. at 16-17, 32-33, ¶¶ 74-79, 148-50.

14        In Count III, plaintiff alleges that defendants Brown and Sanders committed professional

15   negligence when they failed to properly treat his lower back pain, eye infection, and respiratory

16   conditions by failing to evaluate his condition, obtain his medical history, make appropriate

17   referrals to specialists, conduct diagnostic testing, and properly prescribe medication.  Id. at 8-13,

18   34-38, ¶¶ 28-58, 156-76.

19        Count IV alleges that Parker and Bidwell were negligent in their maintenance of the

20   ventilation system, which aggravated his respiratory conditions leading to a number of problems,

21   including difficulty breathing, dizziness, severe headaches, and an inability to perform daily

22   tasks.  Id. at 17, 38-41, ¶¶ 78-79, 177-83.

23        Finally, in Count V, plaintiff alleges that the Sheriff's Department, the Jail, and the

24   County violated the ADA and RA when they refused to provide him with accommodations for his

25   respiratory condition and back pain, which left him unable to physically access various services

26   and programs.  Id. at 42-43, ¶¶ 189, 191, 193, 195.

27   ////

28   ////

3

1    IV.    Motion for Sanctions: Spoliation

2        Plaintiff has filed a motion for sanctions in which he alleges that defendants failed to

3    preserve discoverable evidence.  ECF No. 188.

4        Discovery in this case was initially scheduled to close on August 26, 2016.  ECF No. 80 at

5    5.  The deadline was extended a number of times, first to allow plaintiff to file motions to compel,

6    and then to allow the parties to telephonically meet and confer in an effort to resolve the

7    discovery issues raised.  ECF Nos. 86, 103, 107, 120, 128.  Because the parties were attempting

8    to resolve the discovery disputes without court intervention, plaintiff's motions to compel were

9    vacated with leave to re-file as to any issues that remained upon completion of the parties'

10   discussions.  ECF Nos. 107, 116, 118, 128.  Plaintiff was notified on multiple occasions that he

11   would have forty-five days from the completion of discovery discussions to file a motion to

12   compel on any outstanding discovery issues.  ECF Nos. 107, 116, 118, 120, 128.  On August 18,

13   2017, defendants filed a notice advising the court that the parties had conducted their last

14   telephonic conference that day (ECF No. 131), thus triggering plaintiff's time to file a motion to

15   compel, which expired on October 2, 2017.  The motion for sanctions was not filed until

16   December 26, 2018 (ECF No. 188 at 15), over a year later.

17       According to plaintiff's motion, he was aware of the allegedly destroyed documents as

18   early as September 23, 2016, when he initially filed a motion to compel the documents he now

19   claims were wrongfully destroyed.  ECF No. 188 at 2 (referencing defendants' response (ECF

20   No. 105) to his motion to compel documents (ECF No. 99)).  Although there is no set timeline for

21   bringing a spoliation motion, "there is a particular need for these motions to be filed as soon as

22   reasonably possible after discovery of the facts that underlie the motion."  Goodman v. Praxair

23   Servs., Inc., 632 F. Supp. 2d 494, 508 (D. Md. 2009); Sherwin-Williams Co. v. JB Collision

24   Servs., Inc., 2015 WL 4077732, at *2, 2015 U.S. Dist. LEXIS 87439, at *4 (S.D. Cal. July 6,

25   2015) (citation omitted).  Plaintiff offers no explanation as to why he did not file his motion

26   during the time permitted after the parties completed their discovery discussions, at which point

27   he had been aware that the documents had not been produced for a significant period of time, and

28   the close of discovery.  Nor does he explain the lengthy delay between the close of discovery and

4

1    his filing of the spoliation motion.  The motion is clearly untimely and will therefore be denied.

2         V.    Motions for Sanctions and to Strike

3         Plaintiff has also filed objections to and a motion to strike the second-filed declaration of

4    Dr. Robert Kersten, submitted in support of defendants' motion for summary judgment (ECF No.

5    190) and a motion for sanctions and to strike the declaration (ECF No. 191).  Both motions will

6    be denied.

7         First, plaintiff contends that defendants failed to comply with Local Rule 131(f) because

8    Dr. Kersten's second-filed declaration was not an original copy of the electronically signed

9    declaration.  ECF No. 190 at 2-3.  In particular, he cites the typographical errors that were fixed

10   between the "blue original" copy of the declaration and the second-filed copy.  Id. at 1-8; ECF

11   No. 191 at 1-7.  The court notes that though these changes certainly could have been

12   acknowledged, both declarations are substantively the same.  For instance, the correction from

13   "[p]rescriptions were reviewed by Nurse Brown and myself" to "[p]rescriptions were reviewed by

14   Nurse Brown and Dr. Sanders" is not a substantive change that requires the court to disregard the

15   contents of Dr. Kersten's declaration.  ECF No. 190 at 5.  Further, the court previously addressed

16   the issue of the signature error in the "blue original" copy.  The court ordered counsel for

17   defendants to file a properly signed version of the declaration, and after defendants filed the

18   corrected declaration, found that counsel sufficiently demonstrated why they should not be

19   sanctioned.  ECF No. 179 at 1.  Thus, the court will not strike Dr. Kersten's second-filed

20   declaration due to corrections made to typographical or signature errors.

21        Second, plaintiff argues based on Federal Rule of Civil Procedure 56(c)(4), Dr. Kersten

22   made the declaration without personal knowledge and lacked the foundation to opine about

23   plaintiff's diagnosis, medical care received while held at the Sutter County Jail, or any

24   inaccuracies in the medical record.  ECF No. 190 at 11.  For example, he argues that Dr. Kersten

25   cannot make a declaration with personal knowledge given that he never examined or treated the

26   plaintiff, nor reviewed his medical records before his incarceration at the Sutter County Jail or

27   after his transfer to CDCR.  Id.

28        "Expert witnesses may offer opinions on matters of which they do not have firsthand

5

1    knowledge so long as it is permissible in their discipline." Trujillo v. Cty. of Los Angeles, 751

2    F.App'x 968, 970-971 (9th Cir. 2018) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579,

3    592 (1993) ("[A]n expert is permitted wide latitude to offer opinions, including those that are not

4    based on firsthand knowledge or observation.")).  It is completely acceptable for Dr. Kersten to

5    render an opinion based on upon his review of medical records, as medical experts may rely on

6    treatment records to form their opinions because experts often receive a wider latitude with which

7    to base their testimony.  Regarding plaintiff's objection that portions of Dr. Kersten's declaration

8    mirror that of Dr. Sanders', ECF No. 190 at 12-14, this overlap is expected because Dr. Kersten is

9    opining on Dr. Sanders' treatment.

10          To the extent that plaintiff argues that Dr. Kersten improperly authenticated plaintiff's

11    medical records (Id. at 12) or that he did not have access to the necessary medical records in order

12    to make the declaration (Id. at 14-19), the court agrees with defendants' position.  The record

13    shows that his medical records were authenticated by defendants Sanders and Brown according to

14    Federal Rule of Evidence 901(b)(1).  See ECF No. 164-8, 164-9.  As for plaintiff's allegation that

15    Dr. Kersten was not provided from before his detainment, he was provided and reviewed the

16    record from plaintiff's stay at Sutter County Jail.  ECF No. 164-5, ¶ 3 (Kersten Dec.).  Again,

17    "medical experts regularly rely on a person's treatment records to form their opinions." Trujillo,

18    751 F.App'x at 971.  Plaintiff has not submitted evidence, such as a declaration from a medical

19    expert, to support the claim that his older records dated before his detainment were necessary to

20    an evaluation of the treatment he received while detained.  His own layperson's understanding is

21    insufficient support for such a conclusion.

22          Third, plaintiff argues that defendants violated Federal Rule of Civil Procedure 56(h) by

23    submitting the declaration in bad faith or solely for the purpose of delay and that the court should

24    order the defendants to pay the plaintiff reasonable expenses, including attorney's fees.  ECF No.

25    190 at 25-26.  Specifically, he contends that defendants' counsel assisted in the preparation of Dr.

26    Kersten's declaration and fabricated the document.  ECF No. 190 at 28-30.  The court agrees with

27    the defendant's position.  While Federal Rule of Civil Procedure 56 involves motions for

28    summary judgment or partial summary judgment, 56(h) reads as follows:

1
2
3
4

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

5   Fed. R. Civ. P. 56(h).  "Bad faith in the context of Rule 56(h) requires a deliberate or knowing act

6   for an improper purpose."  Raher v. Federal Bureau of Prisons, No. 03:09–cv–00526 ST, 2011

7   WL 4832574, at *8 (D. Or. Oct. 12, 2011).  See also Caron v. QuicKutz, Inc., No. CV–09–

8   02600–PHX–NVW, 2012 WL 5497869, at *20 (D. Ariz. Nov. 13, 2012), aff'd sub nom. Caron v.

9   Lifestyle Crafts, LLC, 528 Fed.Appx. 993 (Fed. Cir. 2013) (striking declaration under Rule 56(h)

10  for containing statements not based upon personal knowledge and statements intended to mislead

11  the court but denying request for attorney's fees.).  To be sanctionable under the court's inherent

12  power, the conduct must have constituted, or been tantamount to, bad faith.  Roadway Express,

13  Inc. v. Piper, 447 U.S. 752, 767 (1980); Fink v. Gomez, 239 F.3d 989, 993–94 (9th Cir. 2001).

14  Recklessness, when combined with an additional factor such as frivolousness, harassment, or an

15  improper purpose, may support sanctions, Fink, 239 F.3d at 994, but mere negligence or

16  recklessness will not suffice, In re Lehtinen, 564 F.3d 1052, 1058 (9th Cir. 2009).

17          Here, the court does not find that bad faith is established by the evidence presented.

18  Plaintiff alleges that defendant's counsel fabricated Dr. Kersten's declaration because "the newly

19  filed 'original' Blue Copy of the Declaration is not properly dated (executed), and defendants

20  provide no explanation as to why it is signed and dated in two (2) colors of ink."  ECF No. 190 at

21  28.  The court has already addressed plaintiff's contentions regarding typographical errors and

22  signature issues with the declaration, and he has not introduced evidence to support a claim that

23  defendant's counsel fabricated the declaration or affixed Dr. Kersten's signature without

24  receiving his consent to do so.  Plaintiff also alleges that Dr. Kersten did not prepare and sign his

25  declaration but does not submit any evidence to support this conclusion beyond reference to the

26  typographical errors and Dr. Kersten's alleged lack of personal knowledge.  Id. at 25.

27          Plaintiff has failed to show that defendants exhibited mere negligence or recklessness, let

28  alone willful misconduct.  As a result, plaintiff's renewed motion for sanctions will be denied.

1    For the aforementioned reasons, the court will deny plaintiff's motion to strike and motion

2    for sanctions.  In addition, the court will rely on the amended declaration submitted at ECF No.

3    177-1 at 4-8, as it cures the signature error and any changes made to the previous copies are not

4    substantive.

5        VI.    Motion for Summary Judgment

6            A.    Defendants' Arguments

7        Defendants argue that plaintiff cannot establish that defendants Brown and Sanders were

8    deliberately indifferent to his medical needs or committed medical malpractice.  ECF No. 164-2

9    at 16-24, 29-31.  They also argue that they are entitled to qualified immunity and that plaintiff did

10   not properly comply with the state law notice requirements.  Id. at 24-29.  Defendants similarly

11   argue that plaintiff cannot show that defendants Denny, Parker, Sutter County Sheriff's

12   Department, Sutter County Jail, and Sutter County were deliberately indifferent based on their

13   alleged policy regarding the provision of medical care, that they failed to protect him by failing to

14   properly maintain the ventilation system.  Id. at 32-38.  They further argue that Parker and

15   Bidwell were not negligent and that plaintiff failed to comply with state law notice requirements.

16   Id. at 43-49.  Alternatively, they assert that they are entitled to qualified immunity.  Id. at 39.

17   Finally, defendants argue that plaintiff's ADA and RA claims must fail because he is not a

18   qualified individual with a disability and was not denied access to any programs.  Id. at 39-42.

19           B.    Plaintiff's Response

20       It is well-established that the pleadings of pro se litigants are held to "less stringent

21   standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972)

22   (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

23   govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted),

24   overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en

25   banc).  However, the unrepresented prisoners' choice to proceed without counsel "is less than

26   voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a

27   litigant," such as "limited access to legal materials" as well as "sources of proof."  Jacobsen v.

28   Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (alteration in original) (citations and internal

1    quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict

2    literalness" with respect to the requirements of the summary judgment rule.  Id. at 1364 n.4

3    (citation omitted).

4            The court is mindful of the Ninth Circuit's more overarching caution in this context, as

5    noted above, that district courts are to "construe liberally motion papers and pleadings filed by

6    *pro se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,

7    611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, though plaintiff has largely complied with the

8    rules of procedure, the court will consider the record before it in its entirety.  However, only those

9    assertions in the opposition which have evidentiary support in the record will be considered.

10           VII.    Legal Standards for Summary Judgment

11           Summary judgment is appropriate when the moving party "shows that there is no genuine

12   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

13   Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

14   of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

15   F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

16   moving party may accomplish this by "citing to particular parts of materials in the record,

17   including depositions, documents, electronically stored information, affidavits or declarations,

18   stipulations (including those made for purposes of the motion only), admissions, interrogatory

19   answers, or other materials" or by showing that such materials "do not establish the absence or

20   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

21   support the fact."  Fed. R. Civ. P. 56(c)(1).

22           "Where the non-moving party bears the burden of proof at trial, the moving party need

23   only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

24   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

25   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

26   motion, against a party who fails to make a showing sufficient to establish the existence of an

27   element essential to that party's case, and on which that party will bear the burden of proof at

28   trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

1   of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

2   a circumstance, summary judgment should "be granted so long as whatever is before the district

3   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

4   56(c), is satisfied."  Id.

5          If the moving party meets its initial responsibility, the burden then shifts to the opposing

6   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

7   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

8   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

9   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

10  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

11  Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

12  fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

13  Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

14  809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

15  reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

16         In the endeavor to establish the existence of a factual dispute, the opposing party need not

17  establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed

18  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

19  truth at trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities

20  Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the

21  pleadings and to assess the proof in order to see whether there is a genuine need for trial."

22  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

23         "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

24  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

25  v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is

26  the opposing party's obligation to produce a factual predicate from which the inference may be

27  drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

28  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

10

1    some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

2    omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

3    non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

4    U.S. at 289).

5            Defendants simultaneously served plaintiff with notice of the requirements for opposing a

6    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

7    summary judgment.  ECF No. 164-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

8    1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide

9    notice).

10       VIII.    Facts

11           The court views the facts and draws inferences in the manner most favorable to plaintiff as

12   the non-moving party.  Unless otherwise noted, the following facts are expressly undisputed by

13   the parties or the court has determined them to be undisputed based on thorough review of the

14   record.  These facts are taken from the Defendants' Statement of Undisputed Facts (DSUF), ECF

15   No. 164-3, Plaintiff's Opposition to Motion for Summary Judgment, ECF No. 185, 194, and

16   Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF

17   No. 201.

18           At the time relevant to the complaint, the Sutter County Jail's Jail Medical Services (JMS)

19   were governed by the Jail Medical Services Policy & Procedure Manual.  In particular, JMS

20   Policy #16-102,[1] which details the roles and responsibilities of the Medical Director, required that

21   the medical director be present once a week and that a Nurse Practitioner be permitted to provide

22   healthcare services under a physician's supervision.  DSUF ¶ 1.  JMS #16-108 requires that

23

24   _____

     [1] Plaintiff alleges that the JMS policies were not in place during his incarceration at Sutter
25   County Jail and that defendants knew that their policies were non-existent, outdated, or non-
     compliant.  ECF No. 194 at 26.  He indicates that the revised date on the policy was after his
26   transfer from Sutter County Jail to CDCR.  Id. at 29.  However, even if the revised date of
     policies post-date plaintiff's incarceration, the substance of the policies may still be in effect.
27   Further, defendants demonstrate that all JMS policies had an operable date of November 1, 2001.
     ECF No. 201-1 at 2.  Thus, the fact that JMS were governed by the Jail Medical Services Policy
28   & Procedure Manual remains undisputed.

                                                      11

inmates have timely access to healthcare in order to meet their serious medical, dental, and mental

health needs as medically necessary and prescribed by law, while JMS #16-519 provides that

JMS will provide medically required and appropriate outpatient clinical services to inmates.[2]

DSUF ¶ 2-3.  Arrangements to see private physicians are subject to financial and security

requirements, and all treatment and medication recommended by private physicians are subject to

review by JMS's healthcare provider for medical necessity and appropriateness in the jail setting.

DSUF ¶ 3.

   Plaintiff arrived at Sutter County Jail on June 18, 2009, and he was examined by Brown

on June 24, 2009.  DSUF ¶ 4.  He indicated to Brown that he had a history of lower back pain

(LBP), a torn labrum in his right shoulder, "borderline" diabetes, and hay fever or asthma.  He

also indicated that he had allergies to peas, beets, and "doxy."  Id.  On the same day, through

agreement to the Classification Contract, plaintiff acknowledged his classification is based on

information that he provided, as well as other considerations, such as criminal history, current

charges, and extenuating circumstances.[3]  DSUF ¶ 5.  During his intake on June 18, 2009, he was

assigned to housing A-10, was informed of his classification, and signed a contract attesting to his

housing assignment.  DSUF ¶ 13.  He was also provided a copy of the Sutter County Jail's Inmate

Handbook, which stated that it is the responsibility of the inmate to clean the area surrounding

their bunk.  DSUF ¶ 19.  Due to violence, plaintiff had an authorized strip search.  DSUF ¶ 13.

   Plaintiff was seen by JMS staff on June 21, 2009, June 24, 2009, and July 15, 2009.

DSUF ¶ 6.  The parties dispute whether plaintiff was seen on June 22, 2009.  ECF No. 194 at 31;

DSUF ¶ 6.  During these visits, plaintiff indicated that he had a history of LBP, asthma, and a

---

[2]  Plaintiff argues that "[i]n practice no such policy existed either," pointing out that he requested
to see outside providers for both his right eye viral infection and his lower back condition and that
JMS took no action to provide that access, even though plaintiff had the medical insurance and
funds.  ECF No. 194 at 29-30.  However, he has previously admitted that he was seen by Dr.
Pranav Amin on August 13, 2009 for his eye infection.  ECF No. 185 at 17.  Thus, this fact is
deemed undisputed.

[3]  Plaintiff claims that he did not receive the deposition transcript and attached exhibits, and on
that basis denies DSUF ¶ 5.  ECF No. 194 at 31.  However, defendants' cited Exhibit 3 appears to
be the same copy as plaintiff's Exhibit T attached to his declaration.  See ECF No. 185 at 309.
Further, plaintiff's Exhibit T, a copy of his classification contract, shows his acknowledgment of
what considerations his classification is based on.  Id.  Thus, this fact is deemed undisputed.

previous viral infection (herpes simplex keratitis or HSK) in his right eye from 2003.  DSUF ¶ 6.

He began a treatment to alleviate his back pain, starting with Tylenol and muscle rub and

increasing to Ibuprofen.  Id.

Plaintiff was later seen by JMS staff on August 12, 2009, but the parties dispute whether

plaintiff was seen on August 13, 2009, August 14, 2009, and on August 17, 2009.  DSUF ¶ 7;

ECF No. 194 at 34.  When he visited JMS staff, plaintiff complained of blurred vision.  The

parties dispute whether plaintiff's vision was checked upon entrance.  Plaintiff contends that at

the time of his arrival at Sutter County Jail, he did not have his vision checked, but rather had his

vision checked for the first time on August 12, 2009.  ECF No. 194 at 35.

JMS staff referred plaintiff to Dr. Amin, an ophthalmologist.  Id.  On August 13, 2009,

Dr. Amin examined plaintiff, diagnosed him with stromal keratitis in his right eye, and discovered

an "old" corneal scar.  DSUF ¶ 8.  He prescribed plaintiff Viroptic, Pred Forte, and Xibrom

topical eye drops to treat his eye condition.  Id.  JMS followed up with Dr. Amin and was

informed that plaintiff should continue to use eye drops until the infection was cured and not refill

his prescription.  DSUF ¶ 7.  Within a week or two, plaintiff's eye infection was resolved.  DSUF

¶ 8.

Plaintiff was then seen by JMS on September 2, 2009, October 28, 2009, November 4,

2009, November 8, 2009, November 10, 2009, and December 5, 2009.  DSUF ¶ 9.  The parties

dispute whether plaintiff was seen on November 17, 2009, November 18, 2009, and December

18, 2009.  ECF No. 194 at 23.  During this period, Brown and Sanders escalated plaintiff's

treatment and prescribed Baclofen for his LBP, Brown recommended that he be moved to a

bottom bunk if one was available, and plaintiff was removed from his work position.  DSUF ¶ 9.

During his visits, plaintiff specifically requested not to be prescribed medication that might sedate

him.  Id.

The parties dispute whether plaintiff informed Brown that the pain in his neck, shoulder,

and back pain had lessened following the Baclofen prescription, and whether plaintiff continued

to refill the prescription.  Id.; ECF No. 194 at 39-40.  Brown requested and received plaintiff's

////

1  2007 MRI, which she then reviewed with him.  Id.  Plaintiff requested an updated MRI at this

2  time.  Id.

3      The parties dispute whether plaintiff was seen on January 1, 2010, January 7, 2010,

4  January 8, 2010, January 13, 2010, and January 21, 2010.  DSUF ¶ 10; ECF No. 194 at 45.  Also,

5  the parties dispute whether plaintiff requested a reduction in his Baclofen prescription from 20

6  mg to 10 mg even though he was still experiencing LBP.  DSUF ¶ 10; ECF No. 194 at 40.  As a

7  result, Brown attempted to contact Dr. Aisle, an orthopedic surgeon, and plaintiff's request for an

8  MRI was granted.  Id.

9      The parties dispute whether plaintiff was seen by JMS staff on March 3, 2010 or April 2,

10  2010.  On March 4, 2010 and March 8, 2020, plaintiff undisputedly was seen by JMS staff.

11  Brown prescribed Viroptic, Pred Forte, Valtrex, and Xibrom topical eye drops after plaintiff

12  suffered from another HSK outbreak.  DSUF ¶ 11.  Plaintiff reported feeling "much better."  On

13  his last visit to Brown before transferring to CDCR, his vision was 20/50 in his right eye, the

14  same as when he entered Sutter County Jail.[4]  Id.

15      On March 12, 2010, plaintiff had his requested MRI.  DSUF ¶ 12.  Dr. Tejpal Singh

16  diagnosed him with a mild degenerative disk disease, no significant spinal canal or neural

17  foraminal stenosis, Grade 1 anterolistesis of L5 on S1 with bilateral pars intra-articularis defect

18  and moderately severe bilateral neural forminal stenosis.  Id.  On March 16, 2010, defendant

19  Sanders reviewed Dr. Singh's findings with plaintiff and proposed surgical injections.  Id.  The

20  following day, he referred plaintiff to the Feather River Surgery & Pain Management Center to

21  assist him with his pain control.  Id.

22      Plaintiff made requests to be moved to a different cell block on June 28, 2009, July 10,

23  2009, and July 21, 2009 in order to have easier access to medical, as he would not have to be

24  shackled.  DSUF ¶ 14.  He also wanted easier access to shower, more space, all day access to the

25  recreation room, and requested the transfer because of an identity breach.  Id.  Plaintiff was

26  _____

27  [4]  Plaintiff disputes that his eyesight was 20/50 upon admittance to Sutter County Jail.  ECF No.
   194 at 35.  However, the medical records he produced to show his vision acuity before

28  (continued) admittance dates more than five years before his detainment.  ECF No. 185 at 273-75.
   Thus, this fact is deemed undisputed.

informed that no rooms were available and that he was housed appropriately according to his charges and classification.  Id.  In order to access the medical cell, law library, recreation yard, canteen, and the visitor area, plaintiff was required to navigate stairs.  DSUF ¶ 22.  Plaintiff estimates that he accessed the medical cell over twenty times, the library over ten times, the recreation yard over fifty times, and the canteen once a week during his detainment.  Id.  He also accessed the visitor area weekly.  Id.  None of the submitted requests for cell change cite any difficult navigating the stairs.  DSUF ¶ 14.

On July 21, 2009, plaintiff reminded officers that he has allergies, especially to a specific type of mold.  DSUF ¶ 15.  The parties dispute whether plaintiff ever informed custody staff of mold issues.  According to plaintiff, he informed custody staff verbally and submitted a grievance form regarding environmental issues.  DSUF ¶ 15; ECF No. 194 at 54-55.  Plaintiff requested a mattress exchange, claiming that he had a doctor's recommendation, which allowed for such, but was not provided a second mattress.  DSUF ¶ 15.  The same day, officers responded to his request, noted mold allergies on his medical chart, and informed Custody of the mattress accommodation request.  Id.

On August 21, 2009, plaintiff requested a copy of Dr. Amin's notes from his August 13, 2009 visit to Sutter North Medical to evaluate his right eye infection.  DSUF ¶ 16.  The same day, he was informed that Dr. Amin had not provided notes and was recommended to follow up with the University of California, Davis Ophthalmology Department when he was released.  Id.  The parties dispute whether Dr. Amin recommended waiting until plaintiff was released to establish care with the UC Davis Cornea Department.  DSUF ¶ 16; ECF No. 194 at 38-39.

On August 11, 2009, in a letter to defendant Bidwell,[5] plaintiff thanked Bidwell for his prompt follow-up regarding the law library repairs.  DSUF ¶ 17.  He also noted that his HSK infection had become active and was causing a distortion in his vision and increased pressure in his eye.  Id.  Plaintiff further voiced his concerns that his HSK, if left untreated, would result in

---

[5]  Plaintiff claims that defendants misstate the contents or extent of his letter to Bidwell.  ECF No. 194 at 55.  However, plaintiff read the letter into the record.  See ECF No. 164-6 at 27-32.  Thus, these facts regarding the contents of the letter are deemed undisputed.

1    irreversible damage and "searing" to his eye.  Id.  Plaintiff claimed to have sent "med slips" on

2    July 15, 2009, July 30, 2009, and August 5, 2009, and made other suggestions that he believed

3    would help with his LBP.  Id.

4           Plaintiff claimed he observed what he believed to be black mold surrounding the

5    ventilation duct in his cell during the last months of his detainment at Sutter County Jail.  DSUF ¶

6    20.  The parties dispute whether plaintiff complained or notified custody staff.  DSUF ¶ 20; ECF

7    No. 194 at 54-55.

8           However, Sutter County Jail underwent an environmental health inspection on December

9    29, 2008, December 23, 2009, and December 7, 2010 conducted by the Sutter County

10   Community Services Department,[6] in which inspectors found that Sutter County Jail was clean

11   and in good repair.  DSUF ¶ 18.  Inspectors also found that the policies and procedures were in

12   place for an acceptable level of cleanliness, repair, and safety.  Id.

13          In addition, on November 23, 2010, Sutter County Jail received notice from the

14   Department of Industrial Relations Division of Occupational Safety and Health regarding alleged

15   water leaks in the jail that had created mold growth.  DSUF ¶ 21.  On December 2, 2010, Sutter

16   County Jail commenced a building inspection to identify any potential mold growth, and while

17   Sutter County Jail found evidence of past water intrusion, no mold was present.  Id.  The

18   inspection included use of a building plan to identify past areas of water intrusion, and visual

19   inspection of the roof, parapet walls and flashing for any openings.

20      IX.    Discussion

21          A.    Deliberate Indifference

22          To maintain an Eighth Amendment[7] claim based on inadequate medical treatment,

23   _____

24   [6]  Plaintiff contends that the inspection date was modified. ECF No. 164-7 at 20.  However, the
     signed correspondence dated January 15, 2009, that enclosed the environmental health evaluation
25   indicates that the environmental inspection occurred a few months before plaintiff was
     transferred.  See ECF No. 164-7 at 18.  As such, this fact is deemed undisputed.

26   [7]  Defendants' motion for summary judgment refers to plaintiff as a pretrial detainee from June
     18, 2009, until April 5, 2010, and discuss his deliberate indifference and failure to protect claims
27   as accordingly governed by the Fourteenth Amendment rather than the Eighth Amendment.  ECF
     No. 164-2 at 9, 17, 32, 36-37.  However, plaintiff asserts that his claims arise under the Eighth
28   Amendment.  ECF No. 194 at 92-94.  Review of the docket in plaintiff's criminal case, Case No.

1   plaintiff must show "'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d

2   1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires

3   plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's

4   condition could result in further significant injury or the unnecessary and wanton infliction of

5   pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Id. (some

6   internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.

7   1992)).

8          Deliberate indifference is a very strict standard.  It is more than "mere negligence."

9   Farmer v. Brennan, 511 U.S. 825, 835, (1994).  Even civil recklessness—failure "to act in the

10  face of an unjustifiably high risk of harm that is either known or so obvious that it should be

11  known"—is insufficient to establish an Eighth Amendment claim.  Id. at 836-37 & n.5 (citation

12  omitted).  A prison official will be found liable under the Eighth Amendment when "the official

13  knows of and disregards an excessive risk to inmate health or safety; the official must both be

14  aware of facts from which the inference could be drawn that a substantial risk of serious harm

15  exists, and he must also draw the inference."  Id. at 837.  A plaintiff can establish deliberate

16  indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible

17  medical need and (b) harm caused by the indifference."  Jett, 439 F.3d at 1096 (citing McGuckin,

18  974 F.2d at 1060).

19         Deliberate indifference "may appear when prison officials deny, delay or intentionally

20  interfere with medical treatment, or it may be shown by the way in which prison physicians

21  provide medical care."  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing

22  Estelle, 429 U.S. at 104-05).  A difference of opinion between an inmate and prison medical

23

24  CRF08-0002437, in the Sutter County Superior Court, shows that plaintiff's jury trial concluded
    on June 18, 2009, and the records in a prior habeas petition brought by plaintiff in this court
25  confirms that he was convicted on June 18, 2009.  Leonard v. Hartley, No. 2:12-cv-2161 JKS
    (E.D. Cal.), ECF No. 66 at 5.  Because plaintiff had been convicted at the time he alleges the
26  violations occurred, he was no longer entitled to the same rights as a pretrial detainee.  Resnick v.
27  Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (inmate that has been convicted but not sentenced is not
    entitled to same rights as pretrial detainees).  Plaintiff's claims are therefore based upon his rights
28  under the Eighth Amendment.

1   personnel—or between medical professionals—regarding the appropriate course of treatment

2   does not by itself amount to deliberate indifference to serious medical needs.  Toguchi v. Chung,

3   391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To

4   establish a difference of opinion rises to the level of deliberate indifference, plaintiff "must show

5   that the course of treatment the doctors chose was medically unacceptable under the

6   circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

7                                   1.      Defendants Sanders and Brown

8          In his Second Amended Complaint, plaintiff alleges that defendants Sanders and Brown,

9   medical providers within JMS, failed to provide appropriate treatment for his lower back pain,

10  asthma, and eye infection.  ECF 66-2 at 8-13, 29, 33, 35-27, ¶¶ 28-34, 39-41, 45-48, 52, 57, 134,

11  150, 160-169.  Plaintiff specifically alleged that Sanders and Brown failed to obtain or review his

12  previous medical records prior to treating him, failed to refer him to appropriate specialists,

13  provided deficient and incompetent treatment by refusing to prescribe proper pain medication,

14  prescribed medication without providing proper instructions for use, refused to allow plaintiff to

15  use his medical appliances, and failed to properly examine or diagnose him.  Id.  Also, plaintiff

16  alleges that defendants' failure to provide a proper examination to determine the cause of or to

17  treat his respiratory problems, as well as failing to order appropriate housing accommodations

18  amounted to deliberate indifference.  Id. at 33, 37, 43, ¶¶ 150, 169, 193.  Defendants counter that

19  plaintiff has failed to provide evidence showing that defendants Sanders and Brown knew of and

20  disregarded an excessive risk to his health and safety in regard to his HSK, lower back pain, and

21  allergies.  ECF No. 164-2 at 12-16.

22         In regard to plaintiff's eye condition, though the parties dispute whether plaintiff was seen

23  on August 13, 2009, August 14, 2009, and August 17, 2009, it is undisputed that plaintiff was

24  seen by JMS staff on August 12, 2009 and visited ophthalmologist Dr. Amin the next day.

25  Though plaintiff contends that Sanders and Brown delayed in providing treatment or referring

26  him to a specialist, a day-long wait cannot reasonably be construed as a delay in medical care or

27  treatment of his eye, especially considering that the JMS healthcare provider must approve an

28  inmate's referral to a private physician in light of security and financial concerns.

As to plaintiff's dispute over the other JMS visits in August, he has not submitted additional evidence to support a conclusion that these visits did not occur, such as declarations from other inmates or prison officials attesting to his whereabouts those times.  Even if the court takes plaintiff's version of the facts to be true, he has not submitted testimony or evidence to demonstrate that not being seen on the other three August dates would violate any applicable standard of care, let alone constitute deliberate indifference.  Indeed, the record shows that plaintiff was seen by Dr. Amin, treated, and that within one to two weeks his HSK abated.  Plaintiff has not submitted evidence to dispute that defendants Sanders and Brown properly continued to provide him with medicated drops until he completed his prescription, or that JMS medical staff followed up with Dr. Amin's office and were instructed to finish the prescription, but not refill it.  It is also undisputed that when plaintiff's virus became active again, defendants provided him with antiviral medication according to his previous treatment plan.

Further, though plaintiff disputes whether his vision was checked upon his admittance to Sutter County Jail, it is undisputed that his vision was 20/50 in his right eye by the time he was transferred to CDCR.  Assuming that plaintiff's allegation is true, and his vision was not checked, he has failed to submit evidence, such as medical records from close in time to his admission in Sutter County Jail or declarations from former physicians, that support his assertion that his vision was 20/20 upon his entrance.  The medical record he does offer predates his admission by five years.  This evidence does not support a reasonable inference that plaintiff's eyesight worsened during his stay at Sutter County Jail, let alone that the harm was a result of Sanders and Brown's deliberate indifference.

Plaintiff's motion to strike Dr. Kersten's declaration has been denied above, and he offers no medical expert testimony to counter or discredit Dr. Kersten's opinion.  Rather, plaintiff's voluminous opposition continually opines on the validity of medical professionals' suggested treatments, diagnoses, and prescriptions without reference to any medical or expert source.  For instance, plaintiff challenges the adequacy of Sanders and Brown's treatment based on an alleged four-week delay between when he believed he was first experiencing an eye infection and when he was seen by Dr. Amin.  ECF No. 194 at 102-03.  Plaintiff also draws medical conclusions

1  without sufficient basis.  For example, he attests that he wrote to defendant Bidwell, claiming that

2  there was a substantial risk of irreparable damage to his eye and alleges that he informed Bidwell

3  that he based this claim on what he was told by a specialist at UC Davis Ophthalmology.  ECF

4  No. 194 at 60.  However, this was not indicated in his letter, which he read into the record during

5  his deposition, nor does he show that he provided Bidwell with a medical note from this specialist

6  or include it as an exhibit.

7       Because plaintiff lacks the foundation or qualifications to draw such conclusions based on

8  medical notes or observations during his visits to these physicians, his claims that a medical

9  treatment was improper is at best speculation.  The record does not support an inference that the

10  course of treatment the doctors chose was medically unacceptable under the circumstances and

11  amounted to deliberate indifference.

12       According to Dr. Kersten, a professor of ophthalmology at University of California San

13  Francisco, Sanders and Brown's treatment of plaintiff's HSK during his term at Sutter County Jail

14  met the applicable standard of care.  ECF No. 171-1, ¶¶ 1-3, 20 (Kersten Dec.).  Dr. Kersten adds

15  that because treatment of HSK depends on the frequency of episodes a patient experience, based

16  on the information plaintiff provided to Sanders and Brown, their decision to rely on Dr. Amin's

17  prescription and their treatment of the second outbreak met the applicable standard of care.  Id.

18  Finally, according to this declaration, the four-week period plaintiff characterizes as delay was

19  medically inconsequential.  Id. at ¶ 18.  For all these reasons, plaintiff's deliberate indifference

20  claim in regard to his HSK fails.

21       In regard to plaintiff's LBP, it is undisputed that Sanders and Brown monitored plaintiff's

22  medical record and approved pain medication to alleviate his LBP.  DSUF ¶¶ 4-12.  Plaintiff does

23  not contest that Sanders and Brown prescribed various different medications and treatments, that

24  they ordered the MRI he requested, or that he was sent to Feather River Surgery & Pain

25  Management Center during his term at Sutter County Jail.  DSUF ¶¶ 9, 12.  There is a dispute as

26  to whether plaintiff notified defendant Brown that his LBP reduced through the use of baclofen

27  and whether he continued to refill his prescription.  Even assuming that plaintiff's version of the

28  facts is true, there is no genuine dispute because he has not indicated that Sanders and Brown

1  continued to prescribe baclofen without his consent or that the prescription caused him harm.  To

2  the extent that plaintiff denies that baclofen was an appropriate prescription for his illness, he fails

3  to submit expert testimony to support these conclusions.  Plaintiff's disagreement with the

4  medical providers cannot establish and Eighth Amendment violation.

5      To the extend plaintiff relies on denial of cortisone injections, a TENS unit, and other

6  treatments he deems necessary, ECF No. 194 at 100, he has failed to submit evidence showing

7  that his treatment was medically unacceptable under the circumstances.  Plaintiff's own

8  interpretation of the medical record is insufficient to defeat summary judgment.  This claim thus

9  fails for the same reasons as plaintiff's claim regarding his HSK—plaintiff is not a medical expert

10  who can opine as to whether defendant Sanders and Brown's treatment violated the applicable

11  standard of care.  The difference between Sanders and Brown's prescribed treatment and

12  plaintiff's preferred treatment plan—"a difference of opinion between an inmate and prison

13  medical personnel"—does not constitute deliberate indifference as a matter of law.  Toguchi, 391

14  F.3d at 1058.  Accordingly, plaintiff's deliberate indifference claim in regard to his LBP fails.

15      Regarding Sanders and Brown's treatment of plaintiff's allergies, asthma, and vertigo,

16  plaintiff fails to show evidence of deliberate indifference.  Firstly, plaintiff fails to show that there

17  was a serious medical need.  Though plaintiff argues that he identified mold in his cell, he has not

18  shown any evidence demonstrating his certification or expertise in this subject, despite his claims

19  that he worked in construction and mold removal.  ECF No. 185 at 55-56.  In addition, even if

20  plaintiff did correctly identify mold in his room, he does not show evidence that that type of mold

21  was specifically harmful to him.  His own efforts to draw these conclusions are insufficient.

22      Second, plaintiff fails to show that Sanders and Brown's reaction was deliberately

23  indifferent or that Sanders and Brown acted or failed to act purposefully.  Though plaintiff insists

24  that he told custody staff about the alleged mold, he does not claim that he informed JMS that

25  there was mold in Sutter County Jail or that mold might be the cause of his symptoms.  It is

26  undisputed that plaintiff was seen and treated for his asthma—he was provided an inhaler and

27  allergy medication.  Insofar as plaintiff alleges that his vertigo was related to his allergies, he has

28  not submitted evidence supporting this contention.  Thus, there is no triable issue whether

21

1    Sanders and Brown were aware of a substantial risk to plaintiff's health or whether they

2    purposefully failed to treat his health issue.

3        Even assuming that plaintiff's version of the facts is true and that he correctly identified

4    the mold, he has not submitted any competent medical evidence that a reaction to mold would

5    have required treatment different than the treatment that was provided for his asthma, allergies,

6    and vertigo.  Accordingly, there is no evidence from a which a trier of fact could conclude that

7    Sanders and Brown not only purposefully failed to treat plaintiff, but also that he was harmed by

8    their indifference.

9        For all these reasons, the court should grant summary judgement to defendants on this

10   issue.[8]

11                    2.    Defendants Denny, Parker, Sutter County Sheriff's Department,

12                          Sutter County Jail, and Sutter County

13       Second, plaintiff contends that defendants Denny and Parker, respectively the former and

14   current sheriffs of Sutter County, created and perpetuated a policy or practice that encouraged the

15   delay and denial of necessary medical care until an inmate was transferred to the custody of the

16   CDCR, in order to cut costs to the County associated with medical care.  ECF No. 66-2 at 26, 31-

17   32 ¶¶ 122, 145, 147.  Plaintiff alleges that because of these policies, he was denied necessary

18   medical care (i.e. diagnostic testing and referrals to specialists) that resulted in increased pain and

19   worsened medical conditions.  Id. at 3-7, 10-11, ¶¶ 5, 9-10, 17-19, 22, 26, 43, 49.  Based on

20   Denny and Parker's positions as decision makers, plaintiff's claims against the Sutter County

21   Sheriff's Department, Sutter County Jail, and Sutter County proceed under Monell v. Department

22   of Soc. Servs., 436 U.S. 658 (1978).

23       Under Monell, "municipalities and other local government units . . . [are] among those

24   persons to whom § 1983 applies."  Monell, 436 U.S. at 690.  However, "a municipality can be

25   liable under § 1983 only where its policies are the 'moving force [behind] the constitutional

26   violation.'"  City of Canton v. Harris, 489 U.S. 378, 389 (1983) (alteration in original) (quoting

27

28   _____
     [8]  Because the court finds no violation of plaintiff's Eighth Amendment rights, it need not address
     defendant Brown and Sanders' argument that they are entitled to qualified immunity.

                                            22

1   Monell, 436 U.S. at 694 and Polk Cnty. v. Dodson, 454 U.S. 312, 10 326 (1981)).  There must be

2   "a direct causal link between a municipal policy or custom and the alleged constitutional

3   deprivation."  Id. at 385.

4        "[A]n act performed pursuant to a 'custom' that has not been formally approved by an

5   appropriate decisionmaker may fairly subject a municipality to liability on the theory that the

6   relevant practice is so widespread as to have the force of law."  Board of Cnty. Comm'rs. v.

7   Brown, 520 U.S. 397, 404 (1997) (citations omitted); see also Monell, 436 U.S. at 690-91.  "[A]

8   local governmental body may [also] be liable if it has a policy of inaction and such inaction

9   amounts to a failure to protect constitutional rights."  Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th

10  Cir. 1992) (citing City of Canton, 489 U.S. at 388.  "[A] policy is 'a deliberate choice to follow a

11  course of action . . . made from among various alternatives by the official or officials responsible

12  for establishing final policy with respect to the subject matter in question."  Id. at 1477 (quoting

13  Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion)).  "[A]

14  municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a

15  municipality cannot be held liable under § 1983 on a respondeat superior theory."  Monell, 436

16  U.S. at 691 (emphasis in original).

17       In this case, plaintiff has not shown a genuine issue of material fact as to his deliberate

18  indifference and Monell claims against defendants Denny, Parker, Sutter County Sheriff's

19  Department, Sutter County Jail, and Sutter County.  First, as discussed in the previous section,

20  plaintiff has failed to produce sufficient evidence to support his deliberate indifference claim

21  against defendants Sanders and Brown.  As a result, plaintiff cannot prove that he was deprived of

22  a constitutional right, let alone that the "implementation of [the local government's] official

23  policies or established customs inflict[ed] the constitutional injury."  Monell, 436 U.S. at 708.

24       Second, plaintiff has not identified evidence of a "policy" or "custom" that was the

25  driving force behind the alleged constitutional injury.  It is undisputed that Sutter County Jail's

26  Jail Medical Services were governed by the JMS Policy & Procedure Manual, which includes

27  provisions on the duties of the medical director and nurse practitioner and requirements for

28  inmates to have timely access to healthcare and to be referred to outpatient clinical services as

23

1    medically required and appropriate.  DSUF ¶ 1-3.  Beyond his conclusory statements, plaintiff

2    fails to show that these policies were not substantively in place at the time of his detainment, and

3    the record shows that plaintiff was seen at least once a month by a medical professional and

4    referred to outside specialists as medically necessary.  ECF No. 194 at 15, 16, 19, 23, 27, 28-29.

5           To the extent plaintiff claims that defendants established an express policy of delay or

6    denial of medical treatment because of budgetary constraints, ECF No. 194-1 at 161-163, he fails

7    to support this claim, such as through evidence showing a routine failure to follow the JMS Policy

8    & Procedure Manual.  Again, plaintiff was referred to an independent specialist for his eye

9    condition and LBP and has admitted to seeing the JMS staff at least once a month.  ECF No. 194

10    at 15, 16, 19, 23, 27, 28-29.  The court also cannot find evidentiary support for plaintiff's <u>Monell</u>

11    claims through the declarations of his former cellmates, which he argues demonstrates that there

12    was a practice that "delayed or failed to respond to the serious medical needs of the inmates."

13    ECF No. 194-1 at 32.  Even if these declarations were admissible, neither former cellmate

14    properly attests to necessary information such as the time period, parties involved, and health

15    issues.  In sum, plaintiff's evidence is insufficient to support a finding that there was a routine

16    failure to follow the JMS policies.

17           Plaintiff's citations to findings by grand juries and the National Commission on

18    Correction Health Care and Corrections Standard Authority do not support an inference that there

19    was a custom or practice to delay or deny medical care for budgetary reasons.  Plaintiff cites these

20    findings to argue that the policies were outdated and non-compliant, but fails to demonstrate how

21    these findings relate to the alleged inadequate medical care he received at Sutter County Jail.

22    ECF No. 194 at 13.  For example, none of the grand jury findings identified a policy that existed

23    to delay or deny inmates' medical treatment or that such policy led to the denial of plaintiff's

24    medical care before he was transferred to CDCR.  ECF No. 185 at 1702-1779.  In addition, the

25    cited reports do not make any findings on referrals to outpatient care.  To the extent that plaintiff

26    claims that Sutter County Jail's request for NCCHC to assess its health care management is

27    evidence of a policy to deny or delay medical care for budgetary reasons, his claim is

28    unsupported.  ECF No. 194-1 at 172-74.  Sutter County Jail's efforts to identify means to improve

1    health care and costs at its facility does not support an inference of deliberate indifference.[9]

2        B.    Failure to Protect

3        "The Constitution does not mandate comfortable prisons, but neither does it permit

4    inhumane ones."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and

5    citation omitted).  "[A] prison official violates the Eighth Amendment only when two

6    requirements are met.  First, the deprivation alleged must be, objectively, sufficiently serious, a

7    prison official's act or omission must result in the denial of the minimal civilized measure of

8    life's necessities."  Id. at 834 (internal quotation marks and citations omitted).  Second, the prison

9    official must subjectively have a sufficiently culpable state of mind, "one of deliberate

10   indifference to inmate health or safety."  Id. (internal quotation marks and citations omitted).  The

11   official is not liable under the Eighth Amendment unless he "knows of and disregards an

12   excessive risk to inmate health or safety; the official must both be aware of facts from which the

13   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

14   inference."  Id. at 837.  Then he must fail to take reasonable measures to abate the substantial risk

15   of serious harm.  Id. at 847.  Mere negligent failure to protect an inmate from harm is not

16   actionable under § 1983.  Id. at 835.

17       In this case, plaintiff claims that Parker and Bidwell violated his rights by failing to

18   establish written policies and procedures for maintaining an acceptable level of cleanliness,

19   repair, and safety at the facility, given that as the sheriff and jail commander, Parker and Bidwell

20   were responsible for the administration and operation of the jail.  As the facility administrator,

21   Parker was required to "develop written policies and procedures for the maintenance of an

22   acceptable level of cleanliness, repair, and safety throughout the facility."  Cal. Code Regs., tit.

23   15, § 1280.  These policies must include "a regular schedule of housekeeping tasks and

24   inspections to identify and correct unsanitary or unsafe conditions or work practices."  Id.

25   Specifically, plaintiff claims that defendant Parker failed to establish such appropriate policies or

26

27   _____
     [9]  Because the court finds no violation of plaintiff's constitutional rights, it need not address
28   defendants Denny, Parker, Sutter County Sheriff's Department, Sutter County Jail, and Sutter
     County's argument that they are entitled to qualified immunity.

1    ensure its implementation, which led to the growth of mold and other contaminants in the

2    ventilation system and to the plaintiff's respiratory health complications.  ECF No. 66-2 at 16, ¶

3    74.  Because of Parker and Bidwell's positions as sheriff and prison commander, the Sheriff's

4    Department, the Jail, and the County may be liable for failure to protect under Monell.

5         Defendants argue that because plaintiff has only alleged violation of a California

6    regulation, he cannot support a § 1983 claim.  ECF No. 164-2 at 37-38.  Though it is true that

7    violation of a state law does not *by itself* amount to the deprivation of a constitutional right,

8    California Code Section 1280 establishes that Parker and Bidwell were responsible for the

9    conditions of safety of the jail and were thus were in a position of power to enact policies that

10   deny inmates the minimal civilized measure of life's necessities.  That is, though not every

11   violation of a state regulation rises to the level of a constitutional violation, if such violation

12   satisfies the two-prong Farmer test, Eighth Amendment rights would be implicated.

13        With regard to the first prong of the Farmer test, plaintiff has not submitted evidence

14   showing that Parker and Bidwell failed to establish policies to ensure the safety and cleanliness of

15   the facility and that these omissions resulted in conditions sufficiently serious to result in an

16   Eighth Amendment violation.  It is undisputed that Sutter County Jail underwent an

17   environmental health inspection a few months before plaintiff's departure from the facility and

18   was found to be clean and in good repair.  It is further undisputed that that Sutter County Jail was

19   notified of water leaks in the jail, conducted a building inspection by its internal staff, and found

20   no mold.  Plaintiff does not present evidence to contest the results of the inspections, but rather

21   speculates that the facility was non-compliant based on his own observations and his review of

22   the maintenance records.

23        Plaintiff is not qualified to identify mold or to opine about its attendant health risks, and

24   his own conclusory assertions are insufficient to establish the factual predicate for this claim.  See

25   ECF No. 185 at 55-56.  Further, plaintiff does not submit any evidence showing that Sutter

26   County Jail failed to implement a policy to maintain health and safety standards, nor competent

27   evidence of any inadequacies in the inspections.  To the contrary, the record demonstrates that

28   both internal and independent inspections were completed and that Sutter County Jail had passed

1   their health inspections during the relevant time period.

2           Plaintiff also fails to identify evidence sufficient to satisfy the second prong of the <u>Farmer</u>

3   test, by showing that Parker and Bidwell had a sufficiently culpable state of mind rising to the

4   level of deliberate indifference to plaintiff's health or safety.  Though it is disputed whether

5   plaintiff raised his concerns regarding the growth of mold in his cell, either verbally or through a

6   grievance procedure, plaintiff has produced no evidence of such complaints.  Even if the court

7   accepts plaintiff's version of the facts, he has not indicated which staff members he made his

8   complaint to, when, and how many times.  More fundamentally, he has not provided evidence

9   that what he saw and complained about was in fact mold and was specifically a type that would

10  be harmful to him.  Even construed in the most favorable light to the plaintiff, the record does not

11  support a conclusion that Parker and Bidwell knew of and disregarded an excessive risk to

12  plaintiff's safety.

13          Accordingly, summary judgment should be granted to the defendants on this claim.

14          C.      ADA and RA

15          Plaintiff claims that Sutter County Jail, Sutter County, and Sutter County Sheriff's

16  Department violated Title II of the ADA and § 504 of the RA.  To state a claim under Title II of

17  the ADA, the plaintiff must allege that:

18              (1) he "is an individual with a disability;" (2) he "is otherwise
                qualified to participate in or receive the benefit of some public
19              entity's services, programs, or activities;" (3) he "was either
                excluded from participation in or denied the benefits of the public
20              entity's services, programs, or activities, or was otherwise
                discriminated against by the public entity;" and (4) "such exclusion,
21              denial of benefits, or discrimination was by reason of [his]
                disability."
22

23  <u>McGary v. City of Portland</u>, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting

24  <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002)); <u>Weinreich v. Los Angeles Cnty. Metro.</u>

25  <u>Transp. Auth.</u>, 114 F.3d 976, 978 (9th Cir. 1997) (citations omitted).  "[I]nsofar as Title II [of the

26  ADA] creates a private cause of action for damages against the States for conduct that *actually*

27  violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  <u>United</u>

28  <u>States v. Georgia</u>, 546 U.S. 151, 159 (2006) (emphasis in original).  The Supreme Court has held

27

1   that Title II of the ADA applies to state prisons.  Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-

2   10 (1998).

3       While the RA has the additional requirement that the program or activity receive federal

4   funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and

5   obligations created by the ADA and the Rehabilitation Act.  Thus, courts have applied the same

6   analysis to claims brought under both statutes," Zukle v. Regents of the Univ. of Cal., 166 F.3d

7   1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).

8       Plaintiff argues that he qualifies as disabled under the ADA because of a respiratory

9   condition and his LBP, and that as a result of these disabilities, he was denied access to programs

10  and services because, among other things, his upper tier cell required him to navigate stairs,

11  which presented a significant risk of harm.  ECF No. 66-2 at 17, 31, 42-43.  He also contends that

12  he gave defendants adequate notice of his disabilities and needs.  ECF No. 194-1 at 221.

13      Though plaintiff provides documentation of his LBP, allergies, and eye condition, he has

14  not submitted evidence that supports a conclusion he is disabled under the ADA.  A disabled

15  individual is a person with a "physical or mental impairment that substantially limits one or more

16  major life activities of such individual," "a record of such impairment," or "being regarded as

17  having such an impairment."  42 U.S.C.A. § 12102.  Plaintiff must present sufficient evidence to

18  demonstrate his disability.  Wong v. Regents of Univ. of California, 410 F.3d 1052, 1065 (9th

19  Cir. 2005).  Nothing in plaintiff's documentation would suggest that plaintiff was substantially

20  limited in a major life activity.  Moreover, plaintiff has not submitted any evidence that he was

21  excluded from or denied benefits provided by Sutter County Jail's services, programs, or

22  activities.  He acknowledged that he accessed the medical cell, law library, recreation yard,

23  canteen, and visitor area.

24      Plaintiff further fails to present evidence demonstrating that he was denied a reasonable

25  accommodation.  Plaintiff admits to never requesting accommodations other than a request to be

26  moved for his general comfort, unrelated to any alleged disabling condition.  Defendants are

27  entitled to summary judgment on this claim.

28  ////

1          D.      State Tort Claims

2          Subject to the conditions set forth in 28 U.S.C. § 1367(c), district courts may decline to

3   exercise supplemental jurisdiction over state law claims.  Acri v. Varian Assocs., Inc., 114 F.3d

4   999, 1000 (9th Cir. 1997) (en banc).  The court's decision whether to exercise supplemental

5   jurisdiction should be informed by "values of economy, convenience, fairness, and comity."  Id.

6   at 1001 (citations and internal quotation marks omitted).  Further, primary responsibility for

7   developing and applying state law rests with the state courts.  Therefore, when federal claims are

8   eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction.

9   Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n.7 (1988) (citation omitted); Gini v. Las

10  Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994) ("'[I]n the *usual* case in which

11  federal-law claims are eliminated before trial, the balance of factors . . . will point toward

12  declining to exercise jurisdiction over the remaining state law claims.'" (emphasis and alteration

13  in original) (quoting Schneider v. TRW, Inc., 938 F.2d 986, 993 (9th Cir. 1991))).

14         As outlined above, it is recommended that defendants' motion for summary judgment be

15  granted as to the federal law claims.  Plaintiff has not identified any reason why his case is not a

16  usual case and the undersigned therefore recommends that the court decline to exercise

17  supplemental jurisdiction over plaintiff's state law claims.

18         X.      Plain Language Summary of this Order for a Pro Se Litigant

19         First, your motions for sanctions and motion to strike are denied. Your first motion for

20  sanctions (ECF No. 188), is being denied because the motion is untimely.  Your motion to strike

21  Dr. Kersten's declaration (ECF No. 190) is being denied because you failed to provide evidence

22  of any bad faith on the part of defendants.  Your second motion for sanctions (ECF No. 191), will

23  also be denied because you did not show that defendants engaged in willful misconduct.

24         The undersigned is further recommending defendants' motion for summary judgment be

25  granted because you did not present enough admissible evidence to create a triable dispute of fact

26  on your federal claims.  Because the undersigned recommends dismissal of your federal claims,

27  the undersigned further recommends that your state law claims be dismissed.

28  ////

1       Accordingly**, IT IS HEREBY ORDERED** that:

2       1.   Plaintiff's motion for sanctions based on the destruction of evidence (ECF No. 188) is

3   denied;

4       2.   Plaintiff's motion to strike the declaration of Robert Kersten (ECF No. 190) is denied;

5       3.   Plaintiff's motion for sanctions (ECF No. 191), is denied.

6       **IT IS FURTHER RECOMMENDED** that:

7       1.   The Doe defendant be dismissed;

8       2.   Defendants' motion for summary judgment (ECF No. 164) be granted;

9       3.   Judgment be entered for defendants Denny, Parker, Bidwell, Sanders, Brown, Sutter

10   County Jail, Sutter County Sheriff, and Sutter County.

11       These findings and recommendations are submitted to the United States District Judge

12   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

13   after being served with these findings and recommendations, any party may file written

14   objections with the court and serve a copy on all parties.  Such a document should be captioned

15   "Objections to Magistrate Judge's Findings and Recommendations."  **Any response to the**

16   **objections shall be served and filed within seven days after service of the objections.  Due to**

17   **exigencies in the court's calendar, there will be no extensions of time granted.**  The parties

18   are advised that failure to file objections within the specified time may waive the right to appeal

19   the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20   DATED: August 25, 2020

21       _____

22       ALLISON CLAIRE
         UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28